**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DEVON HORSE SHOW AND | : | |
| COUNTRY FAIR, INC | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| EASTTOWN TOWNSHIP | : | CIVIL ACTION NO.: |
| | : | |
| Defendants. | : | |
| | : | |

## NOTICE OF REMOVAL

Defendant, Easttown Township ("Defendant"), hereby gives notice of removal of this

action from the Court of Common Pleas of Chester County, Pennsylvania to the United States

District Court for the Eastern District of Pennsylvania, and in support thereof alleges as follows:

      1.      On or about April 22, 2022, Plaintiff Devon Horse Show and Country Fair, Inc.

("Plaintiff") filed a Complaint against Defendant in the Court of Common Pleas of Chester

County, Pennsylvania bearing docket number 2022-02717-MJ. A true and correct copy of the

Complaint is attached hereto as Exhibit A.

      2.      On or about April 22, 2022, Plaintiff delivered a copy of the Complaint to

Defendant's Solicitor, Andrew D.H. Rau, Esquire. On May 16, 2022, the undersigned counsel

for Defendant executed a Return of Service and returned it to Plaintiff's counsel.

      3.      In its Complaint, Plaintiff alleges that Defendant has violated its civil rights under

42 U.S.C. § 1983, including the 1st Amendment rights of assembly and free speech, by enacting

and enforcing a "Special Events" Ordinance which requires a permit for any person or entity

seeking to host a Special Event within the Township, and authorizes the imposition of certain

fees to be paid to Defendant in connection with the provision of support services, including police protection and traffic control services during such Special Events.  Plaintiff alleges that the Special Events Ordinance is uniquely targeted at Plaintiff, and therefore, invalid on its face. Plaintiff further alleges that Defendant has singled out Plaintiff for unwarranted and unequal treatment and has applied the Special Events Ordinance in a non-uniform and illegal manner that violates Plaintiff's civil rights under 42 U.S.C. § 1983.

4.      Pursuant to 28 U.S.C. § 1441 (a) "any civil action brought in a state court which the District Courts of the United States have original jurisdiction, may be removed by the Defendant or Defendants, to the District Court of the United States for the district and division embracing the place where such action is pending."

5.      Under 28 U.S.C. § 1331, this Court has original federal question jurisdiction over this action because Plaintiff's claims pursuant to 42 U.S.C. § 1983 arise under the laws of the United States. Therefore, this case is properly removable to this court under 28 U.S.C. § 1441, 1446.

6.      In accordance with 28 U.S.C. § 1446 (b) (1), this notice of removal is timely filed within thirty (30) days of Defendant's receipt of the Complaint which was the initial pleading setting forth the federal claims asserted against it.

7.      In accordance with 28 U.S.C. § 1446 (a), copies of all process, pleadings, and orders served upon Defendant in this action are attached hereto as Exhibit A.

8.      On May 19, 2022, Defendant filed with the Prothonotary of the Court of Common Pleas of Chester County, Pennsylvania, a Notice of Filing Notice of Removal.

9.      Defendant has provided written notice to Plaintiff by contemporaneously serving its counsel with this Notice of Removal.

10.     By filing this Notice of Removal, Defendant does not waive or intend to waive any defense or counterclaim that may be available to it.

**WHEREFORE**, for the reasons stated above, this action is removable to this Court pursuant to 28 U.S.C. § 1331, §1441 and §1446 under this Court's federal question jurisdiction.

Respectfully submitted,

**MacMain, Connell & Leinhauser, LLC**

Dated:   May 19, 2022                      By:   _____

David J. MacMain
Attorney I.D. No. 59320
Stephen G. Rhoads
Attorney I.D. No. 47458
433 W. Market Street, Suite 200
West Chester, PA 19382
*Attorneys for Defendant Easttown Township*

<u>**CERTIFICATE OF SERVICE**</u>

I, Stephen G. Rhoads, hereby certify that on this 19th day of May 2022, a copy of the

foregoing *Notice of Removal* was served upon the following via first class mail and email:

James Sargent, Jr., Esq.
Vince Donahue, Esq.
Lamb McErlane, P.C.
24 E. Market Street
PO Box 565
West Chester, PA 19381
jsargent@lambmcerlane.com
vdonohue@lambmcerlane.com
*Attorneys for Plaintiff*

**MacMain, Connell & Leinhauser, LLC**

Dated: <u>May 19, 2022</u>                    By:

David J. MacMain
Attorney I.D. No. 59320
Stephen G. Rhoads
Attorney I.D. No. 47458
433 W. Market Street, Suite 200
West Chester, PA 19382
*Attorneys for Defendant Easttown Township*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DEVON HORSE SHOW AND | : | |
| COUNTRY FAIR, INC. | : | |
|       Plaintiff | : | |
| | : | |
|   v. | : | |
| | : | |
| EASTTOWN TOWNSHIP | : | CIVIL ACTION NO.: |
| | : | |
|       Defendants. | : | |
| | : | |

I, Stephen G. Rhoads, hereby certify that on this 19th day of May 2022, copy of the forgoing

Notice of Removal has been filed with the Office of the Prothonotary, Chester County Court of

Common Pleas.

                                            **MacMain, Connell & Leinhauser, LLC**

Dated:   May 19, 2022         By:                             

                                            David J. MacMain
                                            Attorney I.D. No. 59320
                                            Stephen G. Rhoads
                                            Attorney I.D. No. 47458
                                            433 W. Market Street, Suite 200
                                            West Chester, PA 19382
                                            *Attorney for Defendants Easttown Township*

# EXHIBIT A

# Supreme Court of Pennsylvania

## Court of Common Pleas
## Civil Cover Sheet
### CHESTER County

| For Prothonotary Use Only: |
| --- |
| Docket No: 2022-02414-MJ |

TIME STAMP

*The information collected on this form is used solely for court administration purposes.  This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**Commencement of Action:**
- ☒ Complaint
- ☐ Writ of Summons
- ☐ Petition
- ☐ Transfer from Another Jurisdiction
- ☐ Declaration of Taking

| Lead Plaintiff's Name: | Lead Defendant's Name: |
| --- | --- |
| Devon Horse Show and Country Fair, Inc. | Easttown Township |

| **Are money damages requested?** ☒ Yes ☐ No | **Dollar Amount Requested:** (check one) ☐ within arbitration limits ☒ outside arbitration limits |
| --- | --- |

| **Is this a *Class Action Suit?*** ☐ Yes ☒ No | **Is this an *MDJ Appeal?*** ☐ Yes ☒ No |
| --- | --- |

Name of Plaintiff/Appellant's Attorney: James C. Sargent, Jr., Esquire

☐ **Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)**

**Nature of the Case**: Place an "X" to the left of the **ONE** case category that most accurately describes your *PRIMARY CASE*.  If you are making more than one type of claim, check the one that you consider most important.

**TORT** (*do not include Mass Tort*)
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability (*does not include mass tort*)
- ☐ Slander/Libel/ Defamation
- ☐ Other: _____

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other: _____

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional: _____

**CONTRACT** (*do not include Judgments*)
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other

- ☐ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other

- ☐ Other: _____

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other: _____

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other

- ☐ Zoning Board
- ☐ Other: _____

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☐ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☒ Other: Civil Rights

*Updated 1/1/2011*



# Chester County
# Court of Common Pleas
# Cover Sheet

Docket No:

| Plaintiff(s): (Name, Address) | Plaintiff's/Appellant's Attorney (circle one) |
|---|---|
| Devon Horse Show and Country Fair, Inc.<br>23 Dorset Road<br>Devon, PA 19333 | (Name, firm, address, telephone and attorney ID#)<br>James C. Sargent, Esquire  I.D. #28642      610-430-8000<br>Vincent T. Donohue, Esquire I.D. #81311<br>Lamb McErlane PC - PO Box 565 - West Chester, PA 19381 |
| Defendant(s): (Name, Address)<br>Easttown Township<br>566 Beaumont Road<br>Devon, PA 19333 | Are there any related cases? Please provide case nos. |

**Defendants who are proceeding without counsel are strongly urged to file with the Prothonotary a written statement of an address AND a telephone number at which they can be reached.**

If this is an appeal from a Magisterial District Judgment, was appellant ◯ Plaintiff or ◯ Defendant in the original action?

Jury Trial Demanded ◯ Yes ⦿ No

Nature of case if not on previous cover sheet – Please choose the most applicable

| | | | |
|---|---|---|---|
| ☐ Annulment | | ☐ | Writ of Certiorari |
| ☐ Custody · Conciliation Required | | ☑ | Injunctive Relief |
| ☐ Custody· Foreign Order | | ☐ | Mechanics Lien Claim |
| ☐ Custody - No Conciliation Required | | ☐ | Issuance of Foreign Subpoena |
| ☐ Divorce - Ancillary Relief Request | | ☐ | Name Change |
| ☐ Divorce - No Ancillary Relief Requested | | ☐ | Petition for Structured Settlement |
| ☐ Foreign Divorce | | | |
| ☐ Foreign Protection from Abuse | | | |
| ☐ Paternity | | | |
| ☐ Protection from Abuse | | | |
| ☐ Standby Guardianship | | | |

**Arbitration Cases Only**

Arbitration Date _____

Arbitration Time _____

Defendants are cautioned that the scheduling of an arbitration date does not alter the duty of the defendant to respond to the complaint and does not prevent summary disposition from occurring prior to the arbitration date.

This matter will be heard by a Board of Arbitrators at the time and date specified but, if one or more of the parties is not present at the hearing, the matter may be heard at the same time and date before a judge of the court without the absent party or parties.  There is no right to a trial *de novo* on appeal from a decision entered by a judge.

**Notice of Trial Listing Date**

Pursuant to C.C.R.C.P. 249.3, if this case is not subject to compulsory arbitration it will be presumed ready for trial twelve (12) months from the date of the initiation of the suit and will be placed on the trial list one (1) year from the date the suit was filed unless otherwise ordered by the Court.

To obtain relief from automatic trial listing a party must proceed pursuant to C.C.R.C.P. 249.3(b), request an administrative conference and obtain a court order deferring the placement of the case on the trial list until a later date.

**File with:** Chester County Justice Center,  Prothonotary Office, 201 W. Market St., Ste. 1425, PO Box 2746, West Chester, PA 19380-0989

These cover sheets must be served upon all other parties to the action immediately after filing.
Submit enough copies for service.

LAMB MCERLANE PC
By:  James C. Sargent, Jr.
Attorney I.D. No. 28642
By:  Vincent T. Donohue
Attorney I.D. No. 81311
24 East Market Street
P.O. Box 565
West Chester, PA  19380
(610) 430-8000

*Attorneys for Plaintiff*
*Devon Horse Show and*
*Country Fair, Inc.*

| | | |
|---|---|---|
| DEVON HORSE SHOW AND | : | IN THE COURT OF COMMON PLEAS |
| COUNTRY FAIR, INC. | : | CHESTER COUNTY, PENNSYLVANIA |
|    23 Dorset Road | : | |
|    Devon, PA  19333 | : | NO. |
|         *Plaintiff* | : | |
| | : | |
|    v. | : | |
| | : | |
| EASTTOWN TOWNSHIP | : | |
|    566 Beaumont Road | : | |
|    Devon, PA  19333 | : | |
|         *Defendant* | : | |

## NOTICE TO DEFEND

    You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.**

CHESTER COUNTY BAR ASSOCIATION
Lawyer Referral Services
15 West Gay Street, 2nd Floor
P.O. Box 3191
West Chester, PA 19381-3191
(610) 429-1500

LAMB McERLANE PC

Dated: April 22, 2022                    By:

James C. Sargent, Jr.
Attorney I.D. No. 28642
Vincent T. Donohue
Attorney I.D. No. 81311
24 E. Market Street, P.O. Box 565
West Chester, PA  19381-0565
(610) 430-8000

*Attorney for Plaintiff*
*Devon Horse Show and*
*Country Fair, Inc.*

LAMB MCERLANE PC
By:  James C. Sargent, Jr.
Attorney I.D. No. 28642
By:  Vincent T. Donohue
Attorney I.D. No. 81311
24 East Market Street
P.O. Box 565
West Chester, PA  19380
(610) 430-8000

*Attorneys for Plaintiff*
*Devon Horse Show and*
*Country Fair, Inc.*

| | | |
|---|---|---|
| DEVON HORSE SHOW AND COUNTY FAIR, INC. 23 Dorset Road Devon, PA  19333 *Plaintiff* | : : : : : : : : | IN THE COURT OF COMMON PLEAS CHESTER COUNTY, PENNSYLVANIA NO. |
| v. | : : | |
| EASTTOWN TOWNSHIP 566 Beaumont Road Devon, PA  19333 *Defendant* | : : : : : | |

## COMPLAINT

Plaintiff, Devon Horse Show and Country Fair, Inc. (referred to herein as "Devon"), by and through its attorneys, Lamb McErlane PC, files this Complaint against Defendant Easttown Township, and in support hereof avers as follows:

### Introduction

Devon is a Pennsylvania nonprofit corporation that hosts the annual Devon Horse Show & Country Fair (the "Horse Show"), an 11-day event in late May/early June each year involving equestrian competitions, equestrian exhibitions and a country fair that features amusement rides, games, retail shopping, food and drink.  The Horse Show is a widely popular, historical and revered part of Suburban Philadelphia and enjoys prestige on an international level.  The Horse Show has existed for 125 years, from 1896 to present, [1] and is the oldest multi-breed horse show in the

---

[1] The Horse Show has been presented annually by Devon, without interruption, except for 2020 and 2021, when Devon was forced to cancel the Horse Show because of then-existing State regulations addressing the COVID-19 pandemic.

country.  A substantial portion of the net proceeds from the Horse Show is donated to Bryn Mawr Hospital, which has been the primary beneficiary of the Horse Show for just over 100 years.

Devon hosts the Horse Show on grounds owned by the Devon Horse Show & Country Fair Foundation (the "Foundation"), which are located primarily in Easttown Township (the "Township"); a smaller portion of the grounds are located in Tredyffrin Township.

The Code of Easttown Township (the "Code") contains a "Special Events" ordinance, codified at Chapter 382 (the "Special Events Ordinance").  Among other things, the Special Events Ordinance regulates what it defines as "Special Events," requires a permit for any person or entity seeking to host a Special Event within the Township, and imposes fees in connection with Special Events.  The Ordinance is uniquely targeted at Devon.  Over the years, Devon has been compelled to pay hundreds of thousands of dollars to the Township in special event permit fees.  On March 22, 2022, the Township issued the Special Event Permit for the 2022 Horse Show, subject to "Special Conditions of Permit" which included, *inter alia*, a "deposit" by Devon of a staggering $130,000 for support services by the Township under the Special Events Ordinance.

For the reasons detailed below, the Special Events Ordinance is invalid on its face, hence has been imposed on Devon illegally and without color of right.  Alternatively, the Township has singled out Devon for unwarranted and unequal treatment and has applied the Special Events Ordinance in a non-uniform and illegal manner that violates Devon's civil rights.

**The Parties**

1.      Devon is a Pennsylvania nonprofit corporation with a physical address of 23 Dorset Road, Devon, PA 19333 and a mailing address of P.O. Box 865, Devon, PA 19333.

2.      The Township is a municipal corporation operating under the Pennsylvania Second Class Township Code, maintaining a business address of 566 Beaumont Road, Devon, PA 19333.

**Background**

3.     Devon hosts the Horse Show on the grounds depicted on the aerial photograph attached hereto as **Exhibit A** (the "Property") which, as shown on Exhibit A, are located in Easttown Township and in Tredyffrin Township.

4.     The Property is owned by the Foundation, which, since its inception, has enjoyed a symbiotic relationship with Devon and both entities share the same Chairman of their respective boards of directors.

5.     Devon uses the Property to host equestrian competitions and exhibitions, a country fair complete with amusement rides, retail vendors, food and drink operations, and a host of other uses commonly associated with all of the foregoing (collectively, the "Use").

6.     Devon's and the Foundation's Use of the Property is a legally nonconforming use under Pennsylvania law.

7.     As the phrase "normal operations" is applied in the definition of "Special Event" in § 382-1 of the Special Events Ordinance, Devon's normal operations involve only the annual Horse Show and a few smaller equestrian competitions and equestrian exhibition events throughout the year.

8.     Thus, the Horse Show and the other events like it held at the Property throughout the year are not extraordinary events for Devon or the Property -- these events are, and have been for 125 years, Devon's annual routine operations and Devon's entire reason for existing.

9.     In addition to the smaller events held throughout the year, Devon hosts its marquis event and most crucial fundraiser, the Horse Show, which lasts eleven days beginning in late May and ending in early June.

10.     Accordingly, Devon's events, specifically including the Horse Show, are not "special events" at all, but rather these events are the normal, recurring events held routinely and

annually on the Property, which has been designed and developed over decades to accommodate the Use.

11.     Each of Devon's and the Foundation's board of directors is comprised entirely of volunteers who are not compensated for their services.

12.     Similarly, presentation of the annual Horse Show depends upon approximately 2,200 volunteers to staff the Horse Show all of whom contribute their service for the benefit of the community.

13.     Each year, Devon donates a substantial portion of the proceeds from the annual Horse Show to Bryn Mawr Hospital.

14.     To date, Devon has contributed over <u>$18 million dollars</u> to Bryn Mawr Hospital, making Devon Bryn Mawr Hospital's largest benefactor in its history.

**The History of the Township's Special Event Ordinance**

15.     The Township first enacted its Special Event Ordinance in 1959.

16.     The Special Events Ordinance was amended and restated in its entirety pursuant to Ordinance 415-13 enacted by the Township on June 3, 2013.

17.     The Special Events Ordinance was amended again pursuant to Ordinance 433-18, enacted by the Township on January 15, 2018[2].

18.     The current version of the Special Events Ordinance is attached hereto as **Exhibit B**.

19.     The Special Events Ordinance imposes specific obligations on anyone seeking to host a "Special Event" (as defined in the Special Events Ordinance) in the Township, including, *inter alia*, the requirement to apply for and secure a Special Event Permit in advance of the Special

---

[2] It is believed that the Special Event Ordinance was amended one or more times besides 2013 and 2018, but Devon was unable to access that information as of the date hereof.

4

Event (Easttown Code § 382-2) and the requirement to pay the Township for the "support services costs" incurred by the Township as a result of the Special Event (the "Support Services Costs"). Easttown Code § 382-7.

**The Special Event Permits – Prior Years**

20.     Since at least 1999, Devon has complied with the Special Events Ordinance, each year filing the required application for the Special Event Permit and complying with the conditions imposed by the Township in each Special Event Permit.

21.     Specifically, since 2011, on the understanding that it had no alternative (for example, by hiring a private security firm to direct traffic) Devon secured Special Event Permits for each Horse Show it hosted, and, in connection with those Special Event Permits, has paid the Township the following amounts in Support Services Costs:

| | | |
|---|---|---|
| 2011 | $ | 71,521 |
| 2012 | $ | 67,122 |
| 2013 | $ | 72,383 |
| 2014 | $ | 75,246 |
| 2015 | $ | 74,623 |
| 2016 | $ | 75,000 |
| 2017 | $ | 75,000 |
| 2018 | $ | 75,000 |
| 2019 | $ | 75,000 |
| 2020 | no Horse Show | |
| 2021 | no Horse Show | |

Thus, Devon has paid $660,895 in Special Event Permit fees to the Township over the past decade—-**$660,895** that has not been available for contributions to an important community institution, Bryn Mawr Hospital.

22.     In 2016, when the Township attempted to impose unreasonable charges, Devon raised an objection to the Township's attempt to collect Support Services Costs totaling $84,882.52

5

for the 2016 Horse Show.  See the invoice from the Township attached hereto as **Exhibit C** (the "2016 Invoice").

23.    That dispute was resolved by an Agreement between Devon and the Township pursuant to which the parties agreed to fix the amount of Support Services Costs at $75,000 per year for the Horse Shows occurring in 2016 through 2019.

24.    As the result of legal restrictions related to the COVID-19 pandemic, Devon was prevented from hosting the Horse Show in 2020 and 2021.

**The Special Event Permit - 2022**

25.    On March 22, 2022, the Township issued to Devon the Special Event Permit (identified by the Township as Permit # SE-2022-01) for the 2022 Horse Show, which, along with Devon's application for such Special Event Permit, is attached hereto as **Exhibit D** (the "2022 Permit").

