**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DEVON HORSE SHOW AND | : | Civil Action No. 22-cv-01979 |
| COUNTRY FAIR, INC., | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| EASTTOWN TOWNSHIP, | : | Judge Nitza I. Quinones Alejandro |
| Defendant. | : | |

## <u>ORDER</u>

AND NOW, upon consideration of Defendant, Easttown Township's Motion for
Judgment on the Pleadings and any response thereto, it is hereby ORDERED and DECREED
that the Motion is GRANTED.

Plaintiff's claims are dismissed, with prejudice.


_____
Hon. Nitza I. Quinones Alejandro

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEVON HORSE SHOW AND | : | Civil Action No. 22-cv-01979 |
| COUNTRY FAIR, INC., | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| EASTTOWN TOWNSHIP, | : | Judge Nitza I. Quinones Alejandro |
| Defendant. | : | |

## DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant, Easttown Township ("Easttown Township" or "the Township"), by and through its undersigned counsel, respectfully moves this Honorable Court for the entry of judgment on the pleadings and for the dismissal of all claims asserted against it with prejudice pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The pleadings are closed. Plaintiff lacks any basis to establish a deprivation of the rights to assembly or free speech under the First Amendment of the United States Constitution. The grounds for this Motion are fully set forth in the accompanying Brief in Support of Defendant's Motion, which is incorporated herein by reference as if set forth at length.

Respectfully submitted:

**MacMAIN LEINHAUSER PC**

Dated: August 1, 2022     By:    */s/Stephen G. Rhoads*
David J. MacMain
Attorney I.D. No. 59320
Stephen G. Rhoads
Attorney I.D. No. 47458
433 W. Market Street, Suite 200
West Chester, PA 19382
*Attorneys for Defendant Easttown Township*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DEVON HORSE SHOW AND | : | Civil Action No. 22-cv-01979 |
| COUNTRY FAIR, INC., | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| EASTTOWN TOWNSHIP, | : | Hon. Nitza I. Quinones Alejandro |
| Defendant. | : | |

**DEFENDANT'S BRIEF IN SUPPORT OF**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendant, Easttown Township ("Easttown Township" or "the Township"), by and through its undersigned counsel, respectfully submits this brief in support of its Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## I.   INTRODUCTION AND SUMMARY OF FACTS

This case involves a dispute between the municipality of Easttown Township located in Devon, Chester County, and the Devon Horse Show and Country Fair, Inc. ("DHS") over the extent to which the Township may lawfully regulate the conditions for holding special events on public or private property within the Township which are expected to attract more than 50 people.  Each year, the annual Devon Horse Show and Country Fair routinely draws approximately 120,000 visitors over 11 consecutive days to the intersection of Route 30 and Dorset Road in Devon to witness equestrian events and enjoy a country fair with amusement rides, food and refreshments, and other retail vendors. This results in the need for enhanced police protection, crowd control and traffic management services provided by the Easttown Township Police and Public Works Departments that would not otherwise be required in the absence of the special event. DHS generates approximately $6,000,000 in annual revenues,

mostly from its annual Devon Horse Show and Country Fair. (*See* Doc. 5, Defendant's Answer with Affirmative Defenses at Twenty-Second Affirmative Defense.)

For many years, the Township has required DHS to apply for a special event permit in accordance with its Special Event Ordinance. Without exception, the Township has issued a permit for the event on the express condition that DHS would pay for the additional costs incurred by the Township to provide enhanced police protection, crowd control and traffic management ("support services") necessitated by the event. Each year DHS accepted those terms.

DHS implicitly acknowledges the Township's duty to provide services for police protection, crowd control and traffic management to ensure a safe environment for its many volunteers, sponsors, vendors, competitors, horses, and the families who attend the event, as well as the many Township residents and others inconvenienced by the traffic impacts caused by the event. However, in recent years DHS has questioned the validity of the costs of the Township's services. It has accused the Township of overcharging for its services to subsidize its general budget (*See* Complaint at ¶ 93), which allegations are refuted by the Township's billing documentation which demonstrates that the Township merely passes through to DHS the additional costs it incurs in providing the support services for the special event. (*See* Answer at ¶ 93.) In addition, DHS has sought to negotiate the costs of support services and urged that certain services do not require uniformed police officers at union wages. (*See* Complaint at ¶ 51- ¶ 54.) The Township has remained steadfast in its need to control the manner of providing police support services for the event.

