# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEVON HORSE SHOW AND** | : | **CIVIL ACTION** |
| **COUNTRY FAIR, INC.,** | : | |
| *Plaintiff* | : | |
| | : | **NO. 22-1979** |
| **v.** | : | |
| | : | |
| **EASTTOWN TOWNSHIP,** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                    OCTOBER 9, 2024

# MEMORANDUM OPINION

## INTRODUCTION

Plaintiff Devon Horse Show and Country Fair, Inc. ("Plaintiff" or "Devon") commenced this civil action against Defendant Easttown Township ("Defendant" or the "Township") averring claims arising from a dispute over the Township's "Special Events" ordinance, codified at Chapter 382 of the Code of Easttown Township (the "Ordinance"). In this action, Devon asserts both a facial and as applied challenge to the Ordinance under the First Amendment to the United States Constitution and 42 U.S.C. § 1983 (Counts I and II), and a challenge to the Ordinance under the Uniformity Clause of the Pennsylvania Constitution (Count III). Devon's claims are premised on what it contends are exorbitant, unreasonable, and unconstitutional fees assessed by the Township as a condition for the issuance of a special event permit to Devon for its annual Devon Horse Show and Country Fair.

Presently, before this Court are the parties' cross-motions for summary judgment filed pursuant to Federal Rule of Civil Procedure 56, seeking judgment in each party's respective favor on all three counts of Devon's complaint. The issues presented in the motions are fully briefed and, therefore, are ripe for disposition. For the reasons set forth herein, Plaintiff's motion is

granted and Defendant's motion is denied with respect to Count I, and the parties' motions are both denied as to Counts II and III.

## BACKGROUND

When ruling on a motion for summary judgment, a court must consider all record evidence and the supported relevant facts in the light most favorable to the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011). The facts relevant to the underlying motions are summarized as follows:[1]

Devon is a non-profit corporation that hosts the annual Devon Horse Show and Country Fair (the "Devon Horse Show") on privately owned property situated primarily in Easttown Township, a municipality in Chester County, Pennsylvania. The Devon Horse Show, which has existed since 1896, is the oldest outdoor multi-breed horse show in North America and enjoys international prestige. The Devon Horse Show is held over eleven days beginning on the Thursday before Memorial Day and ending on the Sunday after Memorial Day.

The Devon Horse Show is generally comprised of two separate attractions: (1) a series of equestrian competitions and exhibitions; and (2) a "Country Fair," which features amusement rides and games primarily catering to families with young children, and various booths for retail goods, art sales, and food and beverage service. The Devon Horse Show attracts significant numbers of spectators between the hours of 11:00 am and 10:00 pm. In 2023, the average attendance was approximately 8,600 per day.

The Devon Horse Show is Devon's principal annual event and primary opportunity to promote, encourage, and educate audiences about equestrian activities. It is also Devon's primary vehicle for raising funds for its primary beneficiary, the Bryn Mawr Hospital, to which Devon has contributed over $18 million in the last twenty years.

The Township enacted the Ordinance at issue in 1959.[2] Pursuant to the Ordinance, special event organizers, like Devon, are required to apply for and

---

[1]     These facts are taken from the parties' briefs, exhibits, and statements of facts. To the extent that any fact is disputed, such dispute will be noted and, if material, will be construed in the non-movant's favor pursuant to Rule 56. Though both parties are movants, the parties' motions are addressed separately, and the Court construes disputed material facts accordingly.

[2]     The Ordinance provides, in relevant part, as follows:

**SPECIAL EVENTS**

### § 382-1. Definitions.

For the purpose of this chapter, the following terms shall have the following meanings indicated:

COMMUNITY EVENT—Any public event officially sponsored or officially organized by the Township from time to time.

SPECIAL EVENT—A preplanned single event or series of events that, because of its nature, interest, location, promotion or any combination of similar influences, is expected to draw a large number of persons, proposed to be held on public property, or on private property but impacting public property or roadways, and/or requiring the use of public support services. "Special event" shall include, but not be limited to, races, festivals, shows, neighborhood celebrations, public events which are privately sponsored but open to the public, or similar activities generally considered to be recreational in nature. The term shall not include the normal operations, activities or affairs of any duly established municipal, recreational or religious organization or institutions located in the Township, an event whose estimated total attendance of all participants is anticipated to be less than 50 people, or to any community event.

SPONSOR—The person, group, corporation or other entity responsible for organizing the event.

SUPPORT SERVICES—Those services which can or must be provided by the Township to ensure that an event is conducted in such a manner as to protect the rights, safety, health, property and general welfare of its citizens. This includes but is not limited to fire protection, police protection, crowd management and control, traffic management and solid waste management.