26.    Condition #1 listed in the 2022 Permit imposes a requirement on Devon to "...submit to the Township the deposit in the amount of ... **$130,000.00** to secure the required police services, by check paid to the order of Easttown Township, on or before April 29, 2022" ("Permit Condition 1"). (Emphasis supplied).

27.    It cannot be overstated that, for the first post-Covid year, 2022, the Township unilaterally and without explanation, seeks to almost double the "Special Event Permit" fee to Devon.

28.    In response to a request from Devon, on March 30, 2022, the Township provided the following breakdown of the estimate for the 2022 Horse Show Support Services Costs attributable to services to be rendered by the Township's Police Department:

**Devon Horse Show 2022 Initial Cost Estimate**

| | |
|---|---|
| Hours: | 910 |
| Base Total Cost: | $102,929.11 |

6

Employer FICA Cost:     $7,874.07
**Total Estimated Cost:   $110,803.18**

29.     Not only has the Township fee almost doubled, but the deposit required by Permit Condition 1 is $19,196.82, or about 17% higher than the Support Services Costs estimated by the Township. Moreover, the Permit Conditions violate the Township's own Ordinance.

30.     On January 6, 2022, the Township passed Resolution 2022-06 (the "2022 Fee Resolution", the relevant portions of which are attached hereto as **Exhibit E**).

31.     The 2022 Fee Resolution states, in relevant part:

NOW, THEREFORE, BE IT AND IT IS RESOLVED, that the Board of Supervisors of Easttown Township hereby authorizes and establishes the following Schedule of Financial Securities and Fees to be paid by each applicant or appellant filing an application(s) or appeal(s) to the Township Treasurer upon submission, as follows:

....

**Chapter 382 – Special Event**

Special Event Permit: Police and Public Works staff support the Township special events and *a deposit of 50% of their estimated wages* to support the event is *due 10 days prior to the event.* Total fees will be reconciled after the event ends based upon actual Police and Public Works staff wage costs.

Emphasis supplied.

32.     Pursuant to the authority granted to the Township's Board of Supervisors in § 382-7.D of the Easttown Code, the Township set the fees for Support Services Costs in the 2022 Fee Resolution to be calculated as follows:

Rates for provision of staff services shall be based on available personnel and current hourly equivalents connected to labor or employment agreements or pay scales in place at the time of the provision of such services.

Appendix B of the 2022 Fee Resolution.

7

33.    Permit Condition 1 violates the 2022 Fee Ordinance by requiring that Devon deposit 100% of the estimated Support Services Costs as compared to the 50% deposit required by paragraph 32 of the 2022 Fee Ordinance.

34.    Permit Condition 1 violates the Special Events Ordinance by requiring that Devon pay the deposit via check, when the Special Events Ordinance permits payment of the deposit with a "cash escrow or in a bond in a format acceptable to the Township." Easttown Code § 382-7.C.

35.    Permit Condition 1 violates the Special Events Ordinance and the 2022 Fee Ordinance by requiring that Devon pay the deposit by April 29, 2022, which accelerates by 17 days the deadline from the May 16, 2022 (i.e., 10 days prior to the start of the Horse Show, as outlined in Devon's Permit Application) set by the 2022 Fee Ordinance and § 382-7.B.

36.    Permit Condition 1 violates the Special Events Ordinance and the 2022 Fee Ordinance by requiring that Devon pay a deposit in an amount that is $19,196.82 (17%) higher than what the Special Events Ordinance and the 2022 Fee Ordinance prescribe as a maximum deposit to secure the Support Services Costs.

## COUNT I
## THE TOWNSHIP'S SPECIAL EVENTS ORDINANCE
## VIOLATES 42 U.S.C. § 1983

37.    Devon incorporates by reference the foregoing paragraphs of this Complaint as if the same were set forth herein at length.

38.    The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; **or the right of the people peaceably to assemble,** and to petition the Government for a redress of grievances." U.S. Const. amend. I (emphasis supplied).

39.    Under 42 U.S.C. § 1983, a municipality may not, under the color of law, deprive a plaintiff of a federal constitutional right.

8

40.     A fee as a condition of assembly or demonstration is a prior restraint on speech, *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130 (1992), and as such faces a "heavy presumption" of invalidity, *see Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963).

41.     A facial challenge to a law or ordinance will lie where "a licensing law gives a government official or agency substantial power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 759 (1988).

42.     In other words, if an ordinance allows arbitrary application of governmental regulation on public gatherings or assemblies, it is inherently suspect because that form of discretion could become a means for suppressing a particular point of view. *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 649 (1981).

43.     An ordinance regulating the freedom of speech or assembly must contain "narrow, objective, and definite standards to guide the licensing authority." *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 150–51 (1969).

44.     The Special Events Ordinance is facially invalid because it grants unfettered and unlawful discretion to the Township Manager to decide whether to waive the requirement of obtaining a permit at least 30 days in advance of a special event and to determine the cost of – and possibly waive altogether – the Support Services Costs that will be charged to the host of the special event based on the content of the proposed event.

45.     The Special Events Ordinance requires a permit from the Township prior to holding a "special event," which is defined as:

> A preplanned single event or series of events that, because of its nature, interest, location, promotion or any combination of similar influences, is expected to draw a large number of persons, proposed to be held on public property, or on private property but impacting public property or roadways, and/or requiring the use of public support services. "Special event" shall include, but not be limited to, races,

festivals, shows, neighborhood celebrations, public events which are privately sponsored but open to the public, or similar activities generally considered be recreational in nature. The term shall not include the normal operations, activities or affairs of any duly established municipal, recreational or religious organization or institutions located in the Township, an event whose estimated total attendance of all participants is anticipated to be less than 50 people, or to any community event.

Easttown Code § 382-1.

46.      In essence, any outdoor gathering of 50 people or more, whether on public or private property, requires a Special Event Permit from the Township at least 30 days in advance of the event, with some limited exceptions for "normal operations" for municipal, recreational or religious organizations.

47.      Preliminarily, exempting municipal, recreational or religious organizations from the requirement to obtain a special event permit is a content-based restriction that is patently illegal.

48.      Under the Ordinance, the Township Manager is also given complete discretion to waive the 30 day requirement:

The Township Manager or his designee **may waive** the requirement of 30 days' advance notice for spontaneous **special events or community events for celebrations important to the Township,** the Commonwealth of Pennsylvania and the nation, including but not limited to the celebration of local sports teams and the end of wars or other conflicts of national significance. The Township Manager or his designee **may waive** the requirement of 30 days' advance notice if there are **circumstances unique to the sponsor** which justify the waiver to assure the public safety and welfare of the Township or the **Township's best interest**.

Easttown Code § 382-3.B (emphasis supplied).

49.      In determining whether to waive the 30 day requirement, the Township Manager is empowered to determine whether such a waiver is in "the Township's best interest," which requires the Township Manager to evaluate the content of the event, the topic, sponsor, and attendees, all of which are improper content-based criteria.

50.    The Special Events Ordinance also grants unencumbered discretion in the Township's review of an application for a permit:

A.  Township Manager can establish "terms and conditions within which the event may be conducted" in his sole discretion.

C.  Township Manager may waive review of the application by other Township personnel.

E.  In reviewing a proposed special event or community event, personnel **shall also review**, evaluate and estimate the cost of the support services required for the community event or, in the case of a special event, the **cost of the support services that will be charged to the sponsor**. The personnel may also **recommend to the Township Manager or his designee that costs or any portion of the costs be waived if such a waiver is in the best interest of the Township**. Township review will involve consideration of various criteria and factors, including but not limited to the following:

(1) **Is the proposed event considered desirable for the Township?**

(2) Does the Township have the ability to provide, if needed, the required support services regardless of who bears the cost?

(3) Does the proposed event **adversely affect the normal and necessary functions of the support services** to the Township?

(4) Does the proposed **event conflict with any other proposed events** or activities?"

F.  Reviewing personnel shall recommend either approval or disapproval of the special event, the conditions required if approved, and the cost of support services...

G.  The Township Manager or his designee **may require** additional conditions not herein mentioned as may be necessary to maintain peace and order or to protect the health, safety and general welfare of the citizens of the Township or any neighboring property.

Easttown Code § 382-4 (emphasis supplied).

51.    As part of the discretion granted to the Township Manager under the Special Events Ordinance, the Township Manager has refused to utilize (or to allow Devon to hire) the Fire Police from the local fire departments to provide services related to traffic control and other services that clearly do not need to be provided by the uniformed officers of the Township's Police Department.

11

52.     The members of the Berwyn Fire Police (whose territory includes the Property) have received specialized training to provide many of the services that the Township Manager forces Devon to secure from the Easttown Police Department, including traffic control, crowd control and security services in non-emergency situations.

53.     Based upon the Township's projection underlying Permit Condition 1, the cost of using the Easttown Police Department for services ranges from $53.97 per hour to $131.16 per hour (with the weighted average of $99.09 per hour, based upon as the Township's projection underlying Permit Condition 1), plus the FICA charges attached to such payments to the officers.

54.     The Berwyn Fire Police have proposed to charge Devon $25.50 per hour for services, which would represent a savings per hour to Devon of approximately 75%.

55.     The Special Events Ordinance goes on to grant unbridled authority to the Township to decide the amount of liability insurance that an applicant must obtain in order to hold a special event in the Township:  "All events shall obtain liability insurance in the amount denoted on the application, which may change from time to time, with the Township named as an additional insured, **or a larger amount in the discretion of the Township.**" Easttown Code § 382-6.B.

56.     Finally, the Township Manager is able to waive *all* of the requirements or conditions of approval, at his discretion: **"The Township Manager or his designee may,** upon showing of good cause that certain conditions or requirements as herein set forth are not applicable or would cause an unreasonable burden upon the sponsor, **modify the foregoing requirements** after review of the circumstances presented by the sponsor." Easttown Code § 382-6.H.

57.     Because of the excessive unchecked discretion granted to the Township Manager, the Special Events Ordinance directly violates the myriad cases that protect citizens from governmental overreach and content-based discrimination that the First Amendment was meant to prohibit.

58.     It could not be more obvious that the Township, through the Special Events Ordinance and its unfair and unequal application to Devon, has singled out Devon among all of Township taxpayers and beneficiaries of municipal services, and is attempting to partially subsidize its entire annual police expense through exorbitant fees imposed on Devon during its eleven days of normal annual operations.

59.     The Ordinance and its application to Devon violate Devon's First Amendment right to assembly and free speech. As such, the Special Events Ordinance is invalid and unenforceable.

WHEREFORE, Devon Horse Show and Country Fair, Inc., respectfully requests this Honorable Court to:

a.  Declare the Special Events Ordinance invalid and unenforceable as an unreasonable restraint on Devon's exercise of its First Amendment right of assembly and free speech;

b.  Issue an Order enjoining the Township from interfering with Devon's right to hold its annual Horse Show and/or from requiring a Special Event Permit pursuant to the Ordinance as written and unequally applied to Devon;

c.  Award compensatory damages in favor of Devon and against the Township;

d.  Award reasonable attorneys' fees in favor of Devon and against the Township; and

e.  Grant such other relief as the Court deems appropriate.

## COUNT II
### THE TOWNSHIP'S APPLICATION OF THE SPECIAL EVENTS ORDINANCE VIOLATES 42 U.S.C. § 1983

60.     Devon incorporates by reference the foregoing paragraphs of this Complaint as if the same were set forth herein at length.

61.     As part of its granting of a special event permit, the Township requires each applicant to pay for the cost of "support services," which are defined as:

Those services which can or must be provided by the Township to ensure that an event is conducted in such a manner as to protect the rights, safety, health, property and general welfare of its citizens. This includes but is not limited to fire protection, police protection, crowd management and control, traffic management and solid waste management.

Easttown Code § 382-1.

62.     The Third Circuit has reviewed this sort of scheme and held as follows:

It is beyond peradventure that a city can establish a permit scheme whose goal is to "assure financial accountability for damage caused by" an event, *Thomas v. Chi. Park Dist.*, 534 U.S. 316, 322, 122 S.Ct. 775, 151 L.Ed.2d 783 (2002), and can take into account the resulting expense of an event in assessing a fee. Thus, for example, a circus or other large parade can be assessed a larger fee than a small parade, because the former would cause a larger expense to the government than the latter. *Cox*, 312 U.S. at 577, 61 S.Ct. 762; *see also, Murdock v. Pennsylvania*, 319 U.S. 105, 116, 63 S.Ct. 870, 87 L.Ed. 1292 (1943); *Church of the Am. Knights of the Ku Klux Klan v. City of Gary*, 334 F.3d 676, 682 (7th Cir.2003). **Such expenses, however, cannot be based on the content of the proposed speech.**

*The Nationalist Movement v. City of York*, 481 F.3d 178, 184 (3d Cir. 2007) (emphasis supplied).

63.     On or about January 1, 2011, the Township and the Easttown Township Police Department entered into a "Collective Bargaining Agreement – January 1, 2007 through December 31, 2011" (the "CBA").

64.     Since its adoption, the CBA has been amended pursuant to the terms of the following documents: the Settlement Agreement effective January 1, 2012 through December 31, 2015 (the "2012 Amendment"); the Settlement Agreement effective January 1, 2016 through December 31, 2019 (the "2016 Amendment"); and the Settlement Agreement effective January 1, 2020 through December 31, 2024 (the "2020 Amendment").  A true and correct copy of the CBA along with each of the foregoing Amendments is attached hereto as **Exhibit F**.

65.     In Section 15 of the 2012 Amendment, the Township and the Easttown Township Police Department added the following provisions to the CBA:

The parties recognize that the Devon Horse Show and activities related to it provide a **unique opportunity** for members of the Police Department **to provide services**

14

and generate income to the mutual benefit of the parties. Accordingly, they agree that during this particular detail, the **officers shall receive a rate of $55/hour and that the Township shall add a reasonable administrative fee**, so as to maintain the relationship with the Horse Show and **preserve the mutual advantage received by the [Township and the Police Department]**.

The members of the bargaining unit and Police management seek a **fair and equitable distribution of the income that each may receive from this opportunity**. Accordingly, the members of the bargaining unit and Police management agree to distribute those **opportunities** equitably between them, taking into account the **opportunity for police management to earn compensation for administrative services**. In the event that a disagreement shall arise as to the distribution of such **opportunity**, the parties shall meet and discuss the issue to see if a resolution can be obtained. In the event no resolution can be reached, the bargaining unit may reopen the agreement solely to seek specific provisions governing the allocation of the **opportunities for such compensation**.

66.     The express language of the CBA acknowledges that the Township and the Township police department sees the Horse Show as a "unique opportunity" to "generate income to the mutual benefit" of the Township and its police department—in other words, to make money at the expense of a venerable non-profit, which conducts an annual public assembly and exercise of First Amendment rights that benefits an important institution critical to the health and well-being of the community.

67.     Essentially, the Township and the Easttown Township Police Department seek to over-reach their regulatory authority by imposing—on the eve of the first annual event in three years—exorbitant fees on Devon purportedly in Support Services Costs (which included a "reasonable administrative services fee" which is not permitted by, nor even referenced in, the Special Event Ordinance) for the purpose of closing a negotiation gap between the Township and its police department and subsidizing a budget deficit that should be made up through uniform increases in local taxes.

68.     Devon is neither a party to the CBA or its Amendments, nor was Devon consulted or notified about the parties to the CBA singling out Devon as a source of cash for subsidizing the

Township's obligations under the CBA and its Amendments. But more importantly, any municipal expense such as the cost of the CBA should be shared fairly, *pro rata*, among Township taxpayers and not imposed disproportionately upon Devon simply because the Township has the leverage to do so in the face of the imminent 2022 Devon Horse Show.

69.     As stated above, the Township refuses to secure "support services" from the perfectly capable Berwyn Fire Department Fire Police at a cost per hour that is approximately 25% of what the Easttown Township Police Department would cost.

70.     It appears that using the Fire Police fails to offer both the Township and its Police Department the "unique opportunity… to generate income to the mutual benefit of the [Township and Police Department]" from the Horse Show.

71.     No other special event, or special event permittee, is singled out by the Township for this sort of disparate treatment.

72.     Following complaints from Devon when it discovered that it had been singled out in the 2012 Amendment for disparate treatment, the Township and its Police Department entered into the 2016 Amendment which, at Section 4, deleted the first full paragraph of Section 15 of the 2012 Amendment (i.e., the paragraph expressly identifying Devon):

> Special Details:   The first paragraph of Section 15 (relating to SPECIAL DETAILS) of the [2012 Amendment] shall by *(sic)* removed. The $55/hour rate will be replaced by the previous method of calculation, providing each full time officer with his/her individual detail rate as calculated using COMPENSATION CALCULATIONS (p. 19).

73.     Accordingly, while the 2016 Amendment eliminated the express reference to Devon, the language above about replacing the $55/hour rate resulted in a large *increase* imposed on Devon for Support Services Costs.

74.     The "previous method of calculation" using the officers' "individual detail rate" resulted in Devon being charged the overtime rate – 150% of regular pay – for every hour worked

by every officer assigned to the Horse Show, regardless of whether the hours served by an officer represented "overtime" hours as set forth in the CBA.

75.     Currently, the Township does, in fact, use each officer's overtime rate applied to every hour of services worked by each officer during the Horse Show, to estimate and calculate the Support Services Costs imposed on Devon.

76.     In years past, the Township has even included 100% of the annual salary of the Township's Chief of Police, who is not covered by the CBA – prorated for the 11 days of the Horse Show – in the Support Services Costs imposed on Devon.

77.     Because the Township and its Police Department continue to exploit the "unique opportunity…to…generate income for the mutual benefit of the parties" from the content of Devon's special event, Devon pays more for Support Services Costs than any other permittee in the Township.

78.     In 2016, the Township issued the 2016 Invoice (attached hereto as Exhibit C) attempting to impose Support Services Costs totaling $84,882.52 for the 2016 Horse Show.[3]

79.     The 2016 Invoice included an illegal "25% Township Fee" totaling $16,976.50 and an expense for supplies totaling $986.40.

80.     Accordingly, the portion of Support Services Costs attributable to police wages in the 2016 Invoice was $66,919.62 (i.e., the total set forth in paragraph 71 reduced by the amounts set forth in paragraph 72) for 856 hours of service by the Township Police.

81.     This year, the Township's projection of Support Services Costs, per Permit Condition 1,  is $130,000 based upon a projected 910 hours of Police services.

---

[3] Following Devon's objection to this fee, the parties entered into the Agreement referenced in paragraph 24 above reducing this fee to $75,000.

82.     Accordingly, from 2016 to 2022, the amount of police wages that the Township seeks to impose on Devon under the Special Event Ordinance has risen from $66,919.62 to $130,000 – a 94% increase in six years.

83.     The Township's wages paid to its Police Officers during the same span of time have increased approximately 27%.

84.     Based on these increases, the Township clearly is not even following its own Ordinance, which limits Support Service Costs to those costs incurred by the Township in connection with only one Special Event – the Horse Show.

85.     The Township's flagrant and outrageous arbitrariness in the application of its Special Event Ordinance is exactly the kind of mischief that has been found to be prohibited under the First Amendment.

86.     Such flagrant mistreatment directly violates Devon's right to be free from content-based infringement on its right to free speech and assembly.

WHEREFORE, Devon Horse Show and Country Fair, Inc. respectfully requests this Honorable Court to:

a.   Enjoin the Township from enforcing the Ordinance and Strike the requirement for Devon to prepay $130,000 for "Support Services Costs" for its 2022 Horse Show and Country Fair;

b.   Award compensatory damages in favor of Devon and against the Township;

c.   Award reasonable attorneys' fees in favor of Devon and against the Township; and

d.   Grant such other relief as the Court deems appropriate.

## COUNT III
## VIOLATION OF THE PENNSYLVANIA CONSTITUTION

87.     Devon incorporates by reference the foregoing paragraphs of this Complaint as if the same were set forth herein at length.

88.     Municipalities in Pennsylvania are empowered to charge licensing fees for the granting of a privilege, where the granting of a license usually incurs some cost to the municipality, based on the theory that "it is reasonable to require the person seeking the license to defray cost commensurate with the expense incurred." *Martin Media v. Hempfield Twp. Zoning Hearing Board*, 671 A.2d 1211, 1215 (Pa. Cmwlth. 1996) (citing *Talley v. Commonwealth of Pennsylvania*, 553 A.2d 518 (Pa. 1989)).

89.     Such fees, however, must be fairly and reasonably commensurate with the expense in administering the license. *Am. Baseball Club of Philadelphia v. City of Philadelphia*, 167 A. 891, 894-95 (Pa. 1933).