Now, in a transparent attempt to avoid the necessary expenses of conducting its event, by this lawsuit, DHS seeks a declaration that the Township's Special Events Ordinance is both

invalid on its face and unlawful as applied to DHS. DHS seeks to avoid altogether the obligation to pay for municipal support services for which it agreed to pay as a condition of the issuance of a permit for its event. It seeks to recover as damages in this case the $75,000 deposit it paid on May 16, 2022 to secure the necessary support services. DHS also has refused to pay the balance due for services provided in the amount of $14,231.14.

Finally, DHS contends without justifiable basis, let alone mention of any other sponsor of a special event, that Easttown Township "has singled out DHS for unwarranted and unequal treatment and has applied the Special Events Ordinance in a non-uniform and illegal manner" that violates DHS's First Amendment rights to assembly and free speech. (*See* Complaint at Introduction and ¶ 58.)  These contentions are both factually and legally frivolous because DHS has not cited a single instance in which the Township treated DHS differently than other special event sponsor, or charged DHS more than the actual costs of providing services. This is because the Township charges DHS its actual costs incurred to provide the necessary services, just as it does with all other special event sponsors. (*See* Answer at Introduction.)

For the reasons set forth in the Township's Answer, the Township's Special Events Ordinance, on its face, constitutes a reasonable exercise of its police power because it reasonably regulates private conduct which impacts public safety. The Ordinance is narrowly tailored with regard to the time, place and manner of free assembly and speech so as to serve the Township's legitimate and substantial interests of ensuring public safety, crowd control and traffic management while still allowing the event to take place under controlled conditions. The Ordinance is content-neutral on its face since it does not dictate different treatment, permit fees or costs for different types of assembly or speech. It does not tie its fees or the costs of providing support services to the *content of the message* of the event sponsor. The Ordinance promotes the

Township's substantial governmental interest in maintaining a safe environment for special events conducted within the Township that attract many more visitors, and traffic, than would otherwise occur in the absence of a special event. For these reasons, the Ordinance is valid on its face, a determination the Court can make based on the pleadings without the need for discovery.

In addition, the Court can determine based on the pleadings that the Ordinance is uniformly applied to both DHS and other special event sponsors in the Township, including schools requiring crowd management and traffic control services for events and special assemblies. The Township's Answer provides that, like DHS, all other special event sponsors are also required to obtain a special event permit and pay the Township's actual costs of providing the necessary police support services as a condition of issuance of the special event permit. Because DHS has failed to identify any other special event sponsor who has been treated differently (i.e., more favorably) than DHS, the Court may find that the Complaint fails to state a claim for violation of equal protection under the Fourteenth Amendment.

Lastly, DHS contends that the Township's alleged practice of overcharging for its support services constitutes a "tax" in violation of the Pennsylvania Constitution. This, too, is a frivolous claim because as the Township's Answer demonstrates, the actual costs incurred by the Township to provide support services are passed through to the event sponsor at cost.

Historically, DHS and Easttown Township have enjoyed a cooperative approach to staffing special events held at the DHS show grounds. However, more recently a new DHS Board of Directors has unfairly accused the Township of overcharging for its police services, attempted to dictate how the Township should perform its duty to protect the public, and elected to litigate what is otherwise a well-established right of a municipality to regulate special events which impact public safety and charge the event sponsor the actual cost of providing its services.

4

(*See* Answer at ¶ 58-59.)  DHS should not be permitted to obtain the value of Easttown

Township's special event police support services without paying the actual cost of those services

which otherwise will be borne by Township residents.

The pleadings are closed. The Court may now determine as a matter of law on the basis

of the Complaint and Answer, together with their accompanying exhibits, that DHS lacks a

factual basis sufficient to establish the violation of any protected right, whether it be to assemble

for a commercial activity such as the Devon Horse Show and Country Fair, or to speak freely, as

guaranteed by the First Amendment. Similarly, unlike the many other cases interpreting the

contours of the right to free expression under the First Amendment, the Court may determine

here that DHS has failed to establish that there is any sort of protected speech implicated by the

Ordinance or the Township's application of the Ordinance to its special events. Accordingly,

DHS cannot prevail on a First Amendment claim under any set of circumstances and the

Township is entitled to the entry of judgment on the pleadings.