### § 382-2. Permit required.

No sponsor, person, association, firm, corporation, or other entity shall conduct any special event or community event in Easttown Township without first having obtained a permit from the Township.

### § 382-3. Application for permit.

A.      The Township shall develop an application for a special event or community event permit. The Township application for a permit for a special event or community event shall be submitted by the sponsor to the Township Manager or his designee no less than 30 days prior to the special event or community event. If the special event is planned to be marketed and promoted, the sponsor should submit the application well in advance to ensure that the special

event receives the required approvals.

B.      The Township Manager or his designee may waive the requirement of 30 days' advance notice for spontaneous special events or community events for celebrations important to the Township, the Commonwealth of Pennsylvania and the nation, including but not limited to the celebration of local sports teams and the end of wars or other conflicts of national significance. The Township Manager or his designee may waive the requirement of 30 days' advance notice if there are circumstances unique to the sponsor which justify the waiver to assure the public safety and welfare of the Township or the Township's best interest.

C.      The application shall be further accompanied by such other information as may be required by the Township Manager or his designee.

### §382-4. Application review.

A.      Township review of the application is to provide a mechanism which will allow the Township to plan, evaluate and coordinate any special event or community event, which will allow the establishment of terms and conditions within which the event may be conducted and will allow the sponsor or any involved event planner to plan and manage the event within the context of the established terms and conditions.

B.      Township review of special events and community events shall involve input from the following personnel:

(1) Township Manager.

(2) Police Chief.

(3) Fire Chief.

(4) Public Works Director.

(5) Codes Director.

C.      Additional Township personnel may be involved at the discretion of the Township Manager or his designee. The Township Manager or his designee may waive review by any of the listed Township officials.

D.     The personnel participating in the Township review of the special event or community event are charged with the responsibility of reviewing, evaluating and recommending to the Township Manager or his designee the approval/disapproval of any special event or community event on its own merits.

E.     In reviewing a proposed special event or community event, personnel shall also review, evaluate and estimate the cost of the support services required for the community event or, in the case of a special event, the cost of the support services that will be charged to the sponsor. The personnel may also recommend to the Township Manager or his designee that costs or any portion of the costs be waived if such a waiver is in the best interest of the Township. Township review will involve consideration of various criteria and factors, including but not limited to the following:

(1) Is the proposed event considered desirable for the Township?

(2) Does the Township have the ability to provide, if needed, the required support services regardless of who bears the cost?

(3) Does the proposed event adversely affect the normal and necessary functions of the support services to the Township?

(4) Does the proposed event conflict with any other proposed events or activities?

F.     The personnel conducting the Township review shall recommend either approval or disapproval of a proposed special event or community event, submit the conditions required if approved and submit an estimate of costs of support services and any other related issues to the Township Manager or his designee in a timely manner so as not to delay the planning process.

G.     The Township Manager or his designee may require additional conditions not herein mentioned as may be necessary to maintain peace and order or to protect the health, safety and general welfare of the citizens of the Township or any neighboring property.

H.     Final approval of a permit for the community event or special event proposed along with all costs and conditions attached shall be made by the Township Manager or his designee, except those applications which require street closures; then, in such case, final

approval shall be by the Township Board of Supervisors at a public meeting of the Township Board of Supervisors.

### § 382-5. Notification of decision on application.

The Township Manager or his designee shall notify the sponsor of a special event within five days of the final decision. If the notification is an approval, it shall include any costs and/or conditions attached to the approval. If the notification is a denial, it shall include the reasons for denial.

### § 382-6. Regulation and requirements.

A.  Approval to conduct a special event or community event by this process does not relieve the sponsor or any participants, including but not limited to peddlers, vendors, or exhibitors, from the responsibilities of applying for any other permits or licenses, complying with federal or state law, or meeting any other requirements of the Township's ordinances that may be applicable.

B.  All events shall obtain liability insurance in the amount denoted on the application, which may change from time to time, with the Township named as an additional insured, or a larger amount in the discretion of the Township. The insurance shall satisfy all insurance requirements for the Township for holding the special event. The insurance policy may be subject to the review and approval of the Township Solicitor.

C.  All required permits, licenses, security deposits, fees, insurance policies or any other conditions of the permit so indicated on the permit shall be obtained no later than 10 days prior to the special event.

D.  The sponsor holding the special event shall be responsible to the Township for damages sustained to Township property caused by participants in the special event. Such additional costs and expenses shall be paid to the Township by the sponsor within five days of receipt of a bill.