90.     Where "a license fee collects more than an amount commensurate with the expense of administering the licensee, it would become a tax revenue and cease to be a valid license fee." *Talley*, 553 A,2d at 519.

91.     The Pennsylvania Constitution requires that "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." Pa. Const. Art. 8, § 1.

92.     Here, as explicitly stated in the CBA, the Support Services Costs charged to Devon Horse Show – and only to Devon Horse Show – are inflated, unreasonable, and used as a "unique opportunity" to "generate income" for both the Police Department and the Township.

93.     The Ordinance, and the Support Service Cost that the Township seeks to impose on Devon, demonstrates that the Township is using its police powers to extract from one taxpayer,

Devon Horse Show, a disproportionate share of a general Township expense. Thus, the permit fee is a means for raising general revenue for the Township, rather than simply covering the actual Township costs incurred in connection with the Devon Horse Show. The Township's Special Events "fee" is no more than a unique tax levied solely against Devon, and not any other Township taxpayers.

94.     Because Devon Horse Show is "taxed" differently from all others in a similar situation, the Support Services Costs violate the Uniformity Clause of the Pennsylvania Constitution.

95.     Moreover, such singling-out of one individual applicant, and the artificial inflation of the Support Services Costs charged to that applicant, is patently unreasonable.

96.     Accordingly, the Support Services Costs charged to Devon Horse Show for the 2022 Horse Show and Country Fair are illegal.

WHEREFORE, Devon Horse Show and Country Fair, Inc. respectfully requests this Honorable Court to:

    a.  Declare the Special Events Ordinance invalid and unenforceable as violating the Uniformity Clause of the Pennsylvania Constitution;

    b.  Issue an Order enjoining the Township from interfering with Devon's right to hold its annual Horse Show without the Special Event Permit that is unequally and illegally applied to Devon;

    c.  Enter an Order enjoining the Township from charging Devon Horse Show for "Support Services Costs" associated with the 2022 Horse Show and Country Fair;

    d.  Award reasonable attorneys' fees in favor of Devon and against the Township; and

    e.  Grant such other relief as the Court deems appropriate.

Dated:  April 22, 2022

LAMB McERLANE PC

By:

James C. Sargent, Jr.
Attorney I.D. No. 28642
Vincent T. Donohue
Attorney I.D. No. 81311
24 E. Market Street, P.O. Box 565
West Chester, PA  19381-0565
(610) 430-8000

*Attorney for Plaintiff*
*Devon Horse Show and*
*Country Fair, Inc.*

## VERIFICATION

I verify that the foregoing statements are true and correct to the best of my knowledge, information and belief. I understand that false statements made herein are subject to the penalties of 18 Pa. C.S., Subsection 4904, relating to unsworn falsification to authorities.

Date: 4/22/22

Wayne Grafton, Chairman
Devon Horse Show and Country Fair

LAMB MCERLANE PC
By:  James C. Sargent, Jr.
Attorney I.D. No. 28642
By:  Vincent T. Donohue
Attorney I.D. No. 81311
24 East Market Street
P.O. Box 565                                    *Attorneys for Plaintiff*
West Chester, PA  19380                   *Devon Horse Show and*
(610) 430-8000                                 *Country Fair, Inc.*

| | | |
|---|---|---|
| DEVON HORSE SHOW AND | : | IN THE COURT OF COMMON PLEAS |
| COUNTRY FAIR, INC. | : | CHESTER COUNTY, PENNSYLVANIA |
| 23 Dorset Road | : | |
| Devon, PA  19333 | : | NO. |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| EASTTOWN TOWNSHIP | : | |
| 566 Beaumont Road | : | |
| Devon, PA  19333 | : | |
| *Defendant* | : | |

## PUBLIC ACCESS POLICY CERTIFICATE OF COMPLIANCE

I hereby certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Dated:  April 22, 2022

LAMB McERLANE PC

By:  _____
     James C. Sargent, Jr.
     Attorney I.D. No. 28642
     Vincent T. Donohue
     Attorney I.D. No. 81311
     24 E. Market Street, P.O. Box 565
     West Chester, PA  19381-0565
     (610) 430-8000

     *Attorney for Plaintiff*
     *Devon Horse Show and*
     *Country Fair, Inc.*

22

# Exhibit A



**Exhibit B**

# Chapter 382

# SPECIAL EVENTS

## § 382-1. Definitions.

For the purpose of this chapter, the following terms shall have the following meanings indicated:

COMMUNITY EVENT — Any public event officially sponsored or officially organized by the Township from time to time.

SPECIAL EVENT — A preplanned single event or series of events that, because of its nature, interest, location, promotion or any combination of similar influences, is expected to draw a large number of persons, proposed to be held on public property, or on private property but impacting public property or roadways, and/or requiring the use of public support services. "Special event" shall include, but not be limited to, races, festivals, shows, neighborhood celebrations, public events which are privately sponsored but open to the public, or similar activities generally considered be recreational in nature. The term shall not include the normal operations, activities or affairs of any duly established municipal, recreational or religious organization or institutions located in the Township, an event whose estimated total attendance of all participants is anticipated to be less than 50 people, or to any community event.

SPONSOR — The person, group, corporation or other entity responsible for organizing the event.

SUPPORT SERVICES — Those services which can or must be provided by the Township to ensure that an event is conducted in such a manner as to protect the rights, safety, health, property and general welfare of its citizens. This includes but is not limited to fire protection, police protection, crowd management and control, traffic management and solid waste management.

## § 382-2. Permit required.

No sponsor, person, association, firm, corporation, or other entity shall conduct any special event or community event in Easttown Township without first having obtained a permit from the Township.

## § 382-3. Application for permit. [Amended 1-15-2018 by Ord. No. 433-18]

A. The Township shall develop an application for a special event or community event permit. The Township application for a permit for a special event or community event shall be submitted by the sponsor to the Township Manager or his designee no less than 30 days prior to the special event or community event. If the special event is planned to be marketed and promoted, the sponsor should submit the application well in advance to ensure that the special event receives the required approvals.

B. The Township Manager or his designee may waive the requirement of 30 days' advance notice for spontaneous special events or community events for celebrations important to the Township, the Commonwealth of Pennsylvania and the nation,

including but not limited to the celebration of local sports teams and the end of wars or other conflicts of national significance. The Township Manager or his designee may waive the requirement of 30 days' advance notice if there are circumstances unique to the sponsor which justify the waiver to assure the public safety and welfare of the Township or the Township's best interest.

C.   The application shall be further accompanied by such other information as may be required by the Township Manager or his designee.

## § 382-4. Application review.

A.   Township review of the application is to provide a mechanism which will allow the Township to plan, evaluate and coordinate any special event or community event, which will allow the establishment of terms and conditions within which the event may be conducted and will allow the sponsor or any involved event planner to plan and manage the event within the context of the established terms and conditions.

B.   Township review of special events and community events shall involve input from the following personnel:

   (1)   Township Manager.

   (2)   Police Chief.

   (3)   Fire Chief.

   (4)   Public Works Director.

   (5)   Codes Director.

C.   Additional Township personnel may be involved at the discretion of the Township Manager or his designee. The Township Manager or his designee may waive review by any of the listed Township officials.

D.   The personnel participating in the Township review of the special event or community event are charged with the responsibility of reviewing, evaluating and recommending to the Township Manager or his designee the approval/disapproval of any special event or community event on its own merits.

E.   In reviewing a proposed special event or community event, personnel shall also review, evaluate and estimate the cost of the support services required for the community event or, in the case of a special event, the cost of the support services that will be charged to the sponsor. The personnel may also recommend to the Township Manager or his designee that costs or any portion of the costs be waived if such a waiver is in the best interest of the Township. Township review will involve consideration of various criteria and factors, including but not limited to the following:

   (1)   Is the proposed event considered desirable for the Township?

   (2)   Does the Township have the ability to provide, if needed, the required support services regardless of who bears the cost?

   (3)   Does the proposed event adversely affect the normal and necessary functions

of the support services to the Township?

(4)   Does the proposed event conflict with any other proposed events or activities?

F.   The personnel conducting the Township review shall recommend either approval or disapproval of a proposed special event or community event, submit the conditions required if approved and submit an estimate of costs of support services and any other related issues to the Township Manager or his designee in a timely manner so as not to delay the planning process.

G.   The Township Manager or his designee may require additional conditions not herein mentioned as may be necessary to maintain peace and order or to protect the health, safety and general welfare of the citizens of the Township or any neighboring property.

H.   Final approval of a permit for the community event or special event proposed along with all costs and conditions attached shall be made by the Township Manager or his designee, except those applications which require street closures; then, in such case, final approval shall be by the Township Board of Supervisors at a public meeting of the Township Board of Supervisors.

## § 382-5.  Notification of decision on application.

The Township Manager or his designee shall notify the sponsor of a special event within five days of the final decision. If the notification is an approval, it shall include any costs and/or conditions attached to the approval. If the notification is a denial, it shall include the reasons for denial.

## § 382-6.  Regulations and requirements.

A.   Approval to conduct a special event or community event by this process does not relieve the sponsor or any participants, including but not limited to peddlers, vendors, or exhibitors, from the responsibilities of applying for any other permits or licenses, complying with federal or state law, or meeting any other requirements of the Township's ordinances that may be applicable.

B.   All events shall obtain liability insurance in the amount denoted on the application, which may change from time to time, with the Township named as an additional insured, or a larger amount in the discretion of the Township. The insurance shall satisfy all insurance requirements for the Township for holding the special event. The insurance policy may be subject to the review and approval of the Township Solicitor.

C.   All required permits, licenses, security deposits, fees, insurance policies or any other conditions of the permit so indicated on the permit shall be obtained no later than 10 days prior to the special event.

D.   The sponsor holding the special event shall be responsible to the Township for damages sustained to Township property caused by participants in the special event. Such additional costs and expenses shall be paid to the Township by the sponsor within five days of receipt of a bill.

E.  The sponsor holding the special event shall be responsible to the Township for damages sustained to Township property caused by participants in the special event. The sponsor shall also be responsible for the cost of any support services required, at the sole discretion of the Township, to address specific unanticipated circumstances occurring at the special event related to larger crowd numbers than projected by the sponsor, or where the nature of the special event is not consistent with the event as applied for by the sponsor. Such unanticipated circumstances may include, but are not limited to, crowd control and emergency response. Such additional costs and expenses shall be paid to the Township by the sponsor within five days of receipt of a bill.

F.  Sponsors shall be limited to maximum of four special events per calendar year. A special event may last up to 11 consecutive calendar days and still be considered as a single special event. Any additional consecutive days after the eleventh day shall each be considered a separate special event. **[Added 1-15-2018 by Ord. No. 433-18[1]]**

G.  All regulations and/or requirements set forth in this chapter related to events may be waived or adjusted for community events at the discretion of the Township Manager or his designee.

H.  The Township Manager or his designee may, upon showing of good cause that certain conditions or requirements as herein set forth are not applicable or would cause an unreasonable burden upon the sponsor, modify the foregoing requirements after review of the circumstances presented by the sponsor.

## § 382-7. Support services costs. [Amended 1-15-2018 by Ord. No. 433-18]

A.  (Reserved)

B.  No later than 10 days prior to the special event, the sponsor shall secure the costs associated with necessary support services, as set forth in the permit, according to the following schedule:

(1)  Events with estimated costs of less than $2,500: 25%.

(2)  Events with estimated costs between $2,501 to $7,500: 50%.

(3)  Events with estimated costs over $7,500: 100%.

C.  Security may be in the form of a cash escrow or bond in a format acceptable to the Township.

D.  The cost of individual support services shall be set by resolution of the Board of Supervisors from time to time. Any additional costs set forth in the permit shall be paid no later than 10 days prior to the special event.

E.  At the close of the special event, the actual cost of the support services, including support services arising for unanticipated circumstances, shall be calculated and either additional payment made to the Township within five days or excess security released by the Township to the sponsor at the next regularly scheduled meeting of

---

1.   **Editor's Note: This ordinance also redesignated former Subsections F and G as Subsections G and H, respectively.**

the Board of Supervisors.

### § 382-8. Revocation of permit.

A.  In the event that all required permits, licenses, security deposits, fees, insurance policies or any other conditions of the permit so indicated on the permit are not obtained 10 days prior to the special event, the permit shall be revoked by the Township.

B.  In the event all required costs associated with the support services have not been paid 10 days prior to the special event, the Township shall revoke the permit.

C.  Any violation of one or more of the regulations set forth herein or conditions of the permit shall be sufficient grounds for the Township to immediately revoke the permit and order the sponsor holding the special event to cease and desist their activities. Upon such notice of immediate revocation, the sponsor shall cease and desist its activities and shall be prevented from applying for another permit for at least two years from the date of revocation.

D.  If the violation is not discovered by the Township until the special event has ended, then the Township shall suspend for two years the right of the sponsor conducting the special event to apply for another permit to conduct a special event.

E.  The Township may extend the suspension beyond the two-year period, if, in its discretion, it is determined that the sponsor will not conduct a future special event in accordance with the regulations set forth herein or the conditions set forth in the permit or will, if allowed to conduct such a special event, pose a threat to the public health, safety and welfare.

### § 382-9. Appeals.

A sponsor who has been denied a permit to conduct a special event, whose permit has been revoked or whose right to apply for a permit has been suspended or revoked for violation of this chapter or contests a permit condition shall have the right to appeal said denial, suspension, revocation or condition to the Board of Supervisors, in writing, within 15 days of the date of the notice of said denial, suspension, revocation or condition. The Board of Supervisors shall conduct a hearing on said appeal within 30 days from the date of filing of the appeal. The Board of Supervisors shall render a decision within 45 days after the hearing, either upholding the denial, suspension, revocation or condition or granting the appeal and ordering the Township to grant the permit or rescind the revocation or suspension notice or remove the condition.

### § 382-10. Violations and penalties.

A.  Any person, firm or corporation who shall violate any provision of this chapter or fails to secure the permit required thereby, as the case may be, shall, upon conviction thereof, be sentenced to pay a criminal fine of not more than $1,000, plus costs, and, in default of said fine and costs, to a term of imprisonment not to exceed 30 days, or both. Each day that a violation of this chapter continues shall constitute a separate offense.

B.  In addition to the above-provided penalties, the Township may maintain any action

or proceedings in the name of the Township in any court of competent jurisdiction, at law or in equity, to compel compliance with or enforce any violation of this chapter.

## § 382-11. Support services provided by Police Department.

If the Police Department provides support services, the Police Chief shall keep an accurate record of all hours worked by all officers, and extra compensation shall be paid to each officer for all time worked beyond regularly scheduled tour of duty, less the same deduction made from his usual compensation, at appropriate rates.

# Exhibit C



*Easttown* *Township*

**DAVID J. OBZUD**
CHIEF OF POLICE

**SCOTT J. ALBEE**
LIEUTENANT

**POLICE DEPARTMENT**
566 BEAUMONT RD • DEVON • PA 19333
PHONE: 610-341-9780 • FAX: 610-341-9779 • EMAIL: POLICE@EASTTOWN.ORG

June 15, 2016

Mrs. Beth Wright
C/o Devon Horse Show and Country Fair
P.O. Box 865, Devon, PA, 19333

Dear Mrs. Wright,

Thank you for requesting extra-duty police service from the Easttown Township Police Department for your recent event. Below are the invoice details for the remaining balance for police presence served during the **2016 Devon Horse Show and Country Fair** at the Devon Horse Show Grounds from Wednesday, May 25th until Sunday, June 5th.

| Officers | Billable Hours | Rate of Pay | Addt'l Costs/Info. | Totals |
|---|---|---|---|---|
| 1- Full-Time Officer | 89.5 | $100.33 | | $8,979.53 |
| 1- Full-Time Officer | 96.5 | $90.33 | | $8,716.84 |
| 3- Full-Time Officers | 193.0 | $80.25 | | $15,488.25 |
| 1- Full-Time Officer | 36.0 | $48.61 | | $1,749.96 |
| 1- Full-Time Officer | 56.0 | 55.40 | | $3,102.40 |
| 1- Full-Time Officer | 81.5 | $78.80 | | $6,422.20 |
| 1- Full-Time Officer | 85.0 | $77.34 | | $6,573.90 |
| 1- Full-Time Officer | 27.5 | $75.07 | | $2,064.42 |
| 1- Full-Time Officer | 69.5 | $73.72 | | $5,123.54 |
| 1- Full-Time Officer | 53.0 | $72.36 | | $3,835.08 |

| 1- Full-Time Officer | 68.5 | $71.00 | | $4,863.50 |
|---|---|---|---|---|
| | | | Fusees, etc. | $986.40 |
| | | | 25% Township Fee | $16,976.50 |
| | | | Subtotal: | $84,882.52 |
| | | | Deposit Received: | ($47,780.56) |
| | | | Remaining Balance: | $37,101.96 |

Please make the check, in the amount of **$37,101.96**, payable to the Treasurer, Easttown Township remitting same in the stamped, self-addressed envelope provided.

Sincerely,

Dayna Antonio
*Admin. Asst. to Chief Obzud*



*Easttown* Township

**DAVID J. OBZUD**
CHIEF OF POLICE

**SCOTT J. ALBEE**
LIEUTENANT

**POLICE DEPARTMENT**
566 BEAUMONT RD • DEVON • PA 19333
PHONE: 610-341-9780 • FAX: 610-341-9779 • EMAIL: POLICE@EASTTOWN.ORG

April 28, 2016

Mr. Fred Norris
C/o Devon Horse Show and Country Fair
P.O. Box 865, Devon, PA, 19333

Dear Mr. Norris,

Thank you for requesting extra-duty police service from the Easttown Township Police Department for your upcoming event. Below are the invoice details for deposit required to secure police presence during the **2016 Devon Horse Show and Country Fair** to be held at the Devon Horse Show Grounds from Wednesday, May 25th until Sunday, June 5th. Please note that this invoice is an estimate of hours, etc. and may be subjected to change upon completion of extra-duty service.

| Officers | Billable Hours | Rate of Pay | Addt'l Costs/Info. | Totals |
|---|---|---|---|---|
| Chief Obzud | 90.0 | $100.33 | | $9,029.70 |
| 1-Full-Time Officer | 110.5 | $90.40 | | $9,989.20 |
| 11-Full-Time Officers | 755.0 | $74.00 | | $55,870.00 |
| 4-Part-Time Officers | 21.5 | $40.00 | | $860.00 |
| | | | Fusees, etc. | $700.00 |
| | | | Subtotal: | $76,448.90 |
| | | | 25% Township Fee | $19,112.22 |
| | | | Subtotal: | $95,561.12 |
| | | | **Deposit Requested:** | $47,780.56 |

Please make the check, in the amount of **$47,780.56**, payable to the Treasurer, Easttown Township remitting same in the stamped, self-addressed envelope provided.