## II.     <u>PROCEDURAL HISTORY</u>

DHS filed its Complaint in the Chester County Court of Common Pleas on April 22,

2022 alleging that Easttown Township violated its civil rights under 42 U.S.C. § 1983. (*See* Doc.

No. 1.) On May 19, 2023, Easttown Township filed its Notice of Removal, thereby removing the

action to this Court on the basis of federal question jurisdiction, namely 42 U.S.C. § 1983.

Pursuant to a stipulation of the parties extending the date for the Township's response, Easttown

Township then filed its Answer with Affirmative Defenses on June 10, 2023. (*See* Doc. No. 5.)

Although the parties have exchanged Initial Disclosures and submitted a proposed Joint

Discovery Plan, a Pretrial Conference has not yet been scheduled. No deadlines have been set for

the case and no trial date has been scheduled.

### III.    <u>STANDARD OF REVIEW</u>

Motions for judgment on the pleadings are governed by Rule 12(c) of the Federal Rules of Civil Procedure, which provides that such a motion may be filed once the pleadings are closed and "within such time as to not delay the trial."

The standard of review is identical to that of a motion to dismiss under Rule 12(b)(6), which concerns a failure to state a claim upon which relief can be granted. *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). The only difference is that in a motion for judgment on the pleadings, the court may review not only the complaint, but also the answer and any written instruments and exhibits attached to the pleadings. *See Phillips v. Transunion*, No. 12-cv-1058, 2012 U.S. Dist. LEXIS 58750, 2012 WL 1439088, at *3 (E.D. Pa. Apr. 25, 2012) (Surrick, J.) (*citing* S*prague v. Neil*, No. 05-cv-1605, 2007 U.S. Dist. LEXIS 77767, 2007 WL 3085604, at *2 (M.D. Pa. Oct. 19, 2007)).

To survive a motion to dismiss under Fed. R. Civ. P. 12, a plaintiff must plead facts sufficient "to raise a right to relief above the speculative level on the assumption that all facts alleged in the complaint are true." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). A complaint must contain factually plausible averments that the alleged wrongdoing occurred and that there is "more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

The Court of Appeals for the Third Circuit has established a three-step process for the Court to evaluate a motion to dismiss for failure to state a claim under the standards enunciated by the Supreme Court in *Twombly* and *Iqbal*. *Hassen v. Gov't of Virgin Islands*, 861 F.3d 108,

115 (3d Cir. 2017). First, the Court must outline the elements a plaintiff must plead to state a claim for relief. *Id.* Second, the Court must peel away allegations that are no more than conclusions, which are not entitled to the assumption of truth. *Id.* Third, the Court must review well-pled factual allegations, assume their veracity, and proceed to determine whether they could plausibly support an entitlement to relief. *Id.*

Where the complaint contains only generalized averments of wrongdoing "without some further factual enhancement" it "stops short of the line between possibility and plausibility" of entitlement to relief. *Twombly*, 550 U.S. at 554. A complaint that "fails to present factually plausible claims or which presents claims that are foreclosed as a matter of law should be dismissed." *Iqbal,* 556 U.S. at 678.

As discussed below, the Complaint fails to allege any plausible facts to substantiate the conclusory allegation that (1) the Ordinance is facially invalid, (2) the Ordinance is applied by the Township in a non-uniform and discriminatory manner that deprives DHS of its First Amendment right to assembly and speech, and (3) the Township's method of assessing the costs of support services provided for special events constitutes a "tax" in excess of the actual costs paid out by the Township. Rather, the well-pleaded allegations of the Complaint and Answer demonstrate that DHS's claims are frivolous as a matter of law, and arise from a simple commercial dispute.

## IV.    STATEMENT OF QUESTIONS PRESENTED

A.    Whether Easttown Township is entitled to entry of judgment on the pleadings on Count I of the Complaint because the Township's Special Events Ordinance is content-neutral, and therefore, a facially valid regulation of assembly and speech as to time, place and manner?

Suggested Answer:  Yes.

B.      Whether Easttown Township is entitled to entry of judgment on the pleadings on Count II of the Complaint because the Township uniformly applies its Special Events Ordinance to all sponsors of special events, including DHS?

Suggested Answer:  Yes.

C.      Whether Easttown Township is entitled to entry of judgment on the pleadings on Count III of the Complaint because the costs charged by the Township represent the actual costs incurred by the Township to provide support services required to maintain public safety as a result of the special event, and therefore, is not a "tax" upon DHS?