E.  The sponsor holding the special event shall be responsible to the Township for damages sustained to Township property caused by participants in the special event. The sponsor shall also be responsible for the cost of any support services required, at the sole discretion of the Township, to address specific unanticipated

6

circumstances occurring at the special event related to larger crowd numbers than projected by the sponsor, or where the nature of the special event is not consistent with the event as applied for by the sponsor. Such unanticipated circumstances may include, but are not limited to, crowd control and emergency response. Such additional costs and expenses shall be paid to the Township by the sponsor within five days of receipt of a bill.

F.      Sponsors shall be limited to maximum of four special events per calendar year. A special event may last up to 11 consecutive calendar days and still be considered as a single special event. Any additional consecutive days after the eleventh day shall each be considered a separate special event.

G.      All regulations and/or requirements set forth in this chapter related to events may be waived or adjusted for community events at the discretion of the Township Manager or his designee.

H.      The Township Manager or his designee may, upon showing of good cause that certain conditions or requirements as herein set forth are not applicable or would cause an unreasonable burden upon the sponsor, modify the foregoing requirements after review of the circumstances presented by the sponsor.

**§ 382-7.  Support services costs.**

A.      (Reserved)

B.      No later than 10 days prior to the special event, the sponsor shall secure the costs associated with necessary support services, as set forth in the permit, according to the following schedule:

(1) Events with estimated costs of less than $2,500: 25%.

(2) Events with estimated costs between $2,501 to $7,500: 50%.

(3) Events with estimated costs over $7,500: 100%.

C.      Security may be in the form of a cash escrow or bond in a format acceptable to the Township.

D.      The cost of individual support services shall be set by resolution of the Board of Supervisors from time to time. Any additional costs set forth in the permit shall be paid no later than 10 days prior to the special event.

E.      At the close of the special event, the actual cost of the support services, including support services arising for unanticipated circumstances, shall be calculated and either additional payment made to the Township within five days or excess security released by the Township to the sponsor at the next regularly scheduled meeting of the Board of Supervisors.

### § 382-8.  Revocation of permit.

A.      In the event that all required permits, licenses, security deposits, fees, insurance policies or any other conditions of the permit so indicated on the permit are not obtained 10 days prior to the special event, the permit shall be revoked by the Township.

B.      In the event all required costs associated with the support services have not been paid 10 days prior to the special event, the Township shall revoke the permit.

C.      Any violation of one or more of the regulations set forth herein or conditions of the permit shall be sufficient grounds for the Township to immediately revoke the permit and order the sponsor holding the special event to cease and desist their activities. Upon such notice of immediate revocation, the sponsor shall cease and desist its activities and shall be prevented from applying for another permit for at least two years from the date of revocation.

D.      If the violation is not discovered by the Township until the special event has ended, then the Township shall suspend for two years the right of the sponsor conducting the special event to apply for another permit to conduct a special event.

E.      The Township may extend the suspension beyond the two-year period, if, in its discretion, it is determined that the sponsor will not conduct a future special event in accordance with the regulations set forth herein or the conditions set forth in the permit or will, if allowed to conduct such a special event, pose a threat to the public health, safety and welfare.

### § 382-9.  Appeals.

A sponsor who has been denied a permit to conduct a special event, whose permit has been revoked or whose right to apply for a permit has been suspended or revoked for violation of this chapter or contests a permit condition shall have the right to appeal said denial, suspension, revocation or condition to the Board of Supervisors, in writing, within 15 days of the

acquire a special event permit in advance of a special event and to pay the Township for the costs of "support services" incurred by the Township for the special event. "Support services" include, *inter alia*, services provided by the Township to protect the property and welfare of the citizenry, including police protection, crowd management and control, and traffic management. As a condition for a special event permit, the Ordinance requires a pre-event deposit based on the Township's estimate of the support services the Township deems necessary for the event. After the event, the Township sends an invoice for the actual costs of support services. Depending on the amount of the deposit as compared to the invoice for the actual costs, the Township then requires immediate payment of any balance.

Each year preceding the commencement of this litigation, Devon applied for and received a special event permit under the Ordinance for its Devon Horse Show and paid the assessed costs for support services. Between the years 2011 and

---

date of the notice of said denial, suspension, revocation or condition. The Board of Supervisors shall conduct a hearing on said appeal within 30 days from the date of filing of the appeal. The Board of Supervisors shall render a decision within 45 days after the hearing, either upholding the denial, suspension, revocation or condition or granting the appeal and ordering the Township to grant the permit or rescind the revocation or suspension notice or remove the condition.