Sincerely,

Dayna Antonio, *Admin. Asst. to Chief Obzud*

**Exhibit D**



# Easttown Township

*566 Beaumont Road*
*Devon, PA  19333*
*Phone: 610-687-3000 | Fax: 610-687-9666*

## SPECIAL EVENT PERMIT

**Status: Approved**
**Permit #: SE-2022-1**
**Linked Permits:**

## Property Information

**Property Location:** 23 DORSET ROAD      **Tax ID:** 55-3J-52      **Block / Unit:**
**Residential Subdivision:**      **Lot No:**
**Suite:**

**Property Owner:** DEVON HORSE SHOW
PO BOX 865
DEVON PA19333
**Property Address:** 23 DORSET ROAD

**Description:**
Devon Horse Show and Country Fair
**Special Conditions of Permit:**
The Special Event Permit is conditionally approved, under and subject to the following specific terms and conditions addressing the provision of police services during the Special Event:

1. The Permittee shall submit to the Township the deposit amount of One-Hundred and Thirty Thousand Dollars ($130,000.00) to secure the required police services, by check paid to the order of Easttown Township, on or before April 29, 2022.
2. Within thirty days following the completion of the Special Event, the Township shall provide the permittee with a statement of police services provided, with itemized charges; to the extent such charges are less than the deposit amount, the Township shall issue a partial refund check to the Permittee for the remaining amount of the overall deposit.
3. Failure to submit the required deposit on or before April 29, 2022 shall render the Special Event Permit null and void.
The following terms and conditions also apply:
4.This Permit is applicable on May 26, 2022 through June 05, 2022.
5.The Applicant shall not set up external elements of the Event before 8:00 a.m. on May 26, 2022.
6.The Applicant shall remove all external elements of the Event by 3:00 p.m. on June 5, 2022.
7.The Applicant shall comply with the noise control provisions of Section 455-40.A of the Township Code.
8.The Applicant indemnifies and hold harmless the Township, its officers, consultants, employees, and agents from and against any and all actions, suits, demands, payments, costs, and charges for and by reason of the existence of the Event, and all damages to persons or property resulting from or in a manner caused by the presence, location, use, operation, installation, maintenance, replacement or removal of such use, or by the acts or omissions of the employees for agents of the Event for such use, except to the extent such damage is caused, in whole or in part, by the negligent acts or omissions of the Township, its employees or agents.
9.The Applicant shall not allow any infrastructure to be placed across roads or within road rights-of-way.
10.The Applicant shall not allow overnight use of trailers for temporary living quarters on any of the identified parking lots.
11.The Applicant shall secure property owner permission for use of all properties shown the site plan.
12.The Applicant and participants are responsible for applying for any other permits or licenses, complying with federal or state law or meeting any other requirements of the Township's Codes and Ordinances that may be applicable.
13.The Applicant shall obtain all required permits, licenses, security deposits, fees, insurance policies or any other conditions of this Permit, no later than ten (10) days prior to the Event; except that the police services deposit shall be made on or before April 29, 2022, in compliance with the requirements of Conditions 1, 2 and 3 listed above.
14.The Applicant shall maintain the liability insurance submitted with this Application throughout the duration of the Event.
15.The Applicant shall be responsible to the Township for damages sustained to Township property caused by participants in the Event. Such additional costs and expenses shall be paid to the Township by the Applicant within five (5) days of receipt of a bill.
16.The Applicant shall be responsible for the cost of any Support Services required, at the sole discretion of the Township, to address specific unanticipated circumstances occurring at the Event related to larger crowd numbers than projected by the Applicant, or where the nature of the Event is not consistent with this Permit. Such additional costs and expenses shall be paid to the Township by the Applicant within five (5) days of receipt of a bill.
17.The Applicant shall immediately cease and desist all activities and remove all external elements, if the Township determines that the:
a.Activities are detrimental to the health, safety, and general welfare of the Township or its residents.
b.Applicant has violated one (1) or more conditions of this Permit.

**Permit Fee Due:**      **$0.00**

X *Sharon Norris*
**Authorized Official**

*3-22-22*
**Date**



*SE 2022-01*

05/09/2018

**EASTTOWN TOWNSHIP**
**CHESTER COUNTY, PENNSYLVANIA**

**APPLICATION FOR**
**SPECIAL EVENT**

566 Beaumont Road
Devon, PA 19333
610-687-3000
610-687-9666 (Fax)

| PART 1 – INSTRUCTIONS |
|---|

- Review Chapter 382 Special Events of the Code of the Township of Easttown, available online at www.easttown.org or for purchase and/or review at the Township Building.
- At least thirty (30) calendar days prior to the desired Event date, submit four (4) sets of this Application with 4 copies all supporting documentation including, but not limited to:
    - Site plan/map of the entire area where the Event will take place. This site plan/map shall include locations of all Event activities, structures, and infrastructure proposed to be located.
    - Schedule of Event activities by time, date, and location.
    - Certificate of Insurance for commercial general liability with combined single limits of liability for bodily injury and property damage of not less than $1,000,000.00 for each occurrence and a general aggregate of 3,000,000. The Certificate of Insurance must name Easttown Township, its officers, and employees as additional insured.
- Should the Township determine that its Support Services are required for the Event, estimated costs will be provided to the Application at the time this Permit is issued. No later than ten (10) calendar days prior to the Event date, the Applicant shall secure in the form of a cash escrow or bond with the Township the Support Services costs according to the following schedule:
    - Estimated cost less than $2,500 secured at 25%
    - Estimated cost between $2,501 and $7,500 secured at 50%
    - Estimated cost more than $7,501 secured at 100%
- Please note there is no Administrative Fee for this Application.

| PART 2 – SPECIAL EVENT NAME |
|---|

Event Name:

Devon Horse Show and Country Fair

| PART 3 – SPECIAL EVENT ORGANIZATION INFORMATION (entity responsible for all costs) |
|---|

Applicant / Permit Holder Name:

Devon Horse Show and Country Fair

Organization Name (if different from above):

Devon Horse Show and Country Fair, Inc.

Applicant / Permit Holder  Street Address, City, State, and Zip Code (if P.O. Box, include street address also):

23 Dorset Road, Devon, PA 19333

| Telephone Number: 610-964-0550 | Email Address: |
|---|---|
| Fax Number: | wayne@devonhorseshow.org |

05/09/2018

## PART 4 – SPECIAL EVENT SAFETY/EMERGENCY CONTACT INFORMATION (must be at event)

| | |
|---|---|
| Primary Safety/Emergency Contact Name:<br>Peter Doubleday | Mobile Phone Number:<br>610-745-6447 |
| Secondary Safety/Emergency Contact Name:<br>David Distler | Mobile Phone Number:<br>203-803-0844 |
| Tertiary Safety/Emergency Contact Name:<br>Wayne W. Grafton | Mobile Phone Number:<br>610-806-2280 |
| Quaternary Safety/Emergency Contact Name:<br>Beth Wright | Mobile Phone Number:<br>610-745-4434 |
| Quinary Safety/Emergency Contact Name: | Mobile Phone Number: |

## PART 5 – SPECIAL EVENT DETAILS

Event Description:

Equestrian event w/family entertainment

Event Location(s):

23 Dorset Road, Devon, PA 19333

Event Start Time and Date (including set up):

5/26/2022 8:00am

Event End Time and Date (including breakdown):

6/5/2022 3:00PM

Estimated Attendance:

120,000

## PART 6 – STREET CLOSURES (complete if applicable and as shown on site plan/map)

| Street Name: | Location (from/to): | Time (from/to): |
|---|---|---|
| Street Name: | Location (from/to): | Time (from/to): |
| Street Name: | Location (from/to): | Time (from/to): |
| Street Name: | Location (from/to): | Time (from/to): |
| Street Name: | Location (from/to): | Time (from/to): |
| Street Name: | Location (from/to): | Time (from/to): |

05/09/2018

## PART 7 – LIVE MUSIC/AMPLIFIED SOUND DETAILS (complete if applicable)

Description of Music/Amplified Sound:

Guitar - General Background Music

Hours and Date(s) of Music/Amplified Sound:

8:00pm - 10:30/11:00pm

Sound Level at Property Lines:

## PART 8 – STRUCTURE DETAILS (complete as applicable and as shown on site plan/map)

| Type | Size | Quantity | Square Feet |
|---|---|---|---|
| Barns | | 27 | |
| Tent - Food Area | 30 x 70 | 1 | 2,100 sq ft |
| Tents - Vendors | 10 x 10 | 5 | 100 sq ft |
| Tent - East4 single level | 32 x 74 | 1 | 2,368 sq ft |
| | | | |
| | | | |
| | | | |

## PART 9 – VENDOR DETAILS

Describe the Type of Vendors Participating:

Retail and food vendors.
Pepsi, Mr. Ice, Berwyn Beer & Soda, Clothing, Jewelry, Horse Related Supplies

## PART 10 – LIABILITY INSURANCE

Insurance Provider Name:

Great American Insurance Co.

Insurance Provider Street Address, City, State, and Zip Code (if P.O. Box, include street address also):

70 Essex Road, Westbrook, CT 06498

Insurance Provider Agent Name:

Gowrie Bardens & Brett Inc.,   Jessicag@gowrie.com   860-399-3635

Insurance Provider Agent Street Address, City, State, and Zip Code (if P.O. Box, include street address also):

Insurance Policy Number:

APK 171601813

05/09/2018

**PART 11 – CERTIFICATION**

[X] I am an officer or official of the Organization applying for the Special Event Permit, or
[ ] have the authority to make this Application on behalf of the Organization applying for the Special Event Permit (attach delegation of signatory authority),

Acknowledge that the information provided in this Application, including any plans and specifications, is true and correct to the best of my knowledge and belief.

| Wayne W. Grafton | Chairman/CEO |
|---|---|
| Name (type or print legibly) | Official Title |
| 23 Dorset Road | Devon, PA 19333 |
| Street Address | City, State, Zip |
| 610-964-0550 | wayne@devonhorseshow.org |
| Phone Number | E-Mail Address |
| *[signature]* | January 18, 2022 |
| Signature | Date |

**PART 12 – TOWNSHIP ACTION**

| Estimated Support Services Cost: | $ *SEE ATTACHED PERMIT* |
|---|---|
| Required Security 10 Days Prior to Event: | $ *SEE ATTACHED PERMIT* |
| | [ ] Cash Escrow   [ ] Bond |
| | Received by: _____   Date: _____ |

| Application Status: | [X] Approved   [ ] Disapproved | Permit Number: SE 2022-01 | Township Manager's Signature: *Shawn Norris* *Acting Assistant To* | Date: 3-22-2022 |
|---|---|---|---|---|

The following standard conditions shall apply to the Special Event Permit upon issuance by the Township:
- The Applicant and participants are responsible for applying for any other permits or licenses, complying with federal or state law or meeting any other requirements of the Township's Codes and Ordinances that may be applicable.
- Liability insurance as submitted with this Application shall be maintained throughout the duration for the Event.
- All required permits, licenses, security deposits, fees, insurance policies or any other conditions of the approval, so indicated on this Permit shall be obtained no later than ten (10) days prior to the Event.
- The Applicant shall be responsible to the Township for damages sustained to Township property caused by participants in the Event. Such additional costs and expenses shall be paid to the Township by the Applicant sponsor within five (5) days of receipt of a bill.
- The Applicant shall be responsible to the Township for damages sustained to Township property caused by participants in the Event.
- The Applicant shall be responsible for the cost of any Support Services required, at the sole discretion of the Township, to address specific unanticipated circumstances occurring at the Event related to larger crowd numbers than projected by the Applicant; or where the nature of the Event is not consistent with this Permit. Such additional costs and expenses shall be paid to the Township by the Applicant within five (5) days of receipt of a bill.

05/09/2018

**PART 13 – SPECIAL CONDITIONS OF PERMIT**



**TENTATIVE TIME SCHEDULE**
**Thursday, May 26, 2022**
**Junior Weekend**

**DIXON OVAL - 8:00 AM**

| | |
|---|---|
| 83 | WIHS Equitation Classic - Jumper Phase |
| 84 | US Equestrian Talent Search 3* |
| 201 | Jr. Jumper - Table II, sec. 1 |

**WHEELER RING - 7:30 AM**

| | |
|---|---|
| 301 | Hunter Pony Foals |
| 302 | Hunter Pony Yearling Colts/Geldings |
| 303 | Hunter Pony Yearlings Fillies |
| 304 | Hunter Pony 2 Yr. Olds Colts/Geldings |
| 305 | Hunter Pony 2 Yr. Olds Fillies |
| 306 | Hunter Pony 3 Yr. Olds Stallions/Geldings |
| 307 | Hunter Pony 3 Yr. Olds Mares |
| 308 | Hunter Pony Produce of Dam |
| 309 | Hunter Pony Get of Sire |
| 310 | Hunter Pony Ch., Colts/Stallions/Geldings |
| 311 | Hunter Pony Ch., Filly or Mare |
| 312 | Best Young Pony |
| 313 | PHBHA Trophy |
| 314 | Leading Pony Breeder Handler Award |
| 315 | Young Pony Hunter U/S |
| 81 | Dover Saddlery US Equestrian Medal |

**TENTATIVE TIME SCHEDULE**
**Friday, May 27, 2022**
**Junior Weekend**

**DIXON OVAL - 8:00 AM**

| | |
|---|---|
| 82 | ASPCA Maclay |
| 85 | R.W. "Ronnie" Mutch Equitation Ch. |
| 42 | Small Jr. Hunter, 16 & 17 |
| 32 | Small Jr. Hunter, 15 & under |
| 62 | Large Jr. Hunter, 16 & 17 |
| 52 | Large Jr. Hunter, 15 & under |
| 51 | Large Jr. Hunter U/S, 15 & under |
| 61 | Large Jr. Hunter U/S, 16 & 17 |
| 31 | Small Jr. Hunter U/S, 15 & under |
| 41 | Small Jr. Hunter U/S, 16 & 17 |

**WHEELER RING - 8:00 AM**

| | |
|---|---|
| 3 | Small Pony Hunter - Conformation |
| 4 | Small Pony Hunter |
| 13 | Medium Pony Hunter - Conformation |
| 14 | Medium Pony Hunter |
| 23 | Large Pony Hunter - Conformation |
| 24 | Large Pony Hunter |
| 2 | Small Pony Hunter U/S |
| 12 | Medium Pony Hunter U/S |
| 22 | Large Pony Hunter U/S |

**DIXON OVAL - 8:00 PM**

| | |
|---|---|
| 202 | Jr. Jumpers - Table II, 2(a) |

20

**TENTATIVE TIME SCHEDULE**
Saturday, May 28, 2022
Junior Weekend

**DIXON OVAL - 8:00 AM**
43  Small Jr. Hunter Handy, 16 & 17
33  Small Jr. Hunter Handy, 15 & under
63  Large Jr. Hunter Handy, 16 & 17
53  Large Jr. Hunter Handy, 15 & under
221  Children's Jumper - Table II, 2(b)
**- - - not before 12:45 PM**
71  Lead Line, 3 years & under
72  Lead Line, 4 & 5 years
44  Small Jr. Hunter Stake, 16 & 17
34  Small Jr. Hunter Stake, 15 & under
64  Large Jr. Hunter Stake, 16 & 17
54  Large Jr. Hunter Stake, 15 & under
45  Small Jr. Hunter Ch., 16 & 17
35  Small Jr. Hunter Ch., 15 & under
65  Large Jr. Hunter Ch., 16 & 17
55  Large Jr. Hunter Ch., 15 & under
66  Overall Small Jr. Hunter Ch.
67  Overall Large Jr. Hunter Ch.
68  Devon Grand Jr. Hunter Ch.
69  Angelo Award
78  Best Child Rider on a Horse Award

**WHEELER RING - 8:00 AM**
5  Small Pony Hunter Handy
6  Small Pony Hunter Stake
7  Small Pony Hunter Ch.
15  Medium Pony Hunter Handy
16  Medium Pony Hunter Stake
17  Medium Pony Hunter Ch.
25  Large Pony Hunter Handy
26  Large Pony Hunter Stake
27  Large Pony Hunter Ch.
28  Devon Grand Pony Hunter Ch.
77  Best Child Rider on a Pony Award
29  Pony Sportsmanship Award
73  Pony Hunt Teams

**DIXON OVAL - 7:00 PM**
203  Jr. Jumper SJHOF Classic - Table II, 2(a)
204  Jr. Jumper Ch.
205  Leading Jr. Jumper Rider Award
206  Jr. Jumper Style of Riding Award
*Exhibition*
74  Horse Hunt Teams
76  Parent & Child Class
75  Family Class

**TENTATIVE TIME SCHEDULE**
Sunday, May 29, 2022
Junior Weekend

**DIXON OVAL - 11:00 AM**
222  Children's Jumper - Table II, 2(b)

**DIXON OVAL - 1:00 PM**
   *Carriage Pleasure Drive - final judging*
   Horse Division
501  Single Harness, Two Wheel Vehicles
502  Single Harness, Four Wheel Vehicles
503  Double Harness - Pairs - Tandems
504  Unicorns and Four-in-Hands
   Pony Division
505  Single Harness, Two Wheel Vehicles
506  Single Harness, Four Wheel Vehicles
507  Double Harness - Pairs - Tandems
508  Unicorns and Four-In-Hands
509  Light Commercial & Farmer's Division
510  Championship Drive Off
511  Pleasure Drive Amateur Whip Award

*Exhibition*
223  NAL Children's Jumper Classic
      - Table II, 2(a)
224  Children's Jumper Ch.
231  Adult Jumper - Table II, 2(b)

**DIXON OVAL - 5:30 PM**
Eventing course build

**DIXON OVAL - 6:15 PM**
Course walk and horse acclimation

**DIXON OVAL - 7:00 PM**
Devon Arena Eventing

21

**TENTATIVE TIME SCHEDULE**
Monday, May 30, 2022
Memorial Day

**DIXON OVAL - 8:00 AM**

| | |
|---|---|
| 101 | Model Green Conformation Hunter |
| 122 | Green Hunter 3'6" |
| 123 | Green Hunter 3'6" |
| 103 | Green Conformation Hunter |
| 104 | Green Conformation Hunter |
| 132 | Green Hunter 3'9" |
| 133 | Green Hunter 3'9" |
| 232 | Adult Jumper - Table II, 1 |

Arena transition

*Exhibition*

| | |
|---|---|
| 462 | Pair Horses - Pleasure Turnout |
| 463 | Pair Horses Scurry Driving |
| 464 | Pair Horses Ch. |

**WHEELER RING**

following Class 133

| | |
|---|---|
| 121 | Green Hunter 3'6" U/S |
| 102 | Green Conformation U/S |
| 131 | Green Hunter 3'9" U/S |

**DIXON OVAL - 7:00 PM**

| | |
|---|---|
| 233 | NAL Adult Jumper Classic - Table II, 2(a) |
| 234 | Adult Jumper Ch. |
| 465 | Single/Pair Pony - Pleasure Turnout |
| 451 | Coaching - Appointments |
| 466 | Single/Pair Pony - Scurry |
| 467 | Single/Pair Pony Ch. |

**TENTATIVE TIME SCHEDULE**
Tuesday, May 31, 2022

**DIXON OVAL - 8:00 AM**

| | |
|---|---|
| 124 | Green Hunter 3'6" Handy |
| 125 | Green Hunter 3'6" Stake |
| 126 | Green Hunter 3'6" Ch. |
| 105 | Green Conformation Hunter Handy |
| 106 | Green Conformation Hunter Stake |
| 107 | Green Conformation Hunter Ch. |
| 134 | Green Hunter 3'9" Handy |
| 135 | Green Hunter 3'9" Stake |
| 136 | Green Hunter 3'9" Ch. |
| 111 | Model High Perf. Conformation Hunter |
| 114 | High Perf. Conformation Hunter |
| 115 | High Perf. Conformation Hunter |
| 142 | High Perf. Working Hunter |
| 143 | High Perf. Working Hunter |

**WHEELER RING - 9:00 AM**

| | |
|---|---|
| 261 | Five Yr. Young Jumper - Table II |
| 263 | Six Yr. Young Jumper - Table II, 2(b) |
| 265 | Seven Yr. Young Jumper - II, 2(b) |

**DIXON OVAL - 7:00 PM**

| | |
|---|---|
| 240 | Jet Run Devon Welcome Stake |
| | FEI 238.2.2 |
| 468 | Single Horse Pleasure Driving Turnout |
| 452 | Coaching Pleasure |
| 457 | Coach Horn Competition |
| 469 | Single Horse Scurry |
| 470 | Single Horse Ch. |

22

**TENTATIVE TIME SCHEDULE**
Wednesday, June 1, 2022

**DIXON OVAL - 8:00 AM**

| | |
|---|---|
| 113 | High Perf. Conformation Hunter Handy |
| 116 | High Perf. Conformation Hunter Stake |
| 112 | High Perf. Conformation Hunter U/S |
| 117 | High Perf. Conformation Hunter Ch. |
| 144 | High Perf. Working Hunter Handy |
| 145 | High Perf. Working Hunter Stake |
| 141 | High Perf. Working Hunter U/S |
| 146 | High Perf. Working Hunter Ch. |
| 147 | High Perf. Working Hunter |
| | Leading Lady Rider Award |
| 148 | Leading Mare Award |
| 149 | Devon Grand Hunter Ch. |
| 150 | Devon Leading Hunter Rider |
| 100 | Leading Groom Award |

**DIXON OVAL - 12:00 AM**

| | |
|---|---|
| 189 | Ladies Side Saddle Under Saddle |
| 190 | Ladies Side Saddle Hunter Hack |
| 188 | Ladies Side Saddle Over Fences |
| 191 | Ladies Side Saddle Ch. |