Suggested Answer:  Yes.

## V.      LEGAL ARGUMENT

### A.      Easttown Township is entitled to entry of judgment on the pleadings on Count I of the Complaint because the Township's Special Events Ordinance is content-neutral, and therefore, a facially valid regulation of assembly and speech as to time, place and manner.

The Township's Special Events Ordinance ("the Ordinance"), a copy of which is attached to the Complaint as Exhibit B (See Doc. 2-1), regulates the conduct of special events conducted in the Township. The Ordinance requires the sponsor of such events to submit an Application for a permit for such a function, detailing the sponsor's contact information, the dates, times and purpose for the proposed event, and the estimated attendance. The sponsor agrees to assume responsibility for all "standard conditions" stated on the Application, including complying with all state and federal laws and requirements of local ordinances, maintaining liability insurance throughout the duration of the event, and satisfying all conditions of permit approval, including paying a security deposit for the support services which the Township may deem necessary to maintain public safety, no later than ten days before the event commences.

The Ordinance defines a Special Event as:

"*A preplanned single event or series of events that, because of its nature, interest, location, promotion or any combination of similar influences, is expected to draw a large number of persons, proposed to be held on public property, or on private property but impacting public property or roadways, and/or requiring the use of public support services. "Special event" shall include, but not be limited to, races, festivals, shows, neighborhood celebrations, public events which are privately sponsored but open to the public, or similar activities generally considered to be recreational in nature. The term shall not include normal operations, activities or affairs of any duly established municipal, recreational or religious organization or institutions located in the Township, an event whose estimated total attendance of all participants is anticipated to be less than 50 people, or to any community event.*"

A "community event" is defined as:

"*Any public event officially sponsored or officially organized by the Township from time to time.*"

The term "support services" is defined as:

"*Those services which can or must be provided by the Township to ensure that an event is conducted in such a manner as to protect the rights, safety, health, property and general welfare of its citizens.  This includes but is not limited to fire protection, police protection, crowd management and control, traffic management and solid waste management.*"

The Ordinance vests the Township Manager with authority to review an Application for Special Permit and to seek input from the Police Chief, Fire Chief, Public Works Director and Codes Director as may be appropriate under the circumstances to approve or disapprove the Application. (*See* Ordinance at § 382-4 A-D.) The Ordinance also provides that the Township personnel shall review, evaluate and estimate the cost of the support services required for the event that will be charged to the sponsor. (*Id.* at § 382-4 E.) The Township Manager has discretion to waive certain conditions if determined to be in the best interests of the Township. (*Id.* at § 382-4 E.) The Township Manager or his designee may require additional conditions not mentioned in the Ordinance "as may be necessary to maintain peace and order or to protect the health, safety and general welfare of the citizens of the Township or any neighboring property."

(*Id.* at § 382-4 G.) The Township Manager then notifies the sponsor of the Township's decision on the Application, including if approved, the costs and/or conditions attached to the approval. (*Id.* at § 382-5.)

The Ordinance allows a sponsor to conduct up to four special events per calendar year. Of significance to this case, the Ordinance provides that a single special event may last up to eleven consecutive calendar days and still be considered a single event. (*Id.* at § 382-6 F.) Given that the Devon Horse Show and Country Fair has traditionally lasted eleven consecutive days, this provision was included to specifically recognize DHS's annual Devon Horse Show and Country Fair as a special event.

The Ordinance specifically requires the sponsor to pay the costs incurred by the Township in providing the required support services associated with the special event as a condition of conducting the event. Payment must be made to the Township no later than ten days prior to the special event. (*Id.* at § 382-7 B.) For estimated costs in excess of $7,500, the full amount of the Township's estimate must be paid in cash or a bond in a form acceptable to the Township. (*Id.* at § 382-6 B, C.) The Ordinance further provides that at the close of the special event, the actual cost of the support services shall be calculated, and after receipt of an itemized bill from the Township, either additional payment made to the Township within five days or the excess released to the sponsor at the next regularly scheduled meeting of the Board of Supervisors. (*Id.* at § 382-6 and § 382-7 E.)

§ 382-9 of the Ordinance provides a process of appeal for a sponsor who "contests a permit condition" imposed by the Township Manager, including the amount of deposit required for support services. This process involves an appeal to the Board of Supervisors within 15 days

of the sponsor's receipt of notice of the contested condition. Following a hearing, the Board may either uphold or remove the contested condition.