### § 382-10.  Violations and penalties.

A.     Any person, firm or corporation who shall violate any provision of this chapter or fails to secure the permit required thereby, as the case may be, shall, upon conviction thereof, be sentenced to pay a criminal fine of not more than $1,000, plus costs, and, in default of said fine and costs, to a term of imprisonment not to exceed 30 days, or both. Each day that a violation of this chapter continues shall constitute a separate offense.

B.     In addition to the above-provided penalties, the Township may maintain any action or proceedings in the name of the Township in any court of competent jurisdiction, at law or in equity, to compel compliance with or enforce any violation of this chapter.

### § 382-11.  Support services provided by Police Department.

If the Police Department provides support services, the Police Chief shall keep an accurate record of all hours worked by all officers, and extra compensation shall be paid to each officer for all time worked beyond regularly scheduled tour of duty, less the same deduction made from his usual compensation, at appropriate rates.

2019, the Township charged Devon approximately $75,000 per year in fees for support services. Because of the COVID-19 pandemic, Devon did not host the Devon Horse Show in 2020 or 2021. As it had in previous years, Devon submitted a special event permit application to hold the Devon Horse Show in 2022. Prior to issuing Devon the permit to host the Devon Horse Show in 2022, the Township required a deposit of $130,000 based on the Township's estimated support services fees. This amount represented a 94% increase in fees compared to the same expenses calculated by the Township in 2016.

After Devon challenged the reasonableness of this amount, the Township reduced the deposit requirement to $99,070, which represented a 50% increase over similar expenses calculated by the Township in 2016. Due to the pendency of the underlying litigation, the parties reached an interim arrangement regarding the support service fees for 2022 and 2023. Pursuant to the agreement, Devon agreed to pay (and did pay) the Township $75,000 for each of the two years for support services in return for the Township agreeing that it would not seek to prevent the Devon Horse Show from occurring because of Devon's failure to pay the full pre-event estimate, subject to each party retaining its respective rights, claims, and defenses asserted in this litigation. Ultimately, the Township charged Devon $89,231.14 for support services in 2022 and $97,527.32 for support services in 2023.

As a result of the increased support services fees, Devon commenced this civil action against the Township in the Court of Common Pleas of Chester County, Pennsylvania. The Township subsequently removed the action to this Court. Devon asserts three claims premised on the above facts and the alleged unreasonableness of the Township's assessment of costs for special services: (1) a claim under 42 U.S.C. § 1983 premised on Devon's First Amendment challenge to the Ordinance on its face; (2) a § 1983 claim premised on Devon's First Amendment challenge to the Ordinance as applied; and (3) a claim for the violation of the Pennsylvania Constitution premised on Devon's contention that the Township's assessment of costs for special services was an unreasonable and, thus, unlawful state tax.

In support of its claims, Devon points to a Collective Bargaining Agreement (the "CBA") between the Township and its police department. The current CBA, the terms of which began January 1, 2020, and end December 31, 2024, provides in relevant part:

> The parties recognize that the Devon Horse Show and activities related to it provide a unique opportunity for members of the Police Department to provide services and generate income to the mutual benefit of the parties. Accordingly, they agree that during this particular detail, the Police Officers shall receive their individual detail rate, so as to maintain the relationship with the Horse Show and preserve the mutual advantage received by the parties.

The Devon Horse Show is the only event mentioned in the CBA. The "individual detail rate" is 1.5 times the amount of the normal hourly pay rate (or time-and-a-half).

**LEGAL STANDARD**

Federal Rule of Civil Procedure ("Rule") 56(a) provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A factual dispute is "material" if it might affect the outcome of the suit under the applicable substantive law and is "genuine" only if there is a sufficient evidentiary basis for a reasonable factfinder to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When evaluating a motion for summary judgment, a court "must view the facts in the light most favorable to the non-moving party" and draw all reasonable inferences in favor of the same. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex*, 477 U.S. at 324. "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). The non-moving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Summary judgment should be granted where a

party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322–23. "Such affirmative evidence—regardless of whether it is direct or circumstantial—must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460–61 (3d Cir. 1989)).

"The rule is no different where there are cross-motions for summary judgment." *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008). Denial of one motion does not necessitate a grant of the other, and the movants do not, by virtue of their cross motions, waive their right for the court to consider whether genuine issues of material fact exist. *Id.* (citing *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968)). If neither party carries its burden, the court must deny summary judgment. *See Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1023 (3d Cir. 2008).