**DIXON OVAL - 1:30 PM**

| | |
|---|---|
| 372 | Junior/Novice Fine Harness |
| 406 | Open Park Pleasure |
| 415 | Limit Hackney Pony |
| 365 | Junior/Novice Five Gaited |
| 460 | Open Unicorn |

| | |
|---|---|
| 405 | Junior Park Pleasure |
| 262 | Five Yr. Young Jmpr - Table II |
| 264 | Six Yr. Young Jmpr - Table II, 2(b) |
| 266 | Seven Yr. Young Jmpr - Table II, 2(b) |

**DIXON OVAL - 7:00 PM**

| | |
|---|---|
| 241 | Devon International Speed Stake |
| | FEI 238.2.1 |
| 453 | Coaching Timed Obstacle |
| 377 | Open Fine Harness |
| 386 | Three Gaited Show Pleasure - Limit |
| 414 | Hackney Pony - Open |
| 356 | Junior/Novice Three Gaited |
| 445 | English Pleasure Driving - Open |
| 391 | Western Country Pleasure |
| 431 | Roadster Horse - Open |
| 374 | Fine Harness - Open |
| 401 | Park Horse - Amateur |
| 361 | Five Gaited Saddle Horse - Lady to ride |
| 436 | Roadster Pony - Open |
| 352 | Three Gaited - Lady to Ride |
| 357 | Three Gaited - Open |
| 381 | Saddlebred Show Pleasure Driving |
| 425 | Harness Pony - Open |
| 367 | Five Gaited - Open |

23

## TENTATIVE TIME SCHEDULE
### Thursday, June 2, 2022

**DIXON OVAL - 8:00 AM**
242 Main Line Challenge FEI 274.5.2
**10:00 AM** Course Build
**11:00 AM** Course walk and horse acclimation
**12:00 PM**
180 $25,000 USHJA International
Hunter Derby

**DIXON OVAL - 4:30 PM**
**Devon at Sunset**
447 English Pleasure– Hunt Seat– Open
411 Hackney Horse - Open
396 Country Pleasure Driving
360 Five Gaited - Junior Exhibitor
434 Roadster Pony - Amateur
385 Three Gaited Show Pleasure - Adult
454 Coaching - Performance
418 Hackney Pony to a Gig

408 English Pleasure - Open
373 Fine Harness - Amateur
413 Hackney Pony - Amateur
403 Park Horse - Open
394 Country Pleasure - Adult
353 Three Gaited - Amateur
432 Roadster Horse - Open
481 Park Horse - Junior Exhibitor
424 Hackney/Harness Pony - Amateur
363 Five Gaited - Amateur

**DIXON OVAL - 8:00 PM**
Show Jumping Hall of Fame Induction
Ceremony & Opening Ceremonies
**DIXON OVAL - 8:30 PM**
243 Sapphire Grand Prix of Devon FEI 238.2.2
244 McDevitt Style Award

24

**TENTATIVE TIME SCHEDULE**
Friday, June 3, 2022

**DIXON OVAL - 7:30 AM**

211 Amateur Jumper - Table II, 2(b)
152 AO Hunter 18-35
153 AO Hunter 18-35
158 AO Hunter 36+
159 AO Hunter 36+
157 AO Hunter 36+ U/S
151 AO Hunter 18-35 U/S
398 ASB Hunter Country Pleasure
383 Three Gaited Pleasure - Jr. Exhibitor
435 Roadster Pony - Limit
409 English Pleasure - Ladies
400 Three Gaited Country Pleasure - Local
351 Three Gaited - Jr. Exhibitor
421 Hackney/Harness Pony Pleasure Driving
388 Five Gaited Pleasure
393 Country Pleasure - Jr. Exhibitor
426 Harness Pony - Limit
390 Three Gaited English Show Pleasure -
    Local
439 Roadster Pony U/S
212 Amateur Jumper - Table II, sec 1

**WHEELER RING - 8:00 AM**

166 AO Hunter 3'3" 18-35
165 AO Hunter 3'3" 18-35 U/S
171 AO Hunter 3'3" 36+
170 AO Hunter 3'3" 36+ U/S
182 Local Hunter
183 Local Hunter

**DIXON OVAL - 7:00 PM**

245 Devon Speed Derby FEI Table C
455 Coaching - Timed Obstacle
458 Coach Horn Competition
456 Coaching Ch.
378 Open Fine Harness Ch.
402 Park Horse Stake - Amateur
446 English Pleasure Driving - Open Ch.
392 Western Country Pleasure Ch.
375 Fine Harness Ch.
417 Hackney Pony Ch. - Amateur
358 Three Gaited Stake
428 Hackney/Harness Pony Ch. - Amateur
382 Saddlebred Show Pleasure Driving Ch.
437 Roadster Pony Ch.
368 Five Gaited Stake

25

**TENTATIVE TIME SCHEDULE**
Saturday, June 4, 2022

**DIXON OVAL - 8:00 AM**

154  AO Hunter 18 - 35 Handy
155  AO Hunter 18 - 35 Stake
156  AO Hunter 18 - 35 Ch.
160  AO Hunter 36+ Handy
161  AO Hunter 36+ Stake
162  AO Hunter 36+ Ch.
163  Devon Grand AO Hunter Ch.
164  Devon Leading AO Hunter Rider
176  Sambalino Award
399  ASB Hunter Country Pleasure Ch.
423  Hackney/Harness Pony Pleas. Driving Ch.
442  Jr. Exhibitor Country Pleasure Ch.
389  Five Gaited Pleasure Ch.
355  Three Gaited Stake - Junior Exhibitor
438  Roadster Pony Ch. - Amateur
397  Country Pleasure Driving Ch.
407  Park Pleasure Stake
384  Jr. Exhibitor Pleasure Ch.
412  Hackney Horse Ch.
448  English Pleasure Hunt Seat– Open Ch.
440  Roadster Pony Under Saddle Ch.
213  Amateur Jumper
       SJHOF Classic -Table II, 2(a)
214  Amateur Jumper Championship
215  Amateur Jumper Leading Rider

**WHEELER RING - 8:30 AM**

172  AO Hunter 3'3" 36+ Handy
173  AO Hunter 3'3" 36+ Stake
174  AO Hunter 3'3" 36+ Ch.
167  AO Hunter 3'3" 18 - 35 Handy
168  AO Hunter 3'3" 18 - 35 Stake
169  AO Hunter 3'3" 18 - 35 Ch.
175  Grand AO Hunter Ch.
184  Local Hunter Stake
181  Local Hunter U/S
185  Local Hunter Ch.
186  Local Hunter Sportsmanship Award
187  Working Fox Hunter

**DIXON OVAL - 6:45 PM**

246  Open Jumper Stake FEI 238.2.2
247  Open Jumper Ch.
248  Leading Open Jumper Rider
249  Leading Lady Rider
410  English Pleasure Ch.
354  Three Gaited Stake - Amateur
416  Hackney Pony Ch.
395  Country Pleasure Ch.
404  Park Horse Stake
376  Fine Harness Ch. - Amateur
387  Three Gaited Show Pleasure Ch.
433  Roadster Horse Ch.
427  Hackney / Harness Pony Ch.
364  Five Gaited Stake - Amateur

**TENTATIVE TIME SCHEDULE**
Sunday, June 5, 2022

**DIXON OVAL - 8:00 AM**

283  PA Bred Yearling Colts/Geldings
284  PA Bred Yearling Fillies
285  PA Bred 2 Yr Old Colts/Geldings
286  PA Bred 2 Yr Old Fillies
287  PA Bred 3 Yr Old
289  Best PA Bred Horse
292  Leading PA Handler Award
271  Thoroughbred Yearling Colts/Geldings
272  Thoroughbred Yearling Fillies
273  Non-Thoroughbred Yearling Colts/Geldings
274  Non-Thoroughbred Yearling Fillies
275  Thoroughbred 2 Year Old Colts/Geldings
276  Thoroughbred 2 Year Old Fillies

277  Non-Thoroughbred 2 Yr Old Colts/Geldings
278  Non-Thoroughbred 2 Yr Old Fillies
279  Thoroughbred 3 Year Old
279A Best Thoroughbred
280  Non-Thoroughbred 3 Year Old
       Stallions & Geldings
281  Non-Thoroughbred 3 Year Old Mares
282  Mare Suitable to Produce
288  Best Yearling
290  Best Young Horse
291  Leading Handler Award
293  Amateur/Junior Handler

**NOT BEFORE 1:00 PM**

294  PA Registered Young Hunter U/S
295  Open Young Hunter U/S

26



COUNTY OF CHESTER
P E N N S Y L V A N I A

Find UPI Information

PARID: 5550300050000
UPN: 55-3J-50
Owner 1: DEVON HORSE SHOW
Owner 2: COUNTRY FAIR FOUNDATION
Mail Address 1: PO BOX 865
Mail Address 2: DEVON PA
Mail Address 3:
ZIP Code: 19333
Deed Book: 6445
Deed Page: 70
Deed Recorded Date: 3/29/2005
Legal Desc 1: WS DORSET RD
Legal Desc 2: 1.7 AC
Acres: 1.7
LUC: V-1-1
Lot Assessment: $ 117,570
Property Assessment: $ 0
Total Assessment: $ 117,570
Assessment Ratio: 12/31/2018
Property Address: 23 DORSET RD
Municipality: EASTTOWN
School District: Tredyffrin-Easttown

Map Created:
Tuesday, April 23, 2019

County of Chester

Limitations of Liability and Use.
County of Chester, Pennsylvania makes no claims to
the completeness, accuracy, or content of any data
contained herein, and makes no representation of any
kind, including, but not limited to, the warranties of
merchantability or fitness for a particular use, nor are
any such warranties to be implied or inferred with
respect to the information of this tabular or textual
data as delineated on the maps provided herein.
For acknowledgements please click the Disclaimer
Screens page listed at www.chesco.org/gis

Parking Areas

55-3J-52
11.8 AC

Dorset Rd

ADDITIONAL PARKING

ADDITIONAL PARKING

55-3J-50
1.7 AC

55-3J-51
0.672 AC

PARKING

PARKING
1.91 AC

55-3J-49
14.9 AC

Devon Blvd

55-3J-39
4.28 AC

1 inch = 100 feet
0   50   200 Feet

DEVON WILL BE USING TAX PARCEL # 55-3J-137 (OWNED BY DEVON) FOR ADDITIONAL EXHIBITOR PARKING.









# Exhibit E

## EASTTOWN TOWNSHIP
## RESOLUTION 2022-06

### RESOLUTION OF THE BOARD OF SUPERVISORS OF EASTTOWN TOWNSHIP PROVIDING AN UPDATE TO THE FEES NECESSARY FOR THE TOWNSHIP TO COVER ITS COSTS TO PROCESS TOWNSHIP PERMITS AND APPLICATIONS FOR THE BENEFIT OF PRIVATE PROPERTY OWNERS.

**WHEREAS**, from time to time it is necessary for the Township to review and revise its fee schedule to reflect the increased cost of conducting business; and

**WHEREAS**, the Board of Supervisors does hereby rescind Resolution Number 12.16D.02 pertaining to fees for zoning applications and appeals; Resolution 4-2-07 pertaining to fees for building permits, demolition permits, swimming pools, tennis courts, signs, heating, air conditioning, fuel tanks, plumbing permits, subdivision and land development applications, erosion control permits, sale of ordinances, and certifications; Resolution 12.19D.11 pertaining to quarterly rates for solid waste and recycling services, Resolution 12.19E.11 pertaining to fees for sanitary sewer rentals, and Resolution 02.07.11 pertaining to fees for sprinkler systems; and

**WHEREAS**, the Second Class Township Code, P.L. 350, No. 60, as amended, pursuant to Section 1506, provides for the adoption of regulations for the proper management of Township finances; and

**WHEREAS**, the Code of the Township of Easttown, as enacted and amended, pursuant to Section 160-6, provides for the Board of Supervisors to assess fees with respect to the administration and enforcement of its construction and building codes; and

**WHEREAS**, the Code of the Township of Easttown, as enacted and amended, pursuant to Section 212-6, provides for the Board of Supervisors to establish fees with respect to the firework displays; and

**WHEREAS**, the Code of the Township of Easttown, as enacted and amended, pursuant to Sections 220-3.04.C and 220-3.06, provides for the Board of Supervisors to establish fees with respect to the administration of a permit for any improvement within Floodplains; and

**WHEREAS**, the Code of the Township of Easttown, as enacted and amended, pursuant to Section 299-3, provides for the Board of Supervisors to establish a fee with respect to a permit application for the operation of a commercial parking lot; and

**WHEREAS**, the Code of the Township of Easttown, as enacted and amended, pursuant to Section 306-6, provides for the Board of Supervisors to establish a fee with respect to a permit application for park facilities rentals; and

**WHEREAS**, the Code of the Township of Easttown, as enacted and amended, pursuant to Section 313-2, provides for the Board of Supervisors to establish a fee with respect to licensing peddling and soliciting activities; and

**WHEREAS**, the Code of the Township of Easttown, as enacted and amended, pursuant to Section 313-9, provides for the Board of Supervisors to establish a fee with respect to licensing transient retail business; and

**WHEREAS**, the Code of the Township of Easttown, as enacted and amended, pursuant to Section 345-8, provides for the Board of Supervisors to require financial security in the amount equal to six months of the pumping costs with respect to wastewater holding tanks; and

**WHEREAS**, the Code of the Township of Easttown, as enacted and amended, pursuant to Section 345-21, provides for the Board of Supervisors to establish a fee schedule with respect to the administration on-lot sewage disposal systems; and

**WHEREAS**, the Code of the Township of Easttown, as enacted and amended, pursuant to Section 345-27, provides for the Board of Supervisors to establish fees with respect to a permit application for the construction or alteration of a public sewer or building sewer; and

**WHEREAS**, the Code of the Township of Easttown, as enacted and amended, pursuant to Section 377-15, provides for the Board of Supervisors to establish a fee with respect to a permit application for open burning; and

**WHEREAS**, the Code of the Township of Easttown, as enacted and amended, pursuant to Section 382-7, provides for the Board of Supervisors to establish an application fee, financial security, and reimbursement cost for support services with respect to a special or community event; and

**WHEREAS**, the Code of the Township of Easttown, as enacted and amended, pursuant to Sections 388-10 and 388-32, provides for the Board of Supervisors to establish fees and financial security with respect to the administration of a drainage permit; and

**WHEREAS**, the Code of the Township of Easttown, as enacted and amended, pursuant to Sections 395-2 and395-9, provides for the Board of Supervisors to establish a fee with respect to the administration of a permit for any improvement within or over a Township right-of-way; and

**WHEREAS**, the Code of the Township of Easttown, as enacted and amended, pursuant to Section 400-63.B, provides for the Board of Supervisors to establish a fee with respect to the dedication or reservation of land and provision for recreational facilities; and

**WHEREAS**, the Pennsylvanian Municipalities Planning Code, Act of 1968, P.L. 805, No. 247, as reenacted and amended, pursuant to Section 503.(1), provides for the charge of review fees including the necessary and reasonable charges by the township's professional consultants or engineer for review and report with respect to the administration of Chapter 400 Subdivision and Land Development of the Code of the Township of Easttown; and

**WHEREA**S, the Pennsylvanian Municipalities Planning Code, Act of 1968, P.L. 805, No. 247, as reenacted and amended, pursuant to Section 617.3(e), provides for the Board of Supervisors to prescribe reasonable fees with respect to the administration of Chapter 455 Zoning of the Code of the Township of Easttown; and

**WHEREAS**, the Pennsylvanian Municipalities Planning Code, Act of 1968, P.L. 805, No. 247, as reenacted and amended, pursuant to Section 908.(1.1), provides for the Board of Supervisors to prescribe reasonable fees with respect to hearings before the Zoning Hearing Board; and

**WHEREAS**, the Pennsylvanian Municipalities Planning Code, Act of 1968, P.L. 805, No. 247, as reenacted and amended, pursuant to Section 909.1.(b), vests jurisdiction in the Board of Supervisors for all applications for conditional use, curative amendments, amendments to land use ordinances, special encroachment permits pursuant to Section 405 and 406, appeals from Zoning Officer or Township Engineer determinations in the administration of the provisions of any land use ordinance referable to sedimentation and erosion control and stormwater management (Drainage) under Chapter 400 Subdivision and Land Development of the Code of the Township of Easttown, and the Board of Supervisors are authorized to establish reasonable fees for such applications; and

**NOW, THEREFORE, BE IT AND IT IS RESOLVED**, that the Board of Supervisors of Easttown Township hereby authorizes and establishes the following Schedule of Financial Securities and Fees to be paid by each applicant or appellant filing an application(s) or appeal(s) to the Township Treasurer upon submission, as follows:

**Section 1506 – Second Class Township Code**

1. Code of the Township of Easttown:  $150.00

2. Comprehensive Plan:  $25.00

3. Certification Fee (per parcel):
   - Sewer Payment:  $30.00
   - Trash Payment:  $30.00

4. Police Accident Report Fee (per incident):  $15.00

31. Open Burning Permit (per event): $75.00

## Chapter 382 - Special Event

32. Special Event Permit: Police and Public Works staff support the Township special events and a deposit of 50% of their estimated wages to support the event is due 10 days prior to the event. Total fees will be reconciled after the event ends based upon actual Police and Public Works staff wage costs.

33. Banner Permit (per event): $250.00

## Chapter 388 - Stormwater Management

34. Drainage Permit: $75.00 plus Township Consultants Fees invoiced per fee schedule rates in Appendix A.

35. Drainage Permit Escrow:
   - $3,500.00 is to be paid with the application for projects designed with the non-simplified approach. The Escrow shall be replenished to the above listed amount when its balance falls below $1,000.00.
   - $1,750.00 is to be paid with the application for projects designed with the simplified approach. The Escrow shall be replenished to the above listed amount when its balance falls below $1,000.00.

## Chapter 395 - Streets and Sidewalks

36. Road Occupancy Permit: In accordance with Pennsylvania Department of Transportation Schedule of Fees for Highway Occupancy Permits plus restoration charges determined by the Public Works Director and Township Consultants Fees invoiced per fee schedule rates in Appendix A.

## Chapter 400 - Subdivision and Land Development

37. Subdivision and/or Land Development Sketch Plan Fee:
   - Without Township Engineer Review: $100.00
   - With Requested Consultant Reviews: $100.00 plus applicable Township Engineer Consultant Fees invoiced per fee schedule rates in Appendix A.

38. Subdivision and/or Land Development Preliminary Plan Fee: $600.00 plus applicable Township Consultants Fees invoiced per fee schedule rates in Appendix A.

46. Board of Supervisors Application Fees:
   - Curative Amendment:  $2,000.00 plus applicable Township Consultants Fees invoiced per fee schedule rates in Appendix A.
   - Zoning Amendment:  $2,000.00 plus applicable Township Consultants Fees invoiced per fee schedule rates in Appendix A.

   - Conditional Use:  $800.00 first hearing, $400.00 for each additional hearing plus applicable Township Consultants Fees invoiced per fee schedule rates in Appendix A.
   - Determination Appeal:  $2,000.00 plus applicable Township Consultants Fees invoiced per fee schedule rates in Appendix A.

**DULY ADOPTED AS A RESOLUTION** this **3rd** day of **January**, 2022 by the Board of Supervisors of Easttown Township, Chester County, Pennsylvania, in a lawful session duly assembled.

<div style="margin-left:40%">

**EASTTOWN TOWNSHIP**
**BOARD OF SUPERVISORS**

*/s/ Beth D'Antonio*_____
Chair

*/s/ Michael Wacey*_____
Vice Chair

*/s/ Alex Bosco*_____
Member

*/s/ Erik Unger*_____
Member

*/s/ Betsy Fadem*_____
Member

</div>

**ATTEST**

*/s/ Eugene C. Briggs, Jr.*_____
Township Manager/Secretary

**Appendix B**

**Rates of Township Staff Service**

Rates for provision of staff services shall be based on available personnel and current hourly equivalents connected to labor or employment agreements or pay scales in place at the time of the provision of such services.