Lastly, the Ordinance requires that to the extent support services required by a special event permit may involve police services, the Easttown Township Police Chief is required to "keep an accurate record of all hours worked by all officers, and extra compensation shall be paid to each officer for all time worked beyond regularly scheduled tour of duty." *Id.* at § 382-11.

> **1.    The Ordinance is valid on its face because it does not tie the issuance of a special event permit, or the special conditions for issuance of the permit, to the content or message of the proposed event**.

The Ordinance is facially valid because it does not contain provisions authorizing the Township Manager or his designees to approve or deny a permit, or impose special conditions with respect to any permit, on the basis of the content of the speech anticipated to occur at the proposed event. The United States Supreme Court has defined the contours of this issue such that the law is well settled in favor of Easttown Township's position. The Ordinance does not violate DHS's First Amendment right to assemble or speak freely.

The Supreme Court has held that local ordinances regulating the conduct of special events without regard for the content or message of the speech anticipated at such events constitutes a reasonable regulation of the place and manner of protected speech under the First Amendment. *Thomas v. Chicago Park District*, 534 U.S. 316 (2002); *Ward v. Rock Against Racism*, 491 U.S. 781 (1989). In *Ward*, a New York City regulation concerning the use of the city-owned amphitheater in Central Park required performers to use a City-owned sound system and City-employed sound engineer to control sound volume. The regulation was valid as a reasonable regulation of the place and manner of expression because it was content-neutral and

narrowly tailored to serve the City's legitimate public interest in protecting citizens from unwelcome noise levels.

By contrast, three years after *Ward* was decided, in *Forsyth County v. Nationalist Movement*, 505 U.S. 123 (1992), the Supreme Court struck down a county ordinance that permitted county officials to adjust the cost of permits for parades, assemblies, demonstrations, road closings and other uses of public property and roads based on the message of the anticipated speech without providing procedural safeguards. In a case involving anticipated hate speech at a rally, the Court held that regulations which allow the government to discriminate on the basis of the content of the message violate the First Amendment and declared the ordinance invalid.

The Township's Special Event Ordinance at issue in the present case is not comparable to the one in the *Forsyth County* case because it does not permit the adjustment of application fees or costs for special services based upon the nature of the anticipated speech to be delivered at the event. Rather, it involves only an assessment of costs incurred by the Township caused by the event, in this case, the costs incurred for police protection, crowd control and traffic management services which would not be required in the absence of the event.

In *Thomas v. Chicago Park District*, 534 U.S. 316 (2002), a case involving a Chicago city ordinance governing the issuance of permits to hold public rallies (and in this case, rallies advocating for the legalization of marijuana), the Court held that the permitting process at issue was not subject-matter censorship but rather constituted a content-neutral time, place and manner regulation of the use of a public forum. The Court specifically held that none of the City's reasons for denying permits (while also granting others to the same applicant) had anything to do with the content of speech, but rather was directed to all activity in the park. In finding the permitting ordinance facially valid, the Court acknowledged that the object of the City's permit

12

system was to "coordinate multiple uses of limited space, to assure preservation of the park facilities, to prevent uses that are dangerous, unlawful, or impermissible under the Park District's rules, and to assure financial accountability for damage caused by the event."

As in *Ward* and *Thomas*, the Township's Ordinance is facially valid because it constitutes a reasonable regulation of the place and manner of assembly and expression that is content-neutral and narrowly tailored to serve the Township's legitimate public interest in protecting all citizens from security risks, unmanaged pedestrian crowds and excessive vehicular traffic with limited parking, all of which exist because a large number of people (in this case an estimated 120,000 over eleven days) are drawn to a densely populated suburban area by the event sponsor (DHS). There is nothing about the Ordinance which arguably renders it an unconstitutional restriction of speech.[1]

A municipal ordinance may be held invalid on its face if it gives unbridled discretion to a municipal officer to grant or reject a permit application. *Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750 (1988). (Ordinance held unconstitutional because it gave the mayor boundless discretion to determine whether to grant a permit application without any right of appeal.) The Ordinance in the present case only gives the Township Manager discretion to waive certain conditions determined to be in the Township's best interest. It does not give him discretion to deny a permit for any or no reason, which was the case with the *Lakewood* ordinance. The Ordinance also gives the permittee the right of appeal of the Township Manager's decision both

---

[1] The Complaint is utterly lacking in any reference to the nature of the speech DHS asserts is threatened by the Ordinance. The Court may take notice that based upon the website of the Devon Horse Show and Country Fair, the event does not involve speech concerning issues of political, religious or social dialogue. (*See* www.devonhorseshow.net)

with respect to the denial of a permit or the imposition of a condition of the issued permit. Therefore, the Township's Ordinance is not invalid on its face.