**DISCUSSION**

As noted above, both parties seek summary judgment as to all of Plaintiff's claims. At Counts I and II, Plaintiff asserts claims under § 1983 premised on its contention that the Ordinance violates Plaintiff's First Amendment speech and assembly rights, both on its face and as applied to Plaintiff. Section 1983 provides a civil cause of action for the violation of constitutional rights by persons acting under color of law. 42 U.S.C. § 1983. At Count III, Plaintiff asserts that the fees that the Township assessed against Plaintiff for special services amounts to an unlawful tax under the Uniformity Clause of the Pennsylvania Constitution. Each of these claims is addressed below.

**A.      Application of the First Amendment to Plaintiff's Special Event**

Though providing no real argument or caselaw in support, Defendant suggests that the First Amendment is not implicated with respect to this action because Plaintiff has not identified "any content or message that is protected by the First Amendment."  (Def.'s Mtn., ECF 41, at p. 22). Defendant's suggestion is misplaced.

Federal courts frequently apply the protections of the First Amendment to gatherings in numerous contexts without distinguishing between speech and assembly, recognizing that both are inextricably intertwined in meetings, marches, demonstrations, and activities in which people are drawn together by common interests.  *See, e.g.*, *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 281 (3d Cir. 2004) (treating speech, assembly, and petition claims collectively); *Am. Future Sys., Inc. v. Pa. Sute Univ.*, 752 F.2d 854, 861 n.23 (3d Cir. 1984) (finding "speech" and "associational" interests "intertwined"); *Walker-Serrano v. Leonard*, 168 F. Supp. 2d 332, 347 (M.D. Pa. 2001), *aff'd* 325 F.3d 412 (3d Cir. 2003) (holding "the right to assemble is intertwined with the right to free speech").  Notably, the United States Supreme Court has held that events such as a state fair— which like the Devon Horse Show, features exhibits on "the agricultural, stock-breeding, horticultural, mining, mechanical, industrial, and other products and resources of the state, including proper exhibits and expositions of the arts, human sills, and sciences"—is a type of public forum that is a "natural and proper place for the dissemination of information and opinion." *Heffron v. Intl. Soc. For Krishna Consciousness, Inc.*, 452 U.S. 640, 643, 660 n.2 (1981) (citation omitted); *see also id.* ("A state fair is truly a marketplace of ideas and a public forum for the communication of ideas and information" and "is almost by definition a congeries of hawkers, vendors of wares and services, and purveyors of ideas, commercial, esthetic, and intellectual."). This Court finds that Plaintiff's public event—much like a state fair—is subject to First Amendment protection.

In addition, to be subject to a facial challenge, a licensing or permitting law "must have a close enough nexus to expression, or to conduct commonly associated with expression, to pose a real and substantial threat" of the risks of censorship. *Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 759 (1988). Here, the Ordinance regulates gatherings of large numbers of people by requiring the issuance of a permit. There can be no dispute that the Ordinance is broad enough to cover gatherings that are expressive. Moreover, the event at issue is sufficiently related to expressive content and association to implicate First Amendment protection. This Court finds that the Ordinance bears a sufficiently close nexus to conduct commonly associated with expression that it is subject to a First Amendment facial challenge. As such, Plaintiff can make a facial challenge to the Ordinance.

**B.      Plaintiff's First Amendment Facial Challenge to the Ordinance (Count I)**

At Count I of the complaint, Plaintiff argues that the Ordinance is constitutionally defective on its face because it confers unbridled discretion on the Township in the permitting process, enabling the Township to disfavor applicants with whose message the Township disagrees. Specifically, the Township contends that the Ordinance bestows unbridled discretion to determine and assess the amount of fees that an applicant must pay before and after a special event, discretion that effectively and expressly requires consideration of the content of the event. In response, Defendant argues that the Ordinance is a content-neutral time, place, and manner regulation, a proper exercise of a municipality's police power, and narrowly tailored to achieve the Township's important governmental purpose of maintaining safety and order.

A fee as a condition on an assembly or demonstration in a public forum is a prior restraint on speech, *see Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130 (1992), and as such faces a "heavy presumption" of invalidity, *see Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70

(1963).   However, the Supreme Court has recognized that "government, in order to regulate competing uses of public forums, may impose a permit requirement on those wishing to hold" expressive events.  *Forsyth*, 505 U.S. at 130 (citing *Cox v. New Hampshire*, 312 U.S. 569, 574–76 (1941)).  Through such a requirement, government may regulate the "time, place, and manner" of demonstrative public events, on the condition that the restrictions "must not be based on the content of the message, must be narrowly tailored to serve a significant governmental interest, and must leave open ample alternatives for communication."  *Id.* at 130 (citing *United States v. Grace*, 461 U.S. 171, 177 (1983)).  Such regulations, however, "may not delegate overly broad licensing discretion to a government official."  *Id.* (citing *Freedman v. Maryland*, 380 U.S. 51 (1965)).