# Exhibit F

# COLLECTIVE BARGAINING AGREEMENT



# Easttown Township Police Department and Easttown Township

# January 1, 2007 through December 31, 2011

# TABLE OF CONTENTS

ISSUE:                                                  PAGE
Preface                                                 3
General                                                 3
Notice of New Work Rules                                4
Leave for Association Representatives                    5
Grievance Procedure                                     6, 7
Education and Training                                  8
Hours of Work                                           9
Family Leave                                            9
Personal Days                                           9
Bereavement                                             9
D.R.O.P. Program                                        10,11,12
Secondary Employment                                    12,13,14,15
Cleaning and Maintenance of Uniforms                    16
Wages                                                   17
Longevity                                               18
Compensation Calculations                               19
Overtime                                                20
Special Details                                         21
Assignment of Special Details                           21
Court                                                   22
Jury Duty                                               23
Out of Rank Pay                                         23
Holidays                                                24
Rate of Pay for Holidays                                25,26
Vacation                                                27
Sick Leave                                              28
Payment to Beneficiaries                                29
Medical & Dental, Prescription                          30,31
Physical Fitness                                        32
Income Protection                                       33
Liability Insurance                                     34
Life Insurance                                          34
Shift Differential                                      34
Insurance & Pension with Signatures                     35

# PREFACE

On December 10, 1973, Easttown Township and members of the Easttown Township Police Department first entered into an Agreement respecting, among other things, their employment, compensation and benefits.  This Agreement took effect January 1, 1974, and such agreement has been amended from time to time thereafter.

On January 1, 1996, such Agreement was again revised and extended by mutual agreement, superseding and replacing as of the effective date hereof, all prior agreement with respect to the subject hereof, for the period of fiscal years beginning January 1, 2007 and ending December 31, 2011.

Now therefore, both parties signify on their signatures that they intend to be bound by the terms of this Agreement as detailed on the following pages.

# GENERAL

A. This Agreement is between the Township of Easttown (heinafter referred to as the Township) and the Easttown Township Police Association (heinafter referred to as the Association) for the purpose of setting forth the mutual understanding of the parties as to wages, hours and other conditions of employment.

B. The Township recognizes the Association as the sole and exclusive bargaining representative for all Police Officers of the Easttown Township Police Department, excluding the Lieutenant, and Chief of Police, for the purpose of representation and collective bargaining with regard to matters pertaining to wages, hours and conditions of employment.

3

# NOTICE OF NEW WORK RULES

A.  The township agrees to furnish the Association with a written notice of the Township's intention to make changes in contractual issues that would affect the working conditions of employees.

B.  If the Association does not respond within seven (7) working days of the date of receipt of such written notice, The Township may assume the Association does not wish to meet and confer on the proposed changes. Should the Association respond within seven (7) working days from the receipt of such written notice, the Township agrees to meet and confer with the Association in order to freely exchange information, opinions and proposals relating specifically to the proposed changes prior to their enactment.

C.  Unless cost prohibitive, and upon request, the Township shall provide the Association with, or access to, available resource materials, studies and data relating to the merits of the proposed changes prior to said meeting with the Township.  However, such materials shall remain the property of the Township until such time as the Township may choose to relinquish its rights thereto.

Work rule changes referred to in paragraph "A", that are emergencies, defined as an unanticipated event that requires immediate action, may be issued without prior notification to the Association.  However, the work rule changes will be discussed with the Association when practical.

4

# LEAVE FOR ASSOCIATION REPRESENTATIVES

A.  Members of the bargaining unit selected to serve as authorized representatives of the Association shall be certified in writing to the Township. Each representative will be expected to perform their duties as representatives of the Association on their own time. However, it is recognized that from time to time it will be necessary for Association activities to be carried on during working hours.

B.  Where such activities are necessary and reasonable to be performed during working hours, they may be done without loss of pay to the representative involved, provided the representative notifies the Chief of Police in writing, prior to taking time from duty to engage in Association business that exceeds one hour.

C.  The time expended by representatives of the Association to perform Association business shall not exceed eighty (80) hours in any calendar year. This time may be refused if this duty interferes with the reasonable staffing needs of the Township. Any costs incurred for seminars, food, lodging and travel expenses of the Association representative, who is attending to Association business, shall be borne by the individual or the Association and no cost will be borne by the Township for these activities.

D.  The representative who participates in these activities shall be paid only for time in which they are actually scheduled to work. The time exceeding the regular scheduled work time will not be reimbursed by the Township. Only one representative may attend any meeting while being reimbursed for regularly scheduled working time.

5

# GRIEVANCE PROCEDURE

The parties agree to use the following orderly and fair grievance procedure to resolve all grievances, which are defined as a dispute over the interpretation or application of a specific provision of this Agreement, all disciplinary matters and Heart and Lung Act claims:

**First Step:**  All grievances must be submitted to the Chief of Police in writing within ten working days of the occurrence.  The grievance shall state the Article alleged to have been violated and the specific relief requested.  The Chief of Police shall have up to five working days from the date the grievance is received to answer in writing explaining the Chief's decision.  If the Chief of Police and the grievant or union cannot resolve the matter, the grievance may be processed to the second step.

**Second Step:**  The grievant or union shall have up to ten working days from the receipt of the answer to STEP ONE, to request that the Township Manager review the matter.  The Township Manager shall have up to ten working days from the date the grievance is received to answer in writing explaining the decision.  If the Township Manager and the grievant or union are unable to resolve the matter, it may be referred to the Third Step.

**Third Step:**  The grievant or union shall have up to ten working days from the answer of the Township Manager to submit the matter to Step Three, which is the Board of Supervisors or their designee.  The Board of Supervisors or their designee shall answer the grievance in writing explaining their decision within ten working days after the Board's next regularly scheduled meeting.

**Fourth Step:**  The union may submit a grievance to impartial arbitrator no later than ten working days after the answer of the Board of Supervisors.  Arbitration shall be under the Voluntary Labor Arbitration Rules of the American Arbitration Association.  Grievance meetings scheduled by the Township during working hours shall be without loss of pay.  The Township reserves the right to schedule meetings at other than regular working hours.  Bargaining unit members shall not be compensated for time spent at arbitration hearings.

The decision of the Arbitrator shall be final and binding upon the parties.  The Arbitrator will not have the power to add to, modify, vary or change the collective bargaining agreement in any manner.  Arbitration decisions shall be rendered within thirty days after the conclusion of hearing or argument if it is submitted after the hearing date.

Expenses of the arbitration shall be borne equally by the Township and the Association. Each party shall bear the costs of presenting it's own case. If either party desires a verbatim record of the proceedings, it may cause such record to be taken provided it pays for the record and makes a copy available without charge to the other party and the arbitrator.

The failure to appeal a grievance in a timely manner shall constitute a waiver of the right to take further action on the grievance. The failure of the Township to answer the grievance in a timely manner will permit the union to appeal the grievance to the next step. For purposes of this article, "working days" shall be defined as Monday through Friday excluding holidays. Any time limit stated in this Article may be extended by mutual agreement of the parties.

# EDUCATION AND TRAINING

A.   The Township will reimburse Officers for tuition and other related cost for attendance at training facilities, or in the pursuit of a degree in Criminal Justice, or other curriculum that would increase knowledge of the officer as it relates to serving the department.  Electives and courses required by the institution for the completion of a degree will be considered as part of the curriculum and cost for these courses will be reimbursed by the Township.

B.   Tuition reimbursement will be limited to the current tuition costs established by St. Joseph's University.  Any tuition costs exceeding this established limit will be the responsibility of the Officer.

C.   Officers must have a passing grade point average of at least 2.0 or "C" to receive reimbursement of tuition.  Officers with a grade point average of 1.0 or "D" will receive 50% reimbursement of tuition.  Officers who fail the course will not be reimbursed tuition.

D.   Officers must complete all attended courses.  Officers who have grades of "incomplete" or "withdrawn" will not be reimbursed for tuition.  An exception will be made for officers who cannot attend classes due to prolonged illness or disability.

E.   When staffing of the department permits, officers will be permitted to attend college classes, while working, for four hours per week, when classes are scheduled, without loss of pay.  Officers will not be paid for time when classes are not during normal working hours.

F.   Officers must make application for approval of reimbursement for the costs of classes with the Chief of Police prior to commencing of classes, with final approval being granted by the Board of Supervisors.

G.   Officers must submit a copy of the college transcript, for each semester, prior to being reimbursed tuition costs.

H.   In the event an officer receives an Associates Degree in the curriculum of Criminal Justice or other degree approved by the Board of Supervisors while employed by the township, then the officer will receive a one-time award of $500.00.  An officer who receives a Bachelors Degree or Masters Degree in the curriculum of Criminal Justice or other degree approved by the Board of Supervisors while employed by the Township, will receive a one time award of $750.00.  These awards are not to be considered in the calculations of retirement benefits.

8

# HOURS OF WORK

A.    Any officer who is called in to perform duties for the police department, excluding court time and special details, during regularly scheduled time off, shall receive a minimum of four hours paid at their overtime rate.

B.    Any officer who is called in to perform duties for the police department, before or after their regular shift start time, shall not have the hours of their regular shift altered to avoid payment of overtime hours.

# FAMILY LEAVE

The Federal Family and Medical Leave Act and the Township Policy will be recognized with this contract.

# PERSONAL DAYS

Officers will be permitted two working days as personal leave per year. Personal Days may not be accumulated and may not be traded for cash compensation. Personal Days may be taken as full days or as a portion of a workday. Approval for Personal time will be requested from the shift Sergeant in the absence of the Chief and Lieutenant. Personal days may not be used on a holiday unless prior approval from the Chief of Police.

# BEREAVEMENT

A.    Employees will be granted three (3) days leave of absence with pay to attend the funeral of a member of the employee or the employee's spouse, immediate family (spouse, parent, children, grandparent, brother, sister, grandchildren).

B.    In the event of the death of a relative, not in the above category, up to one (1) day of leave may be permitted, depending on the circumstances.

9

# D.R.O.P. Program

Effective January 1, 2011, the Township shall offer eligible officers a deferred retirement option plan in a form substantially similar to Amendment No. 16 to the Restated Uniformed Employees Pension Plan. This benefit will be in accordance with current law.

## AMENDMENT NO. 16 ARTICLE XIII

13.1  Effective January 1, 2011 pension benefits earned by officers (DROP Members) under the Plan may be paid under a Deferred Retirement Option Plan ("DROP"), provided such Members have reached Normal Retirement Date, but have not retired prior to the implementation of the DROP.

13.2  Irrevocable Written Election. A DROP Member electing to participate in the DROP must complete and execute a "DROP Option Form" prepared by the Board, which shall evidence the DROP Member's election to participate in the DROP, such election being made within ninety (90) days after officers reach Normal Retirement Date. The DROP Option Form must be signed by the DROP Member and notarized and submitted to the Board prior to the date on which the DROP Member wishes the DROP option to become effective. The DROP Option Form shall include an irrevocable notice to the Board by the DROP Member.

13.3  Effect on Pension Accruals. After the effective date of the DROP option, the DROP Member shall no longer earn or accrue additional years of continuous service for pension purposes, and, the DROP Member shall no longer be required to make contributions to the Plan.

13.4  Pension Calculation. For all pension purposes, continuous service of a DROP Member shall remain as it existed on the effective date of his commencement of participation in the DROP. Service thereafter shall not be recognized or used for the calculation re determination of any benefits payable under the Plan.  The average applicable compensation of the DROP Member for pension calculation purposes shall remain, as it existed on the effective date of his commencement of participation in the DROP. Earnings or increases in earnings thereafter shall not be recognized or used for the calculation or determination of any benefits payable under the Plan. The pension benefits payable to DROP Members shall increase only as a result of cost of living adjustments in effect on the effective date if the DROP Member's participation in the DROP or by applicable cost of living adjustments granted thereafter.

13.5  Payments to the DROP Account. The monthly benefits that would have

been payable had the DROP Member elected to cease employment and receive a Normal Retirement benefit, shall, upon he DROP Member commencing participation in DROP, be paid into the separate Account established to receive the DROP Member's monthly pension payments. This account shall be designated the DROP Account. Each DROP Member shall direct the investment of the balance of his DROP Account from the investment options selected by the Boars. The Board and the Township shall not be responsible for any investment loss incurred in the DROP Account or for the failure of an investment to earn a specific or expected return. All investment and administrative costs shall be charged against the DROP Account.

13.6   Accrual of Non-Pension Benefits. After a DROP Member elects to participate in the DROP, all other contractual benefits shall continue to accrue with the exception of those provisions relating to the Plan. A DROP Member may utilize leave time during the DROP period.

13.7   Payout. Upon the Resignation Date set forth in the DROP Member's DROP Option Form or such date as the Township separates the DROP Member from employment, the pension benefits payable to the DROP Member or DROP Member's beneficiary from the Plan, and shall no longer be paid to such Member's DROP Account. Payment of the DROP Member's DROP Account shall be made in the form elected by the DROP Member, on the distribution form provided by the Board, and duly submitted to the Board.

13.8   Disability during DROP. If a DROP Member becomes temporarily incapacitated during his participation in the DROP, such member shall continue to participate in the DROP as if fully employed, and his participation in the DROP shall freeze and the time period while he is disabled shall not count toward the sixty (60) month participation limit. Upon return to duty, such Member's DROP participation shall resume, continuing with the remaining time left in the sixty (60) month membership period. The DROP Member shall receive disability pay in the same amount as disabled Members who are not participating in DROP. In no event shall a DROP Member on temporary disability have the ability to draw from his DROP Account. However, notwithstanding any other provision in this Section, if a DROP Member is disabled and has not returned to work as of the Resignation Date, then such resignation shall take precedence over all other provisions herein and said DROP Member shall be required to resign. Nothing contained in this Plan shall be construed as conferring any legal rights upon any police employee, Member or other person to a continuation of employment nor shall participation in the DROP program supersede or limit in any way the right of the Township to honorably discharge a DROP Member based upon inability to perform his full duties as a Member.

13.9   Death.  If a DROP Member dies before the full payment of his DROP Account balance is paid, the DROP Member's beneficiary shall have the same rights as the DROP Member to withdraw the balance of his DROP Account.

13.10  Construal of Provisions.  A Member's election to participate in the DROP shall in no way be construed as a limitation on the Township's right to promote or to suspend or terminate a Member for any reason consistent with applicable law or to grant the Member an honorable discharge based upon physical or mental inability to perform his or her duties.

13.11  Severability.  The provisions of this Section XIII shall be severable; and if any of its provisions shall be held to be unconstitutional or illegal, the validity of any of the remaining provision of the Plan shall not be affected thereby,  It is hereby expressly declared as the intent of the Easttown Township Council that the DROP would have been adopted had such unconstitutional or illegal provision or provisions not been included herein.


# Secondary Employment

A.   The Association agrees that the Township may implement Policy 3-15, Employment Outside the Department, as ~~modified during these~~ negotiations.   *STATED  BELOW*


## POLICY 3-15

## EMPLOYMENT OUTSIDE THE DEPARTMENT POLICY

It is the policy of the Easttown Township Police Department to provide guidelines to its members in order to inform them of the types of employment outside the Department that are appropriate, and to establish procedures to maintain accountability for the welfare of the Department. These requirements are essential for the efficient operation of the Department and for the protection of the officers, the Department, and the Community.


I.   **PURPOSE**

The purpose of this policy is to set forth guidelines to govern employment outside the Department by members of the Easttown Township Police Department.

## II.   DEFINITIONS

Employment: The providing of a service, whether or not in exchange for a fee or other service. Employment does not include volunteer work for charitable organizations.

Special Detail Employment: Any employment as described in the "Special Details" section of the collective bargaining agreement between the Easttown Township Police Association and Easttown Township.

Regular Off-Duty Employment: Any employment that will not require the use or potential use of law enforcement powers by an off-duty member of the Department.

## III.   PROCEDURES

There are two types of off-duty employment in which a member of the Department may engage:

A. Regular Off-Duty Employment

Employees may engage in regular off-duty employment that meets the following criteria:

1. Employment of a non-police nature in which vested police powers are not a condition of employment; the work provides no real or implied law enforcement service to the employer and is not performed during assigned hours of duty.

2. Employment that presents no potential conflict of interest between duties as a law enforcement officer and duties for the secondary employer. Some examples of employment representing a conflict of interest include, but are not limited to, the following:

    a. Officers who work as a police officer on a part-time or per diem basis for another police agency, process server, repossessor, or bill collector; towing of vehicles; or any other employment in which police authority might be used to collect money or merchandise for private purposes.

13

b. Work involving personnel investigations for the private sector or any employment that might require the officer to have access to police information, files, records, or services as a condition of employment.

c. Employment that assists with the case preparation for the defense in any criminal action.

d. Employment for a business or labor group that is on strike.

e. Employment in occupations that are regulated by, or that must be licensed through, the Police Department.

3. Employment that does not constitute a threat to the status or dignity of law enforcement as a professional occupation. Examples of employment that constitute such a threat and should be denied include, but are not limited to:

a. Establishments that sell pornographic books or magazines, sexual devices or videos, or that otherwise provide entertainment or services of a sexual nature.

b. Any employment involving the sale, manufacture, or transport of alcoholic beverages as the principal business.

c. Any gambling establishment.

B.   Special Duty Employment

Members of the Department may engage in Special Detail Employment as spelled out in the Collective Bargaining Agreement between The Easttown Township Police Association and Easttown Township.

C.   Approval Process

Members of the Department who wish to engage in regular off-duty employment shall submit a written notice to the Chief of Police advising him of the job. In addition to the employment categories contained above in subsection A, the secondary employment may not:

    1.  Physically or mentally exhaust the member, inhibiting their performance in the Department.

    2.  Require any special consideration be given to the scheduling of the member's regular duty hours.

    3.  Bring the Department into disrepute or impair the operation and/or efficiency of the Department and/or member.

D.    Limitations on regular off-duty employment and special detail employment are as follows:

    1.  Members of the Department who are on medical or other leave due to sickness, temporary disability, or an on-duty injury shall not be eligible to engage in regular or special detail off-duty employment that is inconsistent with their alleged disability and/or would be inconsistent with the limitations or restrictions placed on by the treating physician.

    2.  A member of the Department who is engaged in any regular or special detail off-duty employment is subject to call-out in case of emergency, and will be expected to leave his off-duty employment in such situation.

B.    Additionally, the Township agrees to waive a 12-month period before any officer terminates his secondary employment. This policy will take effect January 1, 2008.

# CLEANING AND MAINTENANCE OF UNIFORMS

A. The Township shall contract for the cleaning and laundering of uniforms at an establishment of their choice.  All expenses for cleaning and laundering will be borne by the Township.

B. Officers will be responsible for delivering and retrieving laundry.

C. Except when away on assignment, officers will not be reimbursed for laundry costs from any other establishment that has not been approved by the Township for the cleaning of uniforms.

D. The Township will continue the practice of supplying officers with uniforms that are required by the Department, including regular uniforms, hats, rain gear, winter jackets, leather gear, ties, handguns, handcuffs, batons and any other items required to be worn or equipment used by an Officer.

E. The Township will provide each officer with a ballistic vest and will reissue these vests upon the expiration of manufacturer's warranty.

# WAGES

Officers shall receive a basic annual rate, based on an annual rate of pay for patrolman in year four, set forth on the following scale.

YEAR 2007: .....................................$67,641.30   = 4%

YEAR 2008:.....................................$70,346.95   = 4%

YEAR 2009:.....................................$73,160.82   = 4%

YEAR 2010:.....................................$76,087.26   = 4%

YEAR 2011:.....................................$79,130.75   = 4%

Patrolman  Year 1.....................70%
Patrolman  Year 2.....................80%
Patrolman  Year 3.....................90%
Patrolman  Year 4.....................100%

Sergeant  increases for following years:

YEAR 2007  =       105.5%

YEAR 2008  =       106%

YEAR 2009  =       106.5%

YEAR 2010  =       107%

YEAR 2011  =       107 %

17

# LONGEVITY

A.  In addition to the basic annual rate, officers shall receive longevity compensation for continuous service from the date of the latest employee date.  The following percentages of the annual rate shall accrue and be paid in two equal payments on the first pay after June 1st and December 1st.

| | | |
|---|---|---|
| Over 2 | through  5  years ......................... | 3% |
| Over 5 | through 10 years ......................... | 5% |
| Over 10 | through  15 years ......................... | 7% |
| Over 15 | through  20 years........................... | 9% |
| Over 20 | years ........................................ | 11% |

# COMPENSATION CALCULATIONS

A. Individual rate of pay shall be determined as follows:

   1. The regular bi-weekly pay shall be determined as follows:

      Basic annual rate of pay, divided by 26.07 bi-weekly pay periods = regular bi-weekly pay

   2. Regular hourly rate shall be determined as follows:

      Basic annual rate of pay, plus longevity, divided by 2080 hours = regular hourly rate

   3. Overtime hourly rate of pay shall be determined as follows:

      Basic annual rate of pay, plus longevity, divided by 2080 hours = hourly rate, times one and one half (150%) = overtime rate of pay.