Despite citing the cases discussed above in its Complaint as establishing the controlling test for facial validity of a municipal ordinance, DHS has failed to allege any fact which, if true, would support the contention that the Ordinance enables the Township to approve or deny a permit, or impose special conditions on the issuance of a permit, on the basis of the content of the anticipated speech at the event or DHS's right to assemble at its fabled Horse Show Grounds in Devon. Unlike cases involving rallies or marches with social or political speech, it borders on the absurd to suggest that the conduct of an equestrian competition with its traditional country fair gives rise to any allegation of suppressed or restricted speech. DHS fails to allege any content or message that is protected by the First Amendment. Rather, at stake is simply a commercial activity, the Devon Horse Show and Country Fair, from which DHS earns some $6,000,000 in revenue and less than 10% of which it donates to Bryn Mawr Hospital. The only message one can reasonably take from the Complaint is that DHS seeks to shift to the citizens of Easttown Township the cost of protecting the public from risks necessarily caused by its event. (*See* Answer at ¶ 21 and ¶ 27). As the Township's Answer made clear, the Township already absorbed approximately $10,000 in extra police costs during the DHS events in 2017-2019 and should not have to underwrite DHS's fund-raising event. (*See* Complaint at ¶ 58.)

For these reasons, it is clear that the Ordinance is facially valid and not subject to challenge on the grounds that it violates DHS's First Amendment rights to assembly and free speech. Accordingly, the Court should enter judgment in favor of the Township on Count I of the Complaint.

**B.     Easttown Township is entitled to entry of judgment on the pleadings on Count II of the Complaint because the Complaint fails to allege facts sufficient to establish that the Township applies its Special Events Ordinance in a non-uniform and/or discriminatory manner or that the Township's <u>enforcement of the Ordinance violates DHS's First Amendment rights.</u>**

The Complaint alleges at Count II that the Township applies its Special Events Ordinance in a non-uniform and discriminatory manner because it allegedly assesses DHS for costs incurred to provide police support services in excess of the actual cost of providing those services for DHS's Devon Horse Show and Country Fair. DHS also contends in conclusory and speculative terms that the Township singles it out for disparate treatment, however, it fails to allege the existence of any other sponsor who received more favorable treatment with regard to the issuance of a special event permit or the costs assessed for support services required by the event. Because the Complaint fails to allege facts to support its bald and conclusory allegations of disparate application of the Ordinance, the Township is entitled to the entry of judgment on Count II.

In order to evaluate the sufficiency of DHS's claims of disparate treatment under *Twombly* and *Iqbal*, the Court must consider the following chronology of well-pleaded facts which are alleged in the Complaint and/or the Township's Answer. These facts demonstrate that the Township did not apply the Ordinance in a non-uniform or discriminatory manner, but rather applied it uniformly in accordance with its terms, and exercised proper discretion, as the Ordinance allows, to waive certain conditions in an effort to reach accommodation on disputed issues so as to allow the event to proceed as scheduled. The well-pleaded allegations also demonstrate that there are no facts to support the contention that the Township has treated other sponsors of special events more favorably than DHS.

The 2022 Devon Horse Show and Country Fair was scheduled to begin on May 26, 2022 and conclude on June 5, 2023.  (*See* DHS's Application for Special Event Permit attached to Complaint at Exhibit B, Doc. 2-1.) DHS submitted its Application for Special Event on January 18, 2022. *Id.* The Township reviewed the Application and had various discussions with DHS representatives about the details of the event, given that the event had been cancelled in 2020 and 2021 due to the Pandemic. (*See* Answer at Eighteenth Affirmative Defense, Doc. 5.) On March 22, 2022, the Township approved the Application and issued its permit for the eleven-day event. (*See* DHS's Application.)