It is well-settled that even content-neutral time, place, and manner regulations may not confer unbridled discretion on the licensing authority, so as to stifle free expression.  *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 323 (2002); *Forsyth*, 505 U.S. 123, 130–33 (1992).  Time, place, and manner restrictions must "contain adequate standards to guide the official's discretion and render it subject to effective judicial review."  *Thomas*, 534 U.S. at 323 (citation omitted).  In other words, the regulation must provide objective standards that remove the permitting decision from the whim of the official because the absence of such standards enables the official to favor some speakers over others.  *See Forsyth*, 505 U.S. at 133.

With regard to fees in particular, there is nothing unconstitutional in a municipality's charging a fee to "meet the expense incident to the administration of the act and to the maintenance of public order in the matter licensed."  *Cox v. New Hampshire*, 312 U.S. 569, 577 (1941) (internal quotation marks omitted); *see also Murdock v. Pennsylvania*, 319 U.S. 105, 113–14 (1943).  However, this principle is subject to an important limitation:  the regulation must provide objective

standards that do not leave the amount of the fee to the "whim" of the official, enabling the official to favor some speakers and suppress others. *Forsyth*, 505 U.S. at 130–33.

Resolution of Plaintiff's facial challenge to the Ordinance in the case *sub judice* is governed by the Supreme Court's decision in *Forsyth* and the Third Circuit's subsequent application of *Forsyth* in *Nationalist Movement*. In *Forsyth,* the Supreme Court held unconstitutional a Georgia county permit ordinance, which provided for a fee of "not more than $1000" for "the issuance of permits for parades, assemblies, demonstrations, road closings, and other uses of public property and roads by private organizations and groups of private persons for private purposes." 505 U.S. at 126. The ordinance authorized the county administrator to "adjust the amount to be paid in order to meet the expense incident to the administration of the Ordinance and to the maintenance of public order in the matter licensed." *Id.* at 126–27. Pursuant to this scheme, the county sought to charge the plaintiff a permit fee of $100 for a two-hour rally to be held on the steps of the county courthouse. *Id.* at 127. This fee was based exclusively on the costs associated with processing the application. *Id.* at 127-28. The plaintiff refused to pay the fee and instead brought a facial challenge to the ordinance. *Id.* at 127.

The Supreme Court ruled the ordinance unconstitutional on its face. *Id.* at 133. The Court explained "[a] government regulation that allows arbitrary application is 'inherently inconsistent with a valid time, place, and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view.'" *Id.* at 130 (quoting *Heffron*, 452 U.S. at 649). "To curtail that risk," the Supreme Court held "a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license must contain 'narrow, objective, and definite standards to guide the licensing authority.'" *Id.* at 131 (quoting *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 150–51 (1969)). If the scheme "involves appraisal of facts, the

exercise of judgment, and the formation of an opinion by the licensing authority," it is unconstitutional. *Id.* (internal citations and quotation marks omitted).

Similarly, in *Nationalist Movement* the Third Circuit held unconstitutional a permit ordinance that required, in certain circumstances, that prospective users of public space seek a permit, pay certain fees, and agree to a variety of conditions before a permit would be issued. 481 F.3d at 185-87. The ordinance at issue required a permit applicant to "promise and covenant to bear all costs of policing, cleaning up and restoring the park; [and] . . . to reimburse the City for any such costs . . . ." *Id.* Relying on *Forsyth*, the Third Circuit found the reimbursement provision of the ordinance unconstitutional because it necessarily required consideration of the content of the anticipated speech as "the anticipated cost would need to be determined by estimating the public's reaction to the speech." *Id.* at 185 (citing *Forsyth*, 505 U.S. at 134). The Third Circuit explained:

> At first blush, a provision that charges for the policing of an event seems like a content-neutral restriction because it serves a purpose unrelated to content, even though it places a greater burden on some speakers. The Court in *Forsyth County*, however, dispelled any such idea, finding that "it cannot be said that the fee's justification has nothing to do with content" given that an accurate estimation of the necessary security would "necessarily" involve an examination of the content of the speech, an estimate of the response of others, and a determination of the "number of police necessary to meet that response."

*Id.* at 185 n.7 (internal citations omitted). According to the Third Circuit, "[t]he broad language of the reimbursement provision clearly allows the City to charge a speaker not only for costs rightfully associated with its event, but with numerous other, content-based, costs." *Id.* at 185.