   4. Holiday hourly rate of pay shall be determined as follows:

      Basic annual rate of pay, plus longevity, divided by 2080 hours = hourly rate, times one and one half (150%) = holiday rate of pay.

B. If officers are working a twelve-hour shift, then officers will be paid for one hundred and thirty two (132) hours of pay, calculated at the officer's regular hourly rate.  See section concerning Holiday Pay.

# OVERTIME

A.   Employees shall be compensated at their overtime hourly wage in either cash or compensatory time off, at the employees option, for overtime worked under the following conditions:

   1.   All assigned work in excess of the regularly scheduled work shift. Twelve hours in twelve hour shift or eight hours in an eight hour shift

   2.   All assigned work in excess of an average of forty hours in any one work week within a twenty eight day period.

   3.   All assigned work on a regularly scheduled day off including training and meetings ordered by the Chief of Police.

B.   All overtime must be approved by an immediate supervisor and the Chief of Police.

C.   Officers may elect to receive compensatory time in place of cash for overtime worked.   Such compensatory time must be approved by the Chief of Police. Officers must advise the Chief of Police, at the time the overtime is worked, of their request for compensatory time in place of cash, for overtime.   Compensatory time must be used within 189 days of it being earned.

# SPECIAL DETAILS

Special details are assignments outside the usual needs of the Police Department. These details are usually created by and requested by persons or government agencies outside the Police department who desire extra police assignments for special events held in the township. Usually these agencies or persons are billed by the township for the cost of services rendered.

The Township shall offer these details to members of the Police department, who are full time employees, before these special details are offered to auxiliary police or any other persons, for details that are performed within the territorial boundaries of Easttown Township.

Employees who are assigned to work a special detail shall be compensated at their overtime rate of pay for at least two (2) hours or each hour worked over two (2) hours. While working on a special detail the employee is performing duties as a Police Officer of the Township and shall receive all benefits and insurance coverage that are provided to the employees as if they were working at regular duties.

Any portion of a half hour, while working a detail shall be compensated at a full half hour.

Special details must be received, approved and scheduled by the Chief of Police. Employees are prohibited from performing and special details in the township without the approval of the Chief of Police.

Officers assigned a detail will be paid at the officers overtime rate of pay for each hour worked. Officers who work a detail on a holiday will be paid at the overtime rate and not the holiday rate of pay.

# ASSIGNMENT OF SPECIAL DETAILS

Special details are assigned to employees only after staffing needs of the Police Department are satisfied. Except for departmental staffing emergencies no employee will work more than eighteen (18) hours in any twenty-four (24) hour period at either regular duties or special detail assignments.

# COURT

A.  Court appearances shall be all hearings or trials of a court of record including: District Justice hearings, Court of Common Pleas, PENNDOT hearings, Juvenile Court proceedings, ACT 302 hearings, Civil Court hearings, trials, depositions and any other matters in which the officer is subpoenaed by a court official for actions the officer had taken as a regular part of his duties, as an officer with the Easttown Township Police Department.

B.  Officers who are placed on call to attend hearings or court, during off duty hours, will be compensated for three hours of pay paid at the regular pay rate. Officers are required to contact the offices of the court and advise the court where they can be contacted. Officers must make themselves available and appear at the court as required.

C.  Officers will not be compensated for court dates which are canceled prior to the actual day of the hearing or court session. It shall be the responsibility of the Officer to contact the court office prior to the date of the scheduled court session to learn if the court date has been continued or canceled.

D.  Officers who attend hearings or court sessions, during off duty hours, shall be compensated for a minimum of two hours pay at the overtime rate. If these hearings or court sessions continue for more than two hours then the officer will be paid at the overtime rate for the actual time spent attending the hearing or court session. Any portion of one half hour will be compensated as a full hour.

E.  Officers will be permitted to retain any fees by the court or other sources for appearance in a hearing or court session.

# JURY DUTY

A.   Officers who are called for jury duty shall be scheduled a court day and will not have their schedule altered to avoid being scheduled for jury duty on a regularly scheduled workday.  Officers shall be compensated at their regular rate of pay for each day they are assigned to jury duty.

B.   Officers selected for jury duty will notify the Chief of Police when they receive the notice from the Jury Commission.  The Chief of Police may write a letter to the Jury Commission asking the officer be excused from jury duty due to commitments to the department.  If the officer is excused from jury duty then he will report to work as regularly scheduled.

C.   Officers will not be compensated for jury duty assigned on a regularly scheduled day off.

# OUT OF RANK PAY

When a Sergeant's position is vacant for more than thirty (30) consecutive calendar days, the officer who is assigned to work out of rank shall receive the rate of pay for that rank, retroactive to the day first assigned.

23

# HOLIDAYS

A.     Officers will be compensated for the following twelve holidays.

1.   New Years Day   (actual date)
2.   Washington's Birthday   (celebrated date)
3.   Good Friday   (actual date)
4.   Easter   (actual date)
5.   Memorial Day   (celebrated date)
6.   Primary Election Day   (actual date)
7.   Independence Day   (actual date)
8.   Labor Day   (celebrated date)
9.   General Election Day   (actual date)
10.  Veteran's Day   (celebrated date)
11.  Thanksgiving Day   (actual date)
12.  Christmas Day   (actual date)

# RATE OF PAY FOR HOLIDAYS

Officers who work on any holiday will be paid at the following rate for each hour worked:

A.   Basic annual rate of pay, plus longevity, divided by 2080 hours, times 250% = holiday work rate.

B.   Officers who are not regularly scheduled to work a holiday will be compensated at the following rate.

    1.   Regularly scheduled off for the day.

       Basic annual rate of pay, plus longevity, divided by 2080 hours times 100%, times eight hours = rate of pay for holiday if scheduled off.

    2.   Regularly scheduled to work but elect to take the day off.

       Basic annual rate of pay, plus longevity, divided by 2080 hours times 100%, times eight hours = rate of pay for holiday if scheduled, but did not work.

C.   Officers who are regularly scheduled to work on a holiday may elect to take the day off with the approval of an immediate supervisor and the Chief of Police.  This day off will be recorded as a holiday.

D.   Officers who are scheduled on a vacation during a holiday will have the day off recorded as a holiday and not a vacation day.  Chart time may not be taken on a holiday.

E.   Officers who are scheduled off as sick will have the day off recorded as a holiday and not a sick day.

F.   Officers who are working hours, during a holiday, that would regularly be considered overtime hours will be compensated at their basic annual rate of pay, plus longevity, divided by 2080 hours, times 250% for each hour worked.

G.   Officers may elect to receive compensatory time off instead of their holiday hourly rate of pay for working on a holiday. If an officer elects to receive compensatory time then compensatory time will be calculated at one and one half hour for each hour worked on a holiday and the officer will also receive his annual rate of pay, divided by 2080 hours, times 100%, times the number of hours worked on a holiday.

H.   If the officers are working a regular twelve (12) hour shift schedule, the following hourly rate of pay shall be followed:

1.   Each officer will be compensated for one hundred and thirty two (132) hours of pay calculated at their regular hourly rate of pay.

2.   Payment will be made in two equal payments of sixty-six hours of pay. One payment on the first pay day in March, the second payment of sixty-six hours on the first pay day of August, of each year.

3.   Officers may elect to receive compensatory time instead of cash. Officers are required to notify the Township Manager, prior to February 1st for the first holiday payment and July 1st for the second holiday payment, of their desire to receive compensatory time instead of cash. Officers must advise how many hours they are requesting compensatory time instead of cash. If the officer does not advise the Township Manager by the specified dates, the Officer will be paid cash.

# VACATION

A. Officers will receive vacation according to length of service as follows:

One year…………………………………………  7 working days or 56 hours
Second through fifth year ………………………  14 working days or 112 hours
Sixth through fifteenth……………………………  21 working days or 168 hours
Over sixteen years………………………………  28 working days or 224 hours

B. Vacation request must be approved by the Chief of Police. In the absence of the Chief of Police vacation request of three days or less may be approved by the shift supervisor. This vacation approval must be used within (7) calendar days of the request.

C. Vacation request that are approved shall not be revoked, except for a clear emergency affecting the staffing of the Department as a whole. An officer will have the right to submit a vacation request at least six months in advance.

D. An officer may accumulate vacation from one year to the next. However, any part of one years accumulated vacation must be used within nine months of the following year.

E. Accumulated vacation not taken within the following nine months will be forfeited.

F. Upon retirement or termination from employment accumulated vacation from the present year and previous year may be traded for cash, calculated at the officer's present hourly rate of pay for each accumulated hour of vacation. Yearly accumulated vacation may not be traded in for cash reimbursement by an officer who is and remains an active employee of the department.

# SICK LEAVE

A. Each officer shall be entitled to twelve (12) days, or (96) hours of sick leave with pay in each calendar year. Sick leave may be accumulated with no maximum limit.

B. Although an officer may accumulate more than 189 days of sick leave, a cap of 189 days shall be set for purposes of reimbursing an officer for unused sick leave at the time of retirement or termination of service for any other reasons. Each officer whose employment with the Township is terminated by reason of retirement shall be entitled to compensation at the rate of fifty-two dollars and fifty cents ($52.50) per day for each sick leave day accumulated and not expended. Similarly, each officer who terminates his employment with the Township, for reasons other than retirement shall be entitled to compensation at the rate of twenty-six dollars and twenty-five cents ($26.25) per day, but not more than one thousand dollars ($1000.).

C. Regardless of an officers actual accumulation of sick leave, an officer who is out for over one-hundred and eighty nine (189) consecutive calendar days must go to long term disability.

D. The provision for sick leave compensation shall not apply if termination of employment occurs in such a manner as to cause forfeiture of benefits under the state law.

# PAYMENT TO BENEFICIARIES

A.  In the event an officer is killed in the line of duty the Township will pay all reasonable cost for the funeral and burial of the officer that is not reimbursed from some other source.

B.  In the event that a presently employed officer dies the Township will pay the beneficiary of the officer the following:

Reimbursement for accumulated time worked including regular time, overtime and special details.

Reimbursement for any accumulated vacation hours.

Reimbursement for any accumulated sick leave.

Reimbursement for any accumulated compensatory time.


Reimbursement to beneficiaries will be calculated at the officer's rate of pay at the time of the officer's death.

29

# MEDICAL AND DENTAL – BLUE CROSS/SHIELD

A.  The Township at their expense shall provide the members of this Department and their immediate families the Independence Blue Cross Personal Choice C1-F1-01 medical and prescription plan. Deductibles under said plans will be the responsibility of the officer. Coverage for new Officers shall begin immediately.

B.  If the cost of the premiums for the benefits provided under section "A" increase more than 15% from the costs of the previous year, the contract shall be reopened solely to select an equivalent plan or coverage with a cost increase below 15%.

C.  The Township, at their expense, shall continue to maintain for the members of the Department and their immediate families the Group Dental Insurance Plan presented by Fortis Benefits Insurance Company, including the Basic Services, Supplemental Basic Prosthetics, Periodontics and Orthodontics or equivalent coverage from another carrier or the Township may self insure equivalent coverage. In addition, The Township, at its expense, shall continue to maintain for the members of the department and their immediate families eye care coverage (BC/BS $250 biannual plan benefit or equivalent coverage from another carrier or self insurance)

D.  The Township shall provide the benefits set forth in Paragraph "A" and "C" of this Article to the member when he or she retires, until such time as the member becomes qualified for Medicare benefits provided the retiree has no other such coverage through another employer.

E.  For active members on the Township payroll who retire, the Township shall provide the benefits set forth in paragraph "A" and "C" to those individuals who are his or her spouse and/or dependents, until the individual receiving the benefit is eligible for medical benefits from the state or federal governments (Medicare), the spouse remarries, the individual is otherwise covered or the dependent is no longer eligible under the Township Policy. In no event shall the Township's financial obligation to provide the benefits to the spouse or dependent of a retired member exceed the cost, at the time the benefit is being paid, of providing those benefits described in paragraph "A" and "C" of this section.

F.  For any officer who retires under the provisions of Act 24 which provides for an actuarially reduced retirement benefit, the Township will provide for the officer only, all benefits set fourth in paragraph "A" and "C" until such time that the officer reaches his normal retirement date, at which time he

will be provided all benefits he is entitled to under paragraphs "D" and "E".

G.   Effective each open enrollment period, officers and/or their families may elect to opt out of the benefits provided in Section "A" provided that they give to the Township satisfactory written evidence that they have other coverages. Payments shall be made to each officer opting out with the first payroll of April 1st.

  a)   Covered spouse opts out – 10% of the net insurance premium;
  b)   Covered spouse and children opt out – 20% of the net insurance premium;
  c)   Covered officer, spouse and children opt out – 25% of the net insurance premium

31

# PHYSICAL FITNESS

A.   The Township shall pay the cost of a health club membership at the Upper Main Line YMCA, or the cost for a similar membership at another facility, to any member of the police department, who avails himself of a physical fitness program upon receipt of a voucher of his enrollment to such a program.

B.   A retired officer will be allowed to purchase a membership to the Upper Main Line YMCA through the township at the cost that the township is paying per person for that year.  Provided the YMCA permits the same.

# INCOME PROTECTION

The Township shall continue full pay and all other benefits from the day of any disability for one hundred eighty nine (189) calendar days subject to the following restrictions:

1.  The officer must present medical evidence satisfactory to the Board of Supervisors that he is unable to perform his normal duties.

2.  At monthly intervals, the Board may require the officer to present updated satisfactory medical evidence that he is unable to perform his duties.  If a cost is incurred due to a request by the board, the board shall reimburse the officer for any amount not covered by insurance.

3.  If the officer can perform restricted services, the Board of Supervisors and the chief of Police may require such services for the benefit of the Police Department.

4.  In the event of a job-related injury, a claim will be filed in accordance with the Pennsylvania Workers Compensation and Occupational Disease Law.

5.  In the event of a non-job related injury, any sick leave due or accumulated must be applied during this period.

After one hundred eighty nine (189) calendar days, the Township shall provide sixty-six percent (66%) of the base salary for job or non-job related injuries.

After the one hundred eighty nine (189) days, the officer shall not be entitled to any sick leave, holiday or vacation benefits.

Should any member of the department receive cash compensation from any other sources, other than personal insurance policies, in which he has already been compensated by the Township, the member shall then reimburse the Township for such sums.

6.  If an officer is able to perform duties within the Police Department, other than the regular duties, then the officer will report to work and perform such duties as directed by the Chief of Police.  During this time the office will be compensated at the regular hourly rate as an active police officer.

## LIABILITY INSURANCE

A.   The Township shall be obligated to carry and maintain a reasonable comprehensive liability insurance policy including, but not limited to, Police Professional Liability Insurance and False Arrest Insurance, to cover all Officers against claims arising from their employment.

B.   The Township will meet with any officer, who request such a meeting, who is the subject of a civil suit arising out of their employment, concerning the appointment of legal counsel.  If for any justifiable reason the officer is not satisfied with a particular lawyer, the Township will take necessary actions to request the lawyer be replaced.

## LIFE INSURANCE

The Township, at their expense, shall provide life insurance for each officer in the face amount of eighty thousand dollars ($80,000.00).

## SHIFT DIFFERENTIAL

Effective January 1, 2007, all officers who work the night shift shall be entitled to a shift differential of $1.00 per hour for all hours worked on the night shift (7:00 PM to 7:00 AM).  Effective January 1, 2011, the shift differential shall be $1.50 per hour for all hours worked on the night shift.  Shift differential pay shall not be considered as part of the annual rate in computing longevity pay under article 12.

## INSURANCE AND PENSION ADVISORY BOARD

There shall be an Insurance and Pension Advisory Board to establish guidelines, review existing policies and agreements, fund placement for the Pension Plan and recommend revisions and additions of such items. This Board will not be compensated. Expenditures must have prior approval by the Board of Supervisors.

The Board shall consist of no more than two (2) members of the Board of Supervisors, no more than two (2) members who are appointed by the Police Association and the Township Manager.

The Board shall meet at the request of any member of the Board, to review performance of the funds invested in the Uniformed Pension Plan and other items of concern to any member of the Board pertaining to issues of Insurance and the Uniformed Pension Plan.

Witness, our signature on the **23** day of **FEB 2007**

FOR: EASTTOWN TOWNSHIP
POLICE ASSOCIATION

FOR: EASTTOWN TOWNSHIP
BOARD OF SUPERVISORS

## SETTLEMENT AGREEMENT

Easttown Township Police Association ("**Union**") and Easttown Township ("**Township**") have agreed to extend their collective bargaining agreement by making the following changes:

1.    PREFACE. The second paragraph of the PREFACE (p. 3) shall be amended to provide as follows:

On February ___, such Agreement was again revised and extended by mutual agreement, superseding and replacing as of the effective date hereof, all prior agreements with respect to the subject hereof, for the period of fiscal years beginning January 1, 2012 and ending December 31, 2015.

2.    EDUCATION AND TRAINING. Paragraph C of the provision on EDUCATION AND TRAINING (p. 8) shall be amended to provide as follows:

Any officer whose employment as a Township officer ends within 24 months of having received a payment on or after July 1, 2012 for tuition reimbursement from the Township shall have to repay that amount to the Township within one hundred eighty (180) days, unless the separation is due to disability or death. Additionally, the Township shall not reimburse the tuition for Officers who are on probation or who have entered DROP. Furthermore, the combined education reimbursement for all officers in the bargaining unit shall not exceed $30,000 in 2012. This annual cap shall increase by 5% each year as reflected in the table below:

| | |
|---|---|
| 2012: | $30,000 |
| 2013: | $31,500 |
| 2014: | $33,075 |
| 2015: | $34,728.75 |

Subject to the foregoing, Officers shall have their tuition for each course reimbursed as follows:

| Grade | Reimbursement Rate |
|---|---|
| B or higher | 100% |
| C | 80% |
| D | 50% |

8675099_5

3.     D.R.O.P. Program. Section 13.2 of the provision on D.R.O.P. Program (p. 10) shall be shall be amended to provide as follows:

Irrevocable Written Election. A DROP Member electing to participate in the DROP must complete and execute a "DROP Option Form" prepared by the Board, which shall evidence the DROP Member's election to participate in the DROP, such election being made within ninety (90) days after officers reach Normal Retirement Date. The DROP Option Form must be signed by the DROP Member and spouse, notarized and submitted to the Board prior to the date on which the DROP Member wishes the DROP option to become effective. The DROP Option Form shall include an irrevocable notice of retirement to the Board by the DROP Member. Moreover, the DROP Member shall complete any other forms necessary to effectuate the DROP election.

4.     SECONDARY EMPLOYMENT. Section III.A.2 of the provision on SECONDARY EMPLOYMENT (p. 13-14) shall be amended to provide as follows:

Employment that presents no potential conflict of interest between duties as a law enforcement officer and duties for the secondary employer. Some examples of employment representing a conflict of interest include, but are not limited to, the following:

a.     A process server, repossessor, or bill collector; towing of vehicles; or any other employment in which police authority might be used to collect money or merchandise for private purposes.

b.     Work involving personnel investigations for the private sector or any employment that might require the officer to have access to police information, files, records, or services as a condition of employment.

c.     Employment that assists with the case preparation for the defense in any criminal action.

d.     Employment for a business locking out its employees or labor group that is on strike.

e.     Employment in occupations that are regulated by, or that must be licensed through, the Police Department.

f.     Notwithstanding the foregoing language in subparagraphs a. through e. above:

(1)     officers may work as a police officer on a part-time or per diem basis for another police agency, provided that:

(a)     such work shall not interfere with the duties and responsibilities that the officers discharge to the Township; and

      (b)    the officers shall not utilize any Township-issued uniforms or equipment, with the exception of the Township-issued protective vest; and

    (2)    officer may serve as or hold the position of Constable or Deputy Constable, provided that:

      (a)    the officer performs no work as a Constable or Deputy Constable within the Township; and

      (b)    the officers shall not utilize any Township-issued uniforms or equipment, with the exception of the Township-issued protective vest.