In accordance with § 382-7 B of the Ordinance, as a special condition of issuance of the permit, DHS was required submit to the Township the sum of $130,000 as a deposit to secure the required police support services. (*See* Special Event Permit attached as Exhibit B to the Complaint, Doc. 2-1.) This sum was based upon the Township's *preliminary* estimate of the cost of police and public works services for the event as proposed by DHS. That payment was due by no later than April 29, 2022. *Id.* In accordance with § 382-7 E of the Ordinance, the permit informed DHS that within thirty days of the end of the event, the Township would calculate the actual costs incurred and notify DHS with an itemized list of charges upon which the parties would settle up, either by the Township refunding the difference (in the event the actual costs were less than the deposit paid) or DHS making an additional payment (in the event the actual costs were greater than the deposit paid). *Id.*

As detailed in the Complaint, beginning in late March 2022, DHS inquired through counsel regarding how the Township's $130,000 cost estimate was prepared. In response, the Township reviewed its duty assignments for the event and issued a *revised* estimate in the amount of $110,803.18, approximately $20,000 less than the original deposit of $130,000. On

16

March 30, 2022, the Township's solicitor provided a detailed breakdown of the wages paid for police coverage for the horse show duty details, and even provided a comparison to the cost structure used by neighboring police departments in Willistown and Tredyffrin Townships which revealed that Easttown Township's wages were the lowest of the three. (*See* Answer at Twenty-fourth Affirmative Defense.) DHS's counsel refused to accept the Township's calculations or pay any amount towards the deposit. (*See* Answer at Twentieth Affirmative Defense.)

On April 8, 2022, Easttown Township informed DHS that it had *further reduced the estimate* to $99,070.64 after discovering that its previous estimates mistakenly included hours devoted to patrolling a neighboring retail parking area during the Show. DHS did not agree to this revised deposit but rather continued to challenge the Township's cost assumptions. The Township solicitor explained that in the years 2017 through 2019 when the parties agreed to a flat fee of $75,000 per year, the Township actually spent between $84,504 and $96,715 on support services each year. The citizens of Easttown Township absorbed the difference of approximately $10,000 in each of those years. (*See* Answer at ¶ 21.)

Despite the Township's reduction of the required deposit to a figure comparable to the actual costs incurred in the last year of the Devon Horse Show and Country Fair (2019), DHS contended that the Township's costs were "illegally and unreasonably inflated" because they included wages negotiated in a Collective Bargaining Agreement ("CBA") with the police union. DHS contended without factual basis that the Township assesses excessive costs upon it in order to fund its obligations under the CBA. (*See* Complaint at ¶ 68.) DHS also complained that the Township overcharged it for support services because the Township used uniformed full-time Township police officers with overtime wages averaging approximately $100 per hour, including benefits and FICA, to staff the crowd control and traffic management duties rather than utilize

17

less costly alternatives, such as local fire police or private security services. DHS argued that its

event did not necessitate the use of full-time uniformed police officers. (*See* Complaint at ¶ 54.)[2]

Rather than pursue an appeal of the stated special conditions of the permit pursuant to the

process provided in § 382-9 of the Ordinance, DHS failed to tender payment of any amount

towards the required deposit and instead filed its Complaint on April 22, 2022. (See Doc. 2)

The Township exercised its discretion to extend the deadline for paying the required deposit by

the stated deadline of April 29, 2022. On May 16, 2022, just ten days before the event was

scheduled to begin, the parties ultimately agreed that DHS would pay a deposit in the amount of

$75,000 to secure the Township's services with the balance due to be determined after a

calculation of actual costs following the event. After the event, the Township calculated its actual

costs incurred for support services at $89,231.14 and issued a final invoice to DHS. To date,

DHS has refused to pay the difference owed in the amount of $14,231.14.

Under *Twombly* and *Iqbal*, DHS must allege facts sufficient to allow the Court to

determine that the alleged deprivation of rights is not only "possible" but "plausible." The Court

may determine from the Complaint and Answer that there is no plausible basis for finding that

the Township applied its Ordinance in a non-uniform manner or otherwise treated DHS in a

disparate manner with regard to the process of charging for police support services. To the

---

[2] Ignoring the existence of a lawful Special Events Ordinance, DHS also argued that the Township had an obligation to provide police protection for its special event regardless of the permit since the event occurred within the Township. DHS even took the position that its eleven-day signature event is not really a "special event at all" because it occurs every year and therefore is part of its normal operations which do not require a special permit. This, of course, ignores what actually occurs when the Devon Horse Show and Country Fair transforms the intersection of Route 30 and Dorset Road in Devon into a traffic and pedestrian scene comparable to a major league sporting event in South Philadelphia. DHS's event is anything but "normal operations."

contrary, the Court may find that DHS has failed to comply with reasonable restrictions which a municipality is permitted to impose to further its important governmental interest in protecting public safety as it relates to the conduct of special events in the Township. Therefore, the Township is entitled to entry of judgment on the pleadings with respect to Count II of the Complaint.