This Court finds that the Ordinance at issue in this case lacks the "narrow, objective, and definite standards" required by the Supreme Court in *Forsyth*. Instead, the Ordinance gives Township decisionmakers impermissible, unfettered discretion and leaves application of the

Ordinance to the "whim" of the Township Manager or his designee.  As set forth above, the Ordinance expressly allows Township decisionmakers to decide whether the costs of support services, or any portion thereof, should be "waived if such a waiver is in the best interest of the township."  *See* Ordinance at § 382-4(E).  In making this "waiver" and "best interest of the township" determination, Township decisionmakers are required to consider the following, non-exhaustive, criteria:

> (1) Is the proposed event considered ***desirable for the Township***?
> (2) Does the Township have the ability to provide, if needed, the required support services regardless of who bears the cost?
> (3) Does the proposed event adversely affect the normal and necessary functions of the support services to the Township?
> (4) Does the proposed event conflict with any other proposed events or activities?

*Id.* (emphasis added).  Though the Ordinance includes the above non-exhaustive list of factors to be considered when determining whether to waive all or some of the costs of support services, it ascribes no weight to any of the four listed factors and allows consideration of non-listed factors. Most troubling, however, is the requirement that the Township decisionmakers consider whether the proposed event is "desirable for the Township."  Such consideration invites permit decisions favoring one group over another, the hallmark of an unconstitutional permit ordinance.

The Ordinance further invites content-based evaluation when calculating the actual cost of the support services.  Under the Ordinance, "support services" include "any support services required, ***at the sole discretion of the Township***, to address specific unanticipated circumstances occurring at the special event related to larger crowd numbers than projected by the sponsor, or where the nature of the special event is not consistent with the event as applied for by the sponsor." *Id.* at § 382-6(E) (emphasis added).  The Ordinance provides that "unanticipated circumstances may include, but are not limited to, crowd control and emergency response."  *Id.* at § 382-6(E).

This is the exact type of content-based permitting scheme that the Supreme Court and Third Circuit invalidated in *Forsyth* and *Nationalist Movement* respectively.  To "assess accurately the cost of security" in accordance with the Ordinance, the Township "must necessarily examine the content of the message that is conveyed, estimate the response of others to the content, and judge the number of police necessary to meet that response."  *Forsyth*, 505 U.S. at 134.  This is patently content-based and unconstitutional.  *Id.*  The discretion provided by the Ordinance to deem an event "desirable" or "in the Township's best interests" creates the very chilling effect on speech and/or assembly that the courts found unconstitutional in *Forsyth* and *Nationalist Movement*.

Given the Township's "unlimited discretion" to grant a permit, assess costs, and impose other conditions, the Ordinance is "ripe for abuse."  *Nationalist Movement*, 411 F.3d at 185-86. As currently drafted, the Ordinance "could easily be used to punish (or intimidate) speakers based on the content of their messages."  *Id.* at 186-87.  "Given the substantial expense that could be levied upon a speaker, and the almost limitless possibility of abuse," the Ordinance, as written, impermissibly "chills constitutionally-protected speech."  *Id.* at 187.  As such, the Ordinance is unconstitutional on its face.  Accordingly, summary judgment is entered in favor of Plaintiff on Count I.

**C.**     **Plaintiff's First Amendment "As Applied" Challenge to the Ordinance (Count II)**

At Count II of the complaint, Plaintiff asserts that the Ordinance is constitutionally invalid under the First Amendment "as applied" to Plaintiff because the Devon Horse Show is "singled out" for "disparate treatment."  As noted above, both parties move for summary judgment on this claim.  Significantly, however, neither party presents any law with respect to the necessary

elements of Plaintiff's First Amendment as applied claim.[3]  In the absence of any discussion of the
necessary elements of Plaintiff's as applied claim, neither party has met its summary judgment
burden as a movant:  Plaintiff has failed to show how the undisputed evidence satisfies each of the
elements of its claim; and Defendant has failed to show how either the undisputed evidence
requires entry of judgment in Defendant's favor or how Plaintiff has failed to present evidence
sufficient to meet each element of the claim.  Accordingly, the parties' cross motions for summary
judgment on Plaintiff's as-applied claim (Count II) are denied.[4]

**D.      Plaintiff's Tax Claim (Count III)**

At Count III, Plaintiff asserts a claim for violation of Article 8, Section 1 of the
Pennsylvania Constitution, which requires that "[a]ll taxes shall be uniform, upon the same class
of subjects, within the territorial limits of the authority levying the tax . . . ."  Pa. Const. art. 8, § 1.
Plaintiff contends that Defendant's assessment of $186,758.46 to cover service costs for the 2022
and 2023 Devon Horse Show constitutes a discriminatory and/or non-uniform tax.  Both parties
seek summary judgment on this claim.