    5.    <u>WAGES</u>. The provision on WAGES (p. 17) shall be amended to provide as follows:

All officers shall receive a basic annual rate, based on an annual rate of pay for patrolman in year four, set forth on the following scale.

| | |
|---|---|
| January 1, 2012: | $81,109.02 = 2.5% |
| July 1, 2012: | $81,920.11 = 1.0% |
| January 1, 2013: | $83,968.11 = 2.5% |
| July 1, 2013: | $84,807.79 = 1.0% |
| January 1, 2014: | $86,927.99 = 2.5% |
| July 1, 2014: | $87,797.27 = 1.0% |
| January 1, 2015: | $89,992.20 = 2.5% |
| July 1, 2015: | $90,892.12 = 1.0% |

Patrolman Year 1 ..................... 70%

Patrolman Year 2 ..................... 80%

Patrolman Year 3 ..................... 90%

Patrolman Year 4 ..................... 100%

Sergeants shall receive annually as a base wage 107% of the base wage of a full patrol officer. Corporals shall receive annually as a base wage 104.5% of the base wage of a full patrol officer.

8675099_5

6.   <u>LONGEVITY</u>. A final paragraph to the provision on LONGEVITY (p. 18), shall be added to provide as follows:

The longevity payment of "Over 2 through 5 years" shall not apply to officers who become employed by the Township on or after January 1, 2012. For those officers, there shall be no longevity payment for "Over 2 through 5 years" of continuous service.

7.   <u>RATE OF PAY FOR HOLIDAYS</u>. A final paragraph (Paragraph I) shall be added to the provision on RATE OF PAY FOR HOLIDAYS (p. 26), which shall provide as follows:

All Officers will receive 12 additional hours of holiday time, which may be used as a personal day.

8.   <u>MEDICAL AND DENTAL – BLUE CROSS/SHIELD</u>.

a.   Paragraphs A and B of the provision on MEDICAL AND DENTAL – BLUE CROSS/SHIELD (p. 30) shall be amended to provide as follows:

A.   1.   The Township shall provide the members of this Department and their immediate families the Independence Blue Cross Personal Choice HDHP3 medical and prescription plan (the "**High Deductible Plan**"). A copy of the Summary Plan Description for the HDHP3 High Deductable Plan is attached. The Township shall annually pay all deductibles that an officer incurs under the High Deductible Plan through a combination of a Healthcare Savings Account ("**HSA**") and direct reimbursement to each officer. In addition, the Township shall annually reimburse up to $1,000 to cover prescription drug out-of-pocket co-pays once the High Deductible Plan deductible is exhausted.

2.   Township shall annually pay 50% of the appropriate deductible, $1250 for Single coverage and $2500 for all other coverages, into a HSA and shall promptly reimburse the other half of the deductible, $1250 for Single coverage and $2500 for all other coverages, directly to the officer with appropriate documentation via a noncumulative Health Reimbursement Account ("**HRA**"). The HSA shall be the subject of debit card(s) provided to the officer and dependents. The officer and dependents may submit out of pocket expenses subject to the deductible by use of the HSA or the HRA in any order or combination as they choose.  In addition, an officer will be reimbursed, with appropriate documentation up to an additional $1000 annually for out-of-pocket drug co-pays after the full annual deductible is paid.

3.   The Township, as a distribution of a portion of the healthcare premium savings, shall pay to each officer the following amounts:

| Date | Payment |
|---|---|
| May 2012: | $1,500 |
| November 2012: | $1,400 |

8675099_5

| | |
|---|---|
| May 2013: | $1,000 |
| November 2013: | $ 900 |
| May 2014: | $1,000 |
| November 2014: | $ 900 |
| May 2015: | $1,000 |
| November 2015: | $ 900 |

     4.     In addition to the amounts set forth in the Paragraph A (1) above, for the years 2013 through 2015, contingent upon the amount of each yearly premium increase to providing family coverage under the High Deductible Plan, the Township shall pay each officer, as follows:

| Yearly Family Premium Increase | Payment to Each Officer |
|---|---|
| Less than 16% | $1,000 |
| 16% | $ 900 |
| 17% | $ 800 |
| 18% | $ 700 |
| 19% | $ 600 |
| 20% | $ 500 |
| 21% | $ 400 |
| 22% | $ 300 |
| 23% | $ 200 |
| 24% | $ 100 |
| 25% or more | $ 0 |

     The table above is not meant to include all potential premium increases and corresponding payouts; just the round-number milestones. The full $1,000 payment shall be made each year between 2013 through 2015 if premium increases for family coverage under the High Deductible Plan from the previous year are 16% or less. If the premium increases for family coverage under the High Deductible Plan from the previous year are more than 16% and less than 25%, then the employee shall receive a proportionate share of the $1,000. (By way of illustration, if the increase is 21.5%, then the employee will receive $350.)  If increases for

family coverage under the High Deductible Plan exceed 25% from the previous year, then none of the $1,000 payment will be made.

      b.     Paragraph B of MEDICAL AND DENTAL – BLUE CROSS/SHIELD (p. 30) shall be amended to provide as follows:

      B.     If the cost of the premiums for the benefits provided under paragraph "A" of the MEDICAL AND DENTAL – BLUE CROSS/SHIELD Article increase by 75% or more over a span of two years, the Township shall have 90 days in which to notify the Union in writing that it desires reopen the contract solely to negotiate all items under Paragraph 8 of the February 2012 settlement agreement. In the event that such negotiations lead to impasse under Act 111, the parties agree that Walter DeTreux shall serve as the impartial arbitrator.

      Alternatively, if the High Deductible Plan, HPHD3, is cancelled by the insurance carrier, the Township shall have 90 days in which to notify the Union in writing that it desires reopen the contract solely to negotiate all items under Paragraph 8 of the February 2012 settlement agreement. In the event that such negotiations lead to impasse under Act 111, the parties agree that Walter DeTreux shall serve as the impartial arbitrator.

      c.     Paragraph H shall be added to MEDICAL AND DENTAL – BLUE CROSS/SHIELD (p. 31), which shall provide as follows:

      For six months from the date of the death of the officer killed in service, the Township, at its expense, shall continue to provide the benefits described in paragraphs "A" and "C" of the MEDICAL AND DENTAL – BLUE CROSS/SHIELD Article to the surviving spouse and eligible dependents.

      9.     <u>LIABILITY INSURANCE.</u>  This provision (p. 34) shall be amended, as soon as practical after execution of this agreement, to provide as follows:

      C.     The Township shall be obligated to carry and maintain a reasonable comprehensive liability insurance policy including, but not limited to, Uninsured/Underinsured Motorist Insurance (with payment limits of not less than $1,000,000 per accident).

      10.     <u>LIFE INSURANCE.</u> The provision on LIFE INSURANCE (p. 34) shall be amended to provide as follows:

      The Township, at its expense, shall provide life insurance for each officer in the face amount of one-hundred thousand dollars ($100,000.00).

      11.     <u>TRAFFIC SAFETY OFFICER.</u> A Section entitled "TRAFFIC SAFETY OFFICER" shall be added to the Agreement and shall provide as follows:

The Township may create a position entitled "Traffic Safety Officer (TSO)". The TSO shall be scheduled to work an eight (8) hour shift on every weekday, which shift shall not begin earlier than 7:00 AM nor end later than 7:00 PM. In the alternative, the TSO and the Township may agree to schedule the TSO to work at other weekday times, depending upon the length of shifts worked by the TSO. The TSO wage shall be the same as the rate that officer would receive if he/she were working patrol, including base, longevity, and rank differential. The TSO shall enjoy all other benefits as are enjoyed by the patrol officers, except as to holidays. As to Holidays, the TSO shall be scheduled off with pay on the weekday workday on which the Township celebrates the following Holidays:

1. New Years Day
2. President's Day
3. Good Friday
4. Memorial Day
5. Independence Day
6. Labor Day
7. Veterans' Day
8. Thanksgiving Day
9. Christmas Day

The remaining seventy-two (72) hours of vacation time may be taken off or paid out in the last pay of December of each year. Nothing shall prohibit the TSO from using other categories of leave time to take off on the following Holidays:

1. Primary Election Day
2. General Election Day

## 12. INVESTIGATOR/DETECTIVE.

The Township may assign an Officer to work as an Investigator/Detective ("Detective"). The Detective shall be scheduled day work Monday – Friday, or such of those days as the parties may agree, depending upon the length of shifts worked by the Detective. The Detective rate shall be the same as the rate that officer would receive if he/she were working patrol, including base, longevity, and rank differential. The Detective shall enjoy all other benefits as are enjoyed by the patrol officers, except as to holidays. As to Holidays, the Detective/Investigator shall be scheduled off with pay on the weekday workday on which the Township celebrates the following Holidays:

1. New Years Day
2. President's Day
3. Good Friday
4. Memorial Day
5. Independence Day
6. Labor Day
7. Veterans' Day

8675099_5

        8. Thanksgiving Day
        9. Christmas Day

The remaining seventy-two (72) hours of vacation time may be taken off or paid out in the last pay of December of each year. Nothing shall prohibit the Detective from using other categories of leave time to take off on the following Holidays:

        1. Primary Election Day
        2. General Election Day

    13.    COST-OF-LIVING ADJUSTMENT. A Section entitled "COST-OF-LIVING ADJUSTMENT" shall be added to the Agreement and shall provide as follows:

    The Union and Township have agreed to resolve the pending Grievance filed on January 6, 2012, based upon the Township's acknowledgment that the Pension Plan requires an automatic annual increase in the monthly pension payment each and every year based upon the CPI, subject only to the maximum increases provided by Act 600, as to all pensions now being paid to retired officers and those to be paid to officers covered by this agreement. It is expressly agreed that the annual adjustment shall be made even when the MMO necessary to fund the pension plan, including the full automatic COLA, shall require contributions by the Township above and beyond member contributions and State Aid.

    14.    SCHEDULE and PART-TIME OFFICERS. A Section entitled "SCHEDULE and PART-TIME OFFICERS" shall be added to the collective bargaining agreement and shall provide as follows:

    The Township may implement a new schedule on a trial basis. That schedule shall include the TSO and the Detective and provide for the assignment of the full time officers in the patrol division to fixed (non-rotating) 12 hour day and night shifts. There shall be no involuntary transfer of any officer from their position or shift without just cause shown.

    The trial shall expire December 31, 2013. At least 60 days prior to the expiration of the trial period, either party may notify the other that they elect to revert to the prior schedule and deployment of officers. If neither party provides that notification, then the new schedule will be implemented and shall remain the work schedule until further agreement of the parties. Nothing herein shall prevent the parties from coming to agreement sooner as to the termination of the trial period and implementation of the schedule on an ongoing basis (i.e., as the schedule that shall remain in place until further agreement of the parties) or reversion to the prior schedule. At such time as the trial period shall end and the new schedule is implemented on an ongoing basis, the Township shall appoint two additional Sergeants.

    For so long as the new schedule is in place, the existing manner of payment of the Night Differential ($1.50/hr.) shall be suspended; instead, seventy-five (.75) cents shall be added to the hourly rate of every officer, regardless of assignment or shift.

8675099_5

For so long as the new schedule is in place, the Township may employ part-time officers. There shall be at least two full-time officers assigned to each patrol shift (the Chief, Lieutenant, TSO and Investigator/Detective shall not be considered as part of any "patrol shift").

Part-time officers may be used at any time to supplement a patrol shift to which at least two full-time officers are assigned. In addition, a part-time officer may be used to fill the shift of a fulltime officer that is vacant due to that officer's use of vacation, compensatory or chart time. A part-time officer may be used to fill the shift of a fulltime officer who is unable to perform his/her regular job duties for seven (7) or more consecutive calendar days. Part-time officers shall not work any detail, special detail or overtime opportunity unless no fulltime officer is willing to work the detail, special detail or overtime opportunity.

For so long as the new schedule is in place, officers working the night shift shall be permitted "scheduled time off" at their discretion provided they give at least 48 hours advance notice (48 hours before the starting time of the shift as to which they seek to schedule time off). If the officer provides less than 48 hours of advance notice, they shall be assured of the time off only if they have arranged for coverage of the time by a part-time officer. Nothing herein shall be construed as to prevent the officer from arranging for a switching of hours with another fulltime officer.

15.     SPECIAL DETAILS: A section shall be added as follows:

The parties recognize that the Devon Horse Show and activities related to it provide a unique opportunity for members of the Police Department to provide services and generate income to the mutual benefit of the parties. Accordingly, they agree that during this particular detail, the officers shall receive a rate of $55/hour and that the Township shall add a reasonable administrative fee, so as to maintain the relationship with the Horse Show and preserve the mutual advantage received by the parties.

The members of the bargaining unit and Police management seek a fair and equitable distribution of the income that each may receive from this opportunity. Accordingly, the members of the bargaining unit and Police management agree to distribute those opportunities equitably between them, taking into account the opportunity for police management to earn compensation for administrative services. In the event that a disagreement shall arise as to the distribution of such opportunity, the parties shall meet and discuss the issue to see if a resolution can be obtained. In the event no resolution can be reached, the bargaining unit may reopen the agreement solely to seek specific provisions governing the allocation of the opportunities for such compensation.

16.     Any provision of the expired agreement not amended above shall remain in effect.

Easttown Township Board Of Supervisors

Easttown Township Police Department

By: _Richard T. Frazier_

By: _____

Joseph Lewis, President

Chairman, Board of Supervisors

Union Representative

Easttown Township

Easttown Township Police Department

By: _____

8675099_5

## SETTLEMENT AGREEMENT

Easttown Township Police Association ("Union") and Easttown Township ("Township") have agreed to extend their collective bargaining agreement by making the following changes:

1. PREFACE.  The second paragraph of the PREFACE (p. 3) shall be amended to provide as follows:

   On June ____, 2015 such Agreement was again revised and extended by mutual agreement, superseding and replacing as of the effective date hereof, all prior agreements with respect to the subject hereof, for period of fiscal years beginning January 1, 2016 and ending December 31, 2019.

2. WAGES.  The provision on WAGES (p. 17) shall be amended to provide as follows:

   All officers shall receive a basic annual rate, based on an annual rate of pay for patrolman in year four, set forth on the following scale.

   | | |
   |---|---|
   | January 1, 2016: | 94,073.34 = 3.5% |
   | July 1, 2016: | 95,014.07 = 1.0% |
   | January 1, 2017: | 98,339.56 = 3.5% |
   | July 1, 2017: | 99,322.96 = 1.0% |
   | January 1, 2018: | 102,799.26 = 3.5% |
   | July 1, 2018: | 103827.25 = 1.0% |
   | January 1, 2019: | 107461.20 = 3.5% |
   | July 1, 2019: | 108535.81 = 1.0% |

   Patrolman Year 1 ...............70%
   Patrolman Year 2 ...............80%
   Patrolman Year 3 ...............90%
   Patrolman Year 4 ..............100%

Sergeants shall receive annually as a base wage 107% of the base wage of a full patrol officer.  Corporals shall receive annually as a base wage 104.5% of the base wage of a full patrol officer.

3. <u>MEDICAL PREMIUM SAVINGS CHECK</u>:  The Township, as a distribution of a portion of the healthcare premium savings, shall pay to each officer the following amounts:

| | |
|---|---|
| May 2016: | $1,500 |
| November 2016: | $1,400 |
| May 2017: | $1,500 |
| November 2017: | $1,400 |

There shall be no further distributions of this check by the Township after the dates listed above.

4. <u>SPECIAL DETAILS</u>:  The first paragraph of Section 15 (relating to SPECIAL DETAILS) of the Settlement Agreement dated January 1, 2012 to December 31, 2015 shall by removed  The $55/hour rate will be replaced by the previous method of calculation, providing each full time officer with his/her individual detail rate as calculated using COMPENSATION CALCULATIONS (p. 19).

5. <u>HEALTH INSURANCE PREMIUM COSTS</u>:  All new full time officers hired after January 1, 2016 will pay  5% of the monthly premium assessed to the Township on the officer's behalf.

6. <u>POST-RETIREMENT MEDICAL COVERAGE</u>:  All new full time officers hired after January 1, 2016 will be entitled to and receive from the Township benefits set forth in Paragraphs "A" and "C" of the MEDICAL AND DENTAL provision of the contract dated January 1, 2007 to December 31, 2011 (p. 30) when he/she retires.  This benefit will apply to the **member only** (not to the immediate family as stated in the referenced Paragraphs) and will be provided to the member until such time as the member becomes qualified for Medicare benefits provided the retiree has no other such coverage through another employer.

If the member is enrolled in the D.R.O.P. and is actively working, he/she will continue to receive the benefits mentioned above for his/her immediate family as if he/she was an active employee; even though, administratively he/she may be considered retired.

7. <u>REOPENER</u>:  In 2017 the Township will have a report prepared that studies the implications of the Cadillac Tax, the study will be done on all full-time Officers who are covered by the Agreement, if the Township is subject to the tax then the Union shall be given the opportunity to address the overage amount.  The Union may elect to handle the additional burden over the threshold by either making payment in the amount of the excess to the Township or the Union may voluntarily alter the contract in some manner that would remove the excess liability to the Township.  If the Union does not address the excess, then the Township may reopen the contract to bargain for relief from the Tax liability. If an agreement is not reached on such issue within 30 days of the initial demand to reopen the contract pursuant to this provision, either party may demand interest arbitration under the arbitrator selection procedures set forth in Act 111.  The statutory time lines and time periods for demanding negotiation and arbitration under Act 111 shall not be applicable.  Whenever health care costs are projected to exceed the applicable limits for the imposition of such Cadillac Tax or other Healthcare Reform Cost.  Any such arbitration shall be designed so that it is the arbitrator's express duty to award health care benefits that have a value below the "applicable dollar limit or threshold for the imposition of such Cadillac Tax or other Healthcare Reform Cost as described in the Internal Revenue Code of 1986, as amended, or other applicable law.

8. Any provision of the expired agreement not amended above shall remain in effect.


Easttown Township Board of Supervisors

By: _____

Fred Pioggia

Chairman, Board of Supervisors

Easttown Township


By: _____

Dan Fox

Township Manager

Easttown Township


Easttown Township Police Department

By: _____

Joseph Lewis

Union Representative

Easttown Township Police Department

# SETTLEMENT AGREEMENT

Easttown Township Police Association ("Union") and Easttown Township ("Township") have agreed to extend their collective bargaining agreement by mutual agreement by making the following changes, superseding and replacing, as of the effective date hereof, all prior agreements with respect to the subject hereof, for period of fiscal years beginning January 1, 2020 and ending December 31, 2024.

The Amendments are as follows:

**1. WAGES:**

A. SALARY – ANNUAL INCREASE: Four percent

B. SALARY – NEW OFFICERS:

    I. Year One: $55,000.
    II. Year Two: 60% of Base
    III. Year Three: 70% of Base
    IV. Year Four: 80% of Base
    V. Year Five: 90% of Base
    VI. Year Six: 100% of Base

C. RANK DIFFERENTIAL:

    VII. Sergeants shall receive annually as a base wage 110% of the base wage of a full patrol officer.
    VIII. Corporals shall receive annually as a base wage 105% of the base wage of a full patrol officer.
    IX. Detectives shall receive annually as a base wage 105% of the base wage of a full patrol officer.
    X. Traffic Officers shall receive annually as a base wage 105% of the base wage of a full time patrol officer.

**2. LONGEVITY:**

A. All Officers hired after January 01, 2020 will receive longevity payments as follows:

    I. Seven Years: $2,500.
    II. Ten Years: $4,500
    III. Fifteen Years: $6,500
    IV. Twenty Years: $8,500

3.  ACTING IN RANK: After fourteen days of acting in higher rank, an Officer will be compensated at the rate of that rank.

4.  EDUCATION:

    A.  Current Officers: The current provision will remain the same with the exception that the yearly amount will no longer increase and will be capped at $40,000 available per year.

    B.  Officers hired after January 01, 2020:

        I.   There will be no reimbursement for education.
        II.  Officers who have or obtain Bachelor's or Master's Degree while employed will receive a one-time bonus of $1,500 or $2,000 respectively.

5.  HEALTH INSURANCE: Every Officer will pay five percent of their Health Insurance Premium until retirement.

6.  SICK LEAVE: If an Officer leaves for any reason other than retirement they will be reimbursed $52.50 per sick day accumulated.

7.  ALLOWANCES:

    A.  Clothing: Detectives will receive $600 per year

    B.  Boot: Officers will receive $200 per year

8.  CONSOLIDATION OF CONTRACT: The Union and the Township will work together to create a consolidated agreement. Any provision of the expired agreement not amended above shall remain in effect.

Easttown Township Board of Supervisors
Department

By: _____
    By: _____

Betsy Fadem, Chair

Easttown Township Police

Det. Andrew Tritz, Union Representative

Easttown Township

By: _____
Daniel O. Fox, Manager