> **C.  Easttown Township is entitled to entry of judgment on the pleadings on Count III of the Complaint because the Township charges DHS the actual costs it incurs to provide support services required to maintain public safety as a result of the special event, and therefore, such charges are not a "tax" upon DHS.**

Count III of the Complaint alleges that the Ordinance establishes a "tax" on DHS simply because it requires DHS, the special event permitee, to pay for police and public works support services which the Township deems necessary to protect public safety due to traffic and crowds drawn to the special event. It is well settled that a municipality may require a special event permitee to pay the costs incurred by the municipality to provide public services which would not otherwise be needed in the absence of the special event. *See Thomas* and *Ward*, *supra*. This reasoning is based upon the fact that the special event sponsor, by having the event, is creating the need for additional public services. It would be unfair to expect the taxpayers of the municipality to bear the extra expense. For this reason, municipalities typically codify in an ordinance those policies and procedures established for shifting such costs to the special event sponsor, as the Township did in this case.

If the Township were to charge DHS amounts *in excess of* what the Township actually paid to its police and public works employees to provide the support services, then DHS could argue that the Township's process constitutes a "tax." However, as the Township has made clear in its Answer, and as the text of the Ordinance confirms, the Ordinance requires the Township to

19

provide the special event sponsor with an itemized invoice detailing the charges to be paid by the sponsor. The Court may take notice that the Township provides DHS with such an itemized invoice which demonstrates that it only charges DHS for the actual costs incurred by the Township in providing the services at issue. (*See* Answer at ¶ 88 - ¶ 92.)

While DHS may contest the Township's choices in using only uniformed police officers at overtime union wages (rather than other less costly alternatives), and distrust the Township's accounting of those hours charged, it is not entitled to pursue a claim that the costs passed on to DHS exceed the Township's actual costs incurred. Here again, DHS's conclusory and unsubstantiated allegation that the Township charges costs in excess of what it actually incurs subjects the claim to dismissal under *Twombly*. DHS must allege facts which tend to make the conclusory allegations "plausible" and not just "possible." It is not plausible to assert that the Township charges DHS costs in excess of its actual cost of providing the services when the Township provides a detailed and itemized invoice to account for those costs. The Township respectfully submits that DHS's strained portrayal of the facts, which facts are well documented by the Permit and Application attached to the Complaint, subjects Count III to dismissal.

## VI.    <u>CONCLUSION</u>

For all of the foregoing reasons, upon review of the pleadings, each count of the Complaint must be dismissed for failure to state a claim upon which relief may be granted.

Respectfully submitted:

**MacMAIN LEINHAUSER PC**

Dated: August 1, 2022         By:     */s/ Stephen G. Rhoads*

David J. MacMain
Stephen G. Rhoads
Attorney ID Nos. 59320/47458
433 W. Market Street
West Chester, PA 19382
484-318-7703
*Attorneys for Defendant Easttown Township*

21

## CERTIFICATE OF SERVICE

I, Stephen G. Rhoads, hereby certify that on this day I caused to be served a copy of the foregoing Motion for Judgment on the Pleadings with accompanying brief in support and proposed order upon the following counsel of record via the ECF system and by email:

James Sargent, Jr., Esq.
Vince Donahue, Esq.
Lamb McErlane, P.C.
24 E. Market Street
PO Box 565
West Chester, PA 19381
jsargent@lambmcerlane.com
vdonohue@lambmcerlane.com
*Attorneys for Plaintiffs*

**MacMAIN LEINHAUSER PC**

Dated: August 1, 2022          By:     */s/ Stephen G. Rhoads*
David J. MacMain
Attorney I.D. No. 59320
Stephen G. Rhoads
Attorney I.D. No. 47458
433 W. Market Street, Suite 200
West Chester, PA 19382
*Attorneys for Defendant Easttown Township*