Under governing Pennsylvania law, a municipality "may not use its power to collect fees
for a service as a means of raising revenue for other purposes."  *Nat'l Props., Inc. v. Borough of
Macungie*, 595 A.2d 742, 745 (Pa. Commw. Ct. 1991).  Pennsylvania municipalities, however,

---

[3]      Plaintiff's briefs are completely void of any applicable or supportive law with respect to the
elements of Plaintiff's as-applied First Amendment claims.  (*See* Pl.'s Br., ECF 40-2, at pp. 21-30; Pl.'s
Reply, ECF 46, at p. 7; Pl.'s Opp., ECF 43, at pp. 14-19).  Though Defendant's briefs provide inapposite
Fourteenth Amendment and Equal Protection law, they, too, are silent with respect to the elements of
Plaintiff's as-applied First Amendment claims.  (*See* Def.'s Mtn., ECF 41, at pp. 23-27; Def.'s Opp., ECF
42, at pp. 17-23).

[4]      To be clear, both parties point to various record evidence in an attempt to show the absence of a
genuine dispute of material fact.  Missing, however, is any argument or discussion as to how this evidence
meets or fails to meet the requisite elements of Plaintiff's as applied claim.  Moreover, this Court has
carefully reviewed the evidence cited in the parties' respective briefs.  This evidence creates a genuine
dispute of material fact as to whether or not Plaintiff was "singled" out for "disparate treatment."
Accordingly, both parties' motions for summary judgment are denied.

may charge a fee when granting a permit or license since "it is reasonable to require the person seeking the license to defray costs commensurate with the expense incurred." *Martin Media v. Hempfield Twp. Zoning Hearing Bd.*, 671 A.2d 1211, 1215 (Pa. Commw. Ct. 1996). "Fees charged by a municipality for services rendered are proper if they are reasonably proportional to the costs of the regulation or the services performed." *Nat'l Props.*, 595 A.2d at 745. Where "a license fee collects more than an amount commensurate with the expense of administering the license, it would become a tax revenue and cease to be a valid license fee." *Talley v. Cmwlth. of Pa.*, 553 A.2d 518, 519 (Pa. Commw. Ct. 1989). "If anything can be considered as settled under the decisions of our Pennsylvania courts, it is that municipalities, under the guise of a police regulation, cannot impose a revenue tax." *William Laubach & Sons v. City of Easton*, 32 A.2d 881, 884 (Pa. 1943). "In the broad sense every ordinance which requires the payment of money is a revenue producing measure, but the *primary purpose of ordinances . . . is the reimbursement of the city* for providing support services to the licensees." *Id.* (emphasis in original).

Notably, the Supreme Court of Pennsylvania has found a municipality's fee for services in an amount over twice that actually charged by the private sector is unreasonable. *Ridley Arms, Inc. v. Ridley Twp.*, 531 A.2d 414, 418 (Pa. 1987). Explaining its decision, the Supreme Court of Pennsylvania wrote:

> If government cannot provide services at least of a quality and at a cost commensurate with similar services provided by private enterprise, it is, by definition, unreasonable to utilize tax dollars for that purpose. That many have lost sight of that patently obvious idea is as unfortunate as it is surprising.

*Id.* at 550. The party challenging the fee bears the burden of proving "that the fee is unreasonable, and all doubt must be resolved in favor of its reasonableness, to give the municipality latitude in anticipating the expense of enforcing the ordinance." *Martin Media*, 671 A.2d at 1215.

21

Here, the parties have proffered conflicting evidence as to whether the fees charged by the Township for support services are the actual costs incurred, reasonable, and/or "commensurate with similar services provided by private enterprise." *Ridley Arms*, 531 A.2d at 418.  For instance, Plaintiff has presented evidence that suggests the fees for support services were motivated by an intent to generate income, greatly exceeded amounts charged by the private sector for similar services, and increased dramatically compared to prior years.   Defendant, on the other hand, has proffered evidence in the form of testimony, invoices, and time sheets that suggests that the costs amounted to the Township's actual costs for the services.  This evidence creates a genuine dispute of material fact with respect to the reasonableness of the costs.  Accordingly, the parties' cross-motions for summary judgment on Count III are denied.

## CONCLUSION

For the reasons set forth, Plaintiff's motion for summary judgment is granted and Defendant's motion for summary judgment is denied with respect to Count I, and the parties' respective motions for summary judgment are both denied as to Counts II and III.   An